# EXHIBIT A

# DELAWARE RIVER BASIN COMPACT





## 1961

*Reformatted 2020*

**Delaware River Basin Commission**
25 Cosey Road
P.O. Box 7360
West Trenton, New Jersey
08628-0360
Telephone: (609) 883-9500 / Fax:  (609) 883-9522
Web Site:  www.drbc.gov

# Delaware River Basin Compact

## *Table of Contents*

### PART I
### COMPACT

*Page*

**PREAMBLE** .................................................................................................................... 1

**ARTICLE 1   SHORT TITLE, DEFINITIONS, PURPOSE AND LIMITATIONS** .................. 2

SECTION 1.1   SHORT TITLE. ................................................................................................ 2
SECTION 1.2   DEFINITIONS. ................................................................................................ 2
SECTION 1.3   PURPOSE AND FINDINGS ............................................................................. 3
SECTION 1.4   POWERS OF CONGRESS; WITHDRAWAL. ..................................................... 4
SECTION 1.5   EXISTING AGENCIES; CONSTRUCTION. ....................................................... 4
SECTION 1.6   DURATION OF COMPACT. ............................................................................. 4

**ARTICLE 2   ORGANIZATION AND AREA** ................................................................. 5

SECTION 2.1   COMMISSION CREATED. ............................................................................... 5
SECTION 2.2   COMMISSION MEMBERSHIP. ......................................................................... 5
SECTION 2.3   ALTERNATES. ............................................................................................... 5
SECTION 2.4   COMPENSATION. .......................................................................................... 5
SECTION 2.5   VOTING POWER. ........................................................................................... 5
SECTION 2.6   ORGANIZATION AND PROCEDURE. ............................................................... 5
SECTION 2.7   JURISDICTION OF THE COMMISSION. ........................................................... 6

**ARTICLE 3   POWERS AND DUTIES OF THE COMMISSION** .................................... 6

SECTION 3.1   PURPOSE AND POLICY. ................................................................................. 6
SECTION 3.2   COMPREHENSIVE PLAN, PROGRAM AND BUDGETS. ..................................... 6
SECTION 3.3   ALLOCATIONS, DIVERSIONS AND RELEASES. ............................................... 6
SECTION 3.4   SUPREME COURT DECREE; WAIVERS. .......................................................... 7
SECTION 3.5   SUPREME COURT DECREE; SPECIFIC LIMITATIONS ON COMMISSION. ......... 7
SECTION 3.6   GENERAL POWERS. ...................................................................................... 8
SECTION 3.7   RATES AND CHARGES. ................................................................................. 8
SECTION 3.8   REFERRAL AND REVIEW. .............................................................................. 9
SECTION 3.9   COORDINATION AND COOPERATION. ........................................................... 9
SECTION 3.10  ADVISORY COMMITTEES. ............................................................................ 9

**ARTICLE 4   WATER SUPPLY** .................................................................................. 9

SECTION 4.1   GENERALLY. ................................................................................................. 9
SECTION 4.2   STORAGE AND RELEASE OF WATERS. .......................................................... 10
SECTION 4.3   ASSESSABLE IMPROVEMENTS. ..................................................................... 10
SECTION 4.4   COORDINATION. ........................................................................................... 10
SECTION 4.5   ADDITIONAL POWERS. ................................................................................. 10

**ARTICLE 5   POLLUTION CONTROL** ........................................................................ 10

SECTION 5.1   GENERAL POWERS. ...................................................................................... 10
SECTION 5.2   POLICY AND STANDARDS. ............................................................................ 11
SECTION 5.3   COOPERATIVE LEGISLATION AND ADMINISTRATION. ................................... 11
SECTION 5.4   ENFORCEMENT. ........................................................................................... 11
SECTION 5.5   FURTHER JURISDICTION. .............................................................................. 11

**ARTICLE 6   FLOOD PROTECTION** ...............................................................................12

SECTION 6.1  GENERAL POWERS.............................................................................12
SECTION 6.2  FLOOD PLAIN ZONING.......................................................................12
SECTION 6.3  FLOOD LANDS ACQUISITION..............................................................12
SECTION 6.4  FLOOD AND STREAM STAGE WARNINGS AND POSTING. ....................12

**ARTICLE 7   WATERSHED MANAGEMENT** ..............................................................13

SECTION 7.1  WATERSHEDS GENERALLY. ...............................................................13
SECTION 7.2  SOIL CONSERVATION AND FORESTRY................................................13
SECTION 7.3  FISH AND WILDLIFE. .........................................................................13
SECTION 7.4  COOPERATIVE PLANNING AND OPERATION. ......................................13

**ARTICLE 8   RECREATION** .........................................................................................13

SECTION 8.1  DEVELOPMENT. .................................................................................13
SECTION 8.2  COOPERATIVE PLANNING AND OPERATION. ......................................13
SECTION 8.3  OPERATION AND MAINTENANCE. .......................................................14
SECTION 8.4  CONCESSIONS. ...................................................................................14

**ARTICLE 9   HYDROELECTRIC POWER** ....................................................................14

SECTION 9.1  DEVELOPMENT. .................................................................................14
SECTION 9.2  POWER GENERATION. ........................................................................14
SECTION 9.3  TRANSMISSION. .................................................................................14
SECTION 9.4  DEVELOPMENT CONTRACTS. .............................................................14
SECTION 9.5  RATES AND CHARGES. .......................................................................15

**ARTICLE 10   REGULATION OF WITHDRAWALS AND DIVERSIONS** ...................15

SECTION 10.1  POWER OF REGULATION. ...................................................................15
SECTION 10.2  DETERMINATION OF PROTECTED AREAS. ...........................................15
SECTION 10.3  WITHDRAWAL PERMITS.....................................................................15
SECTION 10.4  EMERGENCY. .....................................................................................15
SECTION 10.5  STANDARDS........................................................................................15
SECTION 10.6  JUDICIAL REVIEW. .............................................................................16
SECTION 10.7  MAINTENANCE OF RECORDS. .............................................................16
SECTION 10.8  EXISTING STATE SYSTEMS. ................................................................16

**ARTICLE 11   INTERGOVERNMENTAL RELATIONS** ..............................................16

SECTION 11.1  FEDERAL AGENCIES AND PROJECTS. ..................................................16
SECTION 11.2  STATE AND LOCAL AGENCIES AND PROJECTS. ...................................16
SECTION 11.3  RESERVED TAXING POWERS OF STATES. ............................................17
SECTION 11.4  PROJECT COSTS AND EVALUATION STANDARDS. ................................17
SECTION 11.5  COOPERATIVE SERVICES. ...................................................................17

**ARTICLE 12   CAPITAL FINANCING** ..........................................................................17

SECTION 12.1  BORROWING POWER. .........................................................................17
SECTION 12.2  FUNDS AND EXPENSES. ......................................................................18
SECTION 12.3  CREDIT EXCLUDED; OFFICERS, STATE AND MUNICIPAL.....................18
SECTION 12.4  FUNDING AND REFUNDING. ...............................................................18
SECTION 12.5  BONDS; AUTHORIZATION GENERALLY.................................................18
SECTION 12.6  BONDS; RESOLUTIONS AND INDENTURES GENERALLY..........................19
SECTION 12.7  MAXIMUM MATURITY. .......................................................................19
SECTION 12.8  TAX EXEMPTION.................................................................................19
SECTION 12.9  INTEREST. ..........................................................................................19
SECTION 12.10  PLACE OF PAYMENT. .........................................................................20
SECTION 12.11  EXECUTION. ......................................................................................20
SECTION 12.12  HOLDING OWN BONDS. .....................................................................20

SECTION 12.13  SALE..................................................................................................20
SECTION 12.14  NEGOTIABILITY..................................................................................20
SECTION 12.15  LEGAL INVESTMENTS..........................................................................20
SECTION 12.16  VALIDATION PROCEEDINGS.................................................................21
SECTION 12.17  RECORDING.......................................................................................21
SECTION 12.18  PLEDGED REVENUES...........................................................................21
SECTION 12.19  REMEDIES..........................................................................................21
SECTION 12.20  CAPITAL FINANCING BY SIGNATORY PARTIES; GUARANTEES...............22

**ARTICLE 13      PLAN, PROGRAM AND BUDGETS...........................................22**

SECTION 13.1  COMPREHENSIVE PLAN..........................................................................22
SECTION 13.2  WATER RESOURCES PROGRAM...............................................................22
SECTION 13.3  ANNUAL CURRENT EXPENSE AND CAPITAL BUDGETS...............................23

**ARTICLE 14      GENERAL PROVISIONS ...................................................23**

SECTION 14.1  AUXILIARY POWERS OF COMMISSION; FUNCTIONS OF COMMISSIONERS. .....23
SECTION 14.2  REGULATIONS; ENFORCEMENT................................................................24
SECTION 14.3  TAX EXEMPTION...................................................................................25
SECTION 14.4  MEETINGS; PUBLIC HEARING; RECORDS, MINUTES...................................25
SECTION 14.5  OFFICERS GENERALLY...........................................................................25
SECTION 14.6  OATH OF OFFICE...................................................................................25
SECTION 14.7  BOND..................................................................................................25
SECTION 14.8  PROHIBITED ACTIVITIES........................................................................26
SECTION 14.9  PURCHASING........................................................................................26
SECTION 14.10  INSURANCE.........................................................................................27
SECTION 14.11  ANNUAL INDEPENDENT AUDIT..............................................................27
SECTION 14.12  REPORTS............................................................................................27
SECTION 14.13  GRANTS, LOANS OR PAYMENTS BY STATES OR POLITICAL SUBDIVISIONS. .....28
SECTION 14.14  CONDEMNATION PROCEEDINGS.............................................................28
SECTION 14.15  CONVEYANCE OF LANDS AND RELOCATION OF PUBLIC FACILITIES...............28
SECTION 14.16  RIGHTS OF WAY...................................................................................29
SECTION 14.17  PENAL SANCTION.................................................................................29
SECTION 14.18  TORT LIABILITY...................................................................................29
SECTION 14.19  EFFECT ON RIPARIAN RIGHTS................................................................29
SECTION 14.20  AMENDMENTS AND SUPPLEMENTS........................................................29
SECTION 14.21  CONSTRUCTION AND SEVERABILITY........................................................30
SECTION 14.22  EFFECTIVE DATE; EXECUTION................................................................30

## PART II
## EFFECTUATION

**UNITED STATES:  (FROM PUBLIC LAW 87-328, 75 STAT. 688) ........................................31**

SECTION 15.1  RESERVATIONS......................................................................................31
SECTION 15.2  EFFECTUATION......................................................................................34
SECTION 15.3  EFFECT DATE........................................................................................34

**DELAWARE:  (FROM 53 DELAWARE LAWS, CHAPTER 71) ........................................34**

SECTION 1011  REPEALER............................................................................................34
SECTION 1012  EFFECTUATION BY CHIEF EXECUTIVE.......................................................34
SECTION 1013  EFFECTIVE DATE...................................................................................35

**NEW JERSEY:  (FROM NEW JERSEY LAWS OF 1961, CHAPTER 13) ..............................35**

SECTION 15.1  REPEALER............................................................................................35
SECTION 15.2  EFFECTUATION BY CHIEF EXECUTIVE. ......................................................35

SECTION 15.3  EFFECTIVE DATE. ...................................................................................................35

**NEW YORK:  *(FROM NEW YORK LAWS OF 1961, CHAPTER 148);* WITH SECTIONS OF THE CONSERVATION LAW AS RENUMBERED BY LAWS OF 1962, CHAPTER 73) ...........................35**

SECTION 631   COMMISSIONER AND ALTERNATE. .........................................................................35
SECTION 632   ADVISORS. ............................................................................................................35
SECTION 633   CONSENT TO ALTERATION OF DIVERSIONS. ...........................................................36
SECTION 634   JURISDICTION OF COURTS. ....................................................................................36
SECTION 635   PRIOR TO PROJECT APPROVAL. ..............................................................................36
SECTION 636   AGREEMENTS WITH MUNICIPALITIES. ....................................................................36
SECTION 637   DELEGATIONS OF POWER. ......................................................................................37
SECTION 638   COOPERATIVE SERVICES. ......................................................................................37
SECTION 639   BUDGET. ..............................................................................................................37
SECTION 640   AUDIT. .................................................................................................................37
SECTION 641   INCONSISTENT LAWS. ...........................................................................................37
SECTION 2      EFFECTUATION. .....................................................................................................37
SECTION 3      EFFECTIVE DATE. ..................................................................................................37

**PENNSYLVANIA:  (FROM PENNSYLVANIA ACTS OF 1961, ACT NO. 268) ................................38**

SECTION 2      REPEALER. ............................................................................................................38
SECTION 3      EFFECTUATION BY CHIEF EXECUTIVE. ....................................................................38
SECTION 4      EFFECTIVE DATE. ..................................................................................................38

**EDITOR'S NOTE CONCERNING THE UNITED STATES MEMBER ................................................39**

# DELAWARE RIVER BASIN COMPACT

*United States: Public Law 87-328,*
*Approved September 27, 1961, 75 Statutes at Large 688*

*Delaware: 53 Delaware Laws, Chapter 71,*
*Approved May 26, 1961*

*New Jersey: Laws of 1961, Chapter 13,*
*Approved May 1, 1961*

*New York: Laws of 1961, Chapter 148,*
*Approved March 17, 1961*

*Pennsylvania: Acts of 1961, Act No. 268,*
*Approved July 7, 1961*

## PART I

## COMPACT

***Whereas*** the signatory parties recognize the water and related resources of the Delaware River Basin as regional assets vested with local, State, and National interests, for which they have a joint responsibility; and

***Whereas*** the conservation, utilization, development, management, and control of the water and related resources of the Delaware River Basin under a comprehensive multipurpose plan will bring the greatest benefits and produce the most efficient service in the public welfare; and

***Whereas*** such a comprehensive plan administered by a basin wide agency will provide effective flood damage reduction; conservation and development of ground and surface water supply for municipal, industrial, and agricultural uses; development of recreational facilities in relation to reservoirs, lakes, and streams; propagation of fish and game; promotion of related forestry, soil conservation, and watershed projects; protection and aid to fisheries dependent upon water resources; development of hydroelectric power potentialities; improved navigation; control of the movement of salt water; abatement and control of stream pollution; and regulation of stream flows toward the attainment of these goals; and

***Whereas*** decisions of the United States Supreme Court relating to the waters of the basin have confirmed the interstate regional character of the water resources of the Delaware River Basin, and the United States Corps of Engineers has in a prior report on the Delaware River Basin (House Document 179, Seventy-third Congress, second session) officially recognized the need for an interstate agency and the economies that can result from unified development and control of the water resources of the basin; and

***Whereas*** the water resources of the basin are presently subject to the duplicating, overlapping, and uncoordinated administration of some forty-three State agencies, fourteen interstate agencies, and nineteen Federal agencies which exercise a multiplicity of powers and duties resulting in a splintering of authority and responsibilities; and

***Whereas*** the joint advisory body known as the Interstate Commission on the Delaware River Basin (INCODEL), created by the respective commissions or Committee on Interstate Cooperation of the States of Delaware, New Jersey, New York, and Pennsylvania, has on the basis of its extensive investigations, surveys, and studies concluded that regional development of the

Delaware River Basin is feasible, advisable, and urgently needed; and has recommended that an interstate compact with Federal participation be consummated to this end; and

***Whereas*** the Congress of the United States and the executive branch of the Government have recognized the national interest in the Delaware River Basin by authorizing and directing the Corps of Engineers, Department of the Army, to make a comprehensive survey and report on the water and related resources of the Delaware River Basin, enlisting the technical aid and planning participation of many Federal, State, and municipal agencies dealing with the waters of the basin, and in particular the Federal Departments of Agriculture, Commerce, Health, Education, and Welfare, and Interior, and the Federal Power Commission; and

***Whereas*** some twenty-two million people of the United States at present live and work in the region of the Delaware River Basin and its environs, and the government, employment, industry, and economic development of the entire region and the health, safety, and general welfare of its population are and will continue to be vitally affected by the use, conservation, management, and control of the water and related resources of the Delaware River Basin; and

***Whereas*** demands upon the waters and related resources of the basin are expected to mount rapidly because of the anticipated increase in the population of the region projected to reach thirty million by 1980 and forty million by 2010, and because of the anticipated increase in industrial growth projected to double by 1980; and

***Whereas*** water resources planning and development is technical, complex, and expensive, and has often required fifteen to twenty years from the conception to the completion of a large dam and reservoir; and

***Whereas*** the public interest requires that facilities must be ready and operative when needed, to avoid the catastrophe of unexpected floods or prolonged drought, and for other purposes; and

***Whereas*** the Delaware River Basin Advisory Committee, a temporary body constituted by the Governors of the four basin States and the mayors of the cities of New York and Philadelphia, has prepared a draft of an interstate-Federal compact for the creation of a basin agency, and the signatory parties desire to effectuate the purposes thereof: Now therefore

The states of Delaware, New Jersey and New York and the Commonwealth of Pennsylvania, and the United States of America hereby solemnly covenant and agree with each other, upon the enactment of concurrent legislation by the Congress of the United States and by the respective state legislatures, having the same effect as this Part, to the following Compact:

# ARTICLE 1

## SHORT TITLE, DEFINITIONS, PURPOSE AND LIMITATIONS

### Section 1.1    Short Title.

This Act shall be known and may be cited as the Delaware River Basin Compact.

### Section 1.2    Definitions.

For the purposes of this Compact, and of any supplemental or concurring legislation enacted pursuant thereto, except as may be otherwise required by the context:

(a) "Basin" shall mean the area of drainage into the Delaware River and its tributaries, including Delaware Bay;

(b) "Commission" shall mean the Delaware River Basin Commission created and constituted by this Compact;

(c) "Compact" shall mean Part I of this act;

(d) "Cost" shall mean direct and indirect expenditures, commitment, and net induced adverse effects, whether or not compensated for, used or incurred in connection with the establishment, acquisition, construction, maintenance and operation of a project;

(e) "Facility" *s*hall mean any real or personal property, within or without the basin, and improvements thereof or thereon, and any and all rights of way, water, water rights, plants, structures, machinery and equipment, acquired, constructed, operated or maintained for the beneficial use of water resources or related land uses including, without limiting the generality of the foregoing, any and all things and appurtenances necessary, useful or convenient for the control, collection, storage, withdrawal, diversion, release, treatment, transmission, sale or exchange of water; or for navigation thereon, or the development and use of hydroelectric energy and power, and public recreational facilities; or the propagation of fish and wildlife; or to conserve and protect the water resources of the basin or any existing or future water supply source, or to facilitate any other uses of any of them;

(f) "Federal government" shall mean the government of the United States of America, and any appropriate branch, department, bureau or division thereof, as the case may be;

(g) "Project" shall mean any work, service or activity which is separately planned, financed, or identified by the commission, or any separate facility undertaken or to be undertaken within a specified area, for the conservation, utilization, control, development or management of water resources which can be established and utilized independently or as an addition to an existing facility, and can be considered as a separate entity for purposes of evaluation;

(h) "Signatory party" shall mean a state or commonwealth party to this Compact, and the federal government;

(i) "Water resources" shall include water and related natural resources in, on, under, or above the ground, including related uses of land, which are subject to beneficial use, ownership or control.

### Section 1.3    Purpose and Findings.

The legislative bodies of the respective signatory parties hereby find and declare:

(a) The water resources of the basin are affected with a local, state, regional and national interest and their planning, conservation, utilization, development, management and control, under appropriate arrangements for intergovernmental cooperation, are public purposes of the respective signatory parties.

(b) The water resources of the basin are subject to the sovereign right and responsibility of the signatory parties, and it is the purpose of this Compact to provide for a joint exercise of such powers of sovereignty in the common interests of the people of the region.

(c) The water resources of the basin are functionally inter-related, and the uses of these resources are interdependent. A single administrative agency is therefore essential for effective and economical direction, supervision and coordination of efforts and programs of federal, state and local governments and of private enterprise.

(d) The water resources of the Delaware River Basin, if properly planned and utilized, are ample to meet all presently projected demands, including existing and added diversions in future years and ever increasing economies and efficiencies in the use and reuse of water resources can be brought about by comprehensive planning, programming and management.

(e) In general, the purposes of this Compact are to promote interstate comity; to remove causes of present and future controversy; to make secure and protect present developments within the states; to encourage and provide for the planning, conservation, utilization, development, management and control of the water resources of the basin; to provide for cooperative planning and action by the signatory parties with respect to such water resources; and to apply the principle of equal and uniform treatment to all water users who are similarly situated and to all users of related facilities, without regard to established political boundaries.

### Section 1.4     Powers of Congress; Withdrawal.

Nothing in this Compact shall be construed to relinquish the functions, powers or duties of the Congress of the United States with respect to the control of any navigable waters within the basin, nor shall any provision hereof be construed in derogation of any of thefe constitutional powers of the Congress to regulate commerce among the states and with foreign nations. The power and right of the Congress to withdraw the federal government as a party to this Compact or to revise or modify the terms, conditions and provisions under which it may remain a party by amendment, repeal or modification of any federal statute applicable thereto is recognized by the signatory parties.

### Section 1.5     Existing Agencies; Construction.

It is the purpose of the signatory parties to preserve and utilize the functions, powers and duties of existing offices and agencies of government to the extent not inconsistent with the Compact, and the commission is authorized and directed to utilize and employ such offices and agencies for the purpose of this Compact to the fullest extent it finds feasible and advantageous.

### Section 1.6     Duration of Compact.

(a) The duration of this Compact shall be for an initial period of 100 years from its effective date, and it shall be continued for additional periods of 100 years if not later than 20 years nor sooner than 25 years prior to the termination of the initial period or any succeeding period none of the signatory states, by authority of an act of its legislature, notifies the commission of intention to terminate the Compact at the end of the then current 100 year period.

(b) In the event that this Compact should be terminated by operation of paragraph (a) above, the commission shall be dissolved, its assets and liabilities transferred, and its corporate affairs wound up, in such manner as may be provided by act of the Congress.

# ARTICLE 2

## ORGANIZATION AND AREA

### Section 2.1      Commission Created.

The Delaware River Basin Commission is hereby created as a body politic and corporate, with succession for the duration of this Compact, as an agency and instrumentality of the governments of the respective signatory parties.

### Section 2.2      Commission Membership.[1]

The commission shall consist of the Governors of the signatory states, *ex officio*, and one commissioner to be appointed by the President of the United States to serve during the term of office of the President.

### Section 2.3      Alternates.

Each member of the commission shall appoint an alternate to act in his place and stead, with authority to attend all meetings of the commission, and with power to vote in the absence of the member. Unless otherwise provided by law of the signatory party for which he is appointed, each alternate shall serve during the term of the member appointing him, subject to removal at the pleasure of the member. In the event of a vacancy in the office of alternate, it shall be filled in the same manner as an original appointment for the unexpired term only.

### Section 2.4      Compensation.

Members of the commission and alternates shall serve without compensation but may be reimbursed for necessary expenses incurred in and incident to the performance of their duties.

### Section 2.5      Voting Power.

Each member shall be entitled to one vote on all matters which may come before the commission. No action of the commission shall be taken at any meeting unless a majority of the membership shall vote in favor thereof.

### Section 2.6      Organization and Procedure.

The commission shall provide for its own organization and procedure, and shall adopt rules and regulations governing its meetings and transactions. It shall organize annually by the election of a chairman and vice-chairman from among its members. It shall provide by its rules for the appointment by each member in his discretion of an advisor to serve without compensation, who may attend all meetings of the commission and its committees.

---

[1] Section 2.2 is as enacted in 1961.  See Editor's Note regarding subsequent changes.

## Section 2.7      Jurisdiction of the Commission.

The commission shall have, exercise and discharge its functions, powers and duties within the limits of the basin, except that it may in its discretion act outside the basin whenever such action may be necessary or convenient to effectuate its powers or duties within the basin, or to sell or dispose of water, hydroelectric power or other water resources within or without the basin. The commission shall exercise such power outside the basin only upon the consent of the state in which it proposes to act.

# ARTICLE 3

# POWERS AND DUTIES OF THE COMMISSION

## Section 3.1      Purpose and Policy.

The commission shall develop and effectuate plans, policies and projects relating to the water resources of the basin. It shall adopt and promote uniform and coordinated policies for water conservation, control, use and management in the basin. It shall encourage the planning, development and financing of water resources projects according to such plans and policies.

## Section 3.2      Comprehensive Plan, Program and Budgets.

The commission shall, in accordance with Article 13 of this Compact, formulate and adopt:

(a) A comprehensive plan, after consultation with water users and interested public bodies, for the immediate and long range development and uses of the water resources of the basin;

(b) A water resources program, based upon the comprehensive plan, which shall include a systematic presentation of the quantity and quality of water resources needs of the area to be served for such reasonably foreseeable period as the commission may determine, balanced by existing and proposed projects required to satisfy such needs, including all public and private projects affecting the basin, together with a separate statement of the projects proposed to be undertaken by the commission during such period; and

(c) An annual current expense budget and an annual capital budget consistent with the water resources program covering the commission's projects and facilities for the budget period.

## Section 3.3      Allocations, Diversions and Releases.

The commission shall have the power from time to time as need appears, in accordance with the doctrine of equitable apportionment, to allocate the waters of the basin to and among the states signatory to this Compact and to and among their respective political subdivisions, and to impose conditions, obligations and release requirements related thereto, subject to the following limitations:

(a) The commission, without the unanimous consent of the parties to the United States Supreme Court decree in *New Jersey v. New York, 347 U.S. 995 (1954),* shall not impair, diminish or otherwise adversely affect the diversions, compensating releases, rights, conditions, obligations, and provisions for the administration thereof as provided in said decree; provided, however, that after consultation with the river master under said decree the commission may find and declare a state of emergency resulting from a drought or catastrophe and it may thereupon by unanimous consent of its members authorize and direct an increase or decrease in any allocation or diversion

permitted or releases required by the decree, in such manner and for such limited time as may be necessary to meet such an emergency condition.

(b) No allocation of waters hereafter made pursuant to this section shall constitute a prior appropriation of the waters of the basin or confer any superiority of right in respect to the use of those waters, nor shall any such action be deemed to constitute an apportionment of the waters of the basin among the parties hereto: Provided, That this paragraph shall not be deemed to limit or restrict the power of the commission to enter into covenants with respect to water supply, with a duration not exceeding the life of this Compact, as it may deem necessary for a benefit or development of the water resources of the basin.

(c) Any proper party deeming itself aggrieved by action of the commission with respect to an out-of-basin diversion or compensating releases in connection therewith, notwithstanding the powers delegated to the commission by this Compact may invoke the original jurisdiction of the United States Supreme Court within one year after such action for an adjudication and determination thereof de novo. Any other action of the commission pursuant to this section shall be subject to judicial review in any court of competent jurisdiction.

## Section 3.4    Supreme Court Decree; Waivers.

Each of the signatory states and their respective political subdivisions, in consideration of like action by the others, and in recognition of reciprocal benefits, hereby waives and relinquishes for the duration of this Compact any right, privilege or power it may have to apply for any modification of the terms of the decree of the United States Supreme Court in *New Jersey v. New York, 347 U.S. 995 (1954)* which would increase or decrease the diversions authorized or increase or decrease the releases required thereunder, except that a proceeding to modify such decree to increase diversions or compensating releases in connection with such increased diversions may be prosecuted by a proper party to effectuate rights, powers, duties and obligations under Section 3.3 of this Compact, and except as may be required to effectuate the provisions of paragraphs IIIB3 and VB of said decree.

## Section 3.5    Supreme Court Decree; Specific Limitations on Commission.

Except as specifically provided in Sections 3.3 and 3.4 of this article, nothing in this Compact shall be construed in any way to impair, diminish or otherwise adversely affect the rights, powers, privileges, conditions and obligations contained in the decree of the United States Supreme Court in *New Jersey v. New York, 347 U.S. 995 (1954).* To this end and without limitation thereto, the commission shall not:

(a) Acquire, construct or operate any project or facility or make any order or take any action which would impede or interfere with the rights, powers, privileges, conditions or obligations contained in said decree;

(b) Impose or collect any fee, charge or assessment with respect to diversions of waters of the basin permitted by said decree;

(c) Exercise any jurisdiction, except upon consent of all the parties to said decree, over the planning, design, construction, operation or control of any projects, structures or facilities constructed or used in connection with withdrawals, diversions and releases of waters of the basin authorized by said decree or of the withdrawals, diversions or releases to be made thereunder; or

(d) Serve as river master under said decree, except upon consent of all the parties thereto.

### Section 3.6     General Powers.

The commission may:

(a) Plan, design, acquire, construct, reconstruct, complete, own, improve, extend, develop, operate and maintain any and all projects, facilities, properties, activities and services, determined by the commission to be necessary, convenient or useful for the purposes of this Compact;

(b) Establish standards of planning, design and operation of all projects and facilities in the basin which affect its water resources, including without limitation thereto water and waste treatment plants, stream and lake recreational facilities, trunk mains for water distribution, local flood protection works, small watershed management programs, and ground water recharging operations;

(c) Conduct and sponsor research on water resources, their planning, use, conservation, management, development, control and protection, and the capacity, adaptability and best utility of each facility thereof, and collect, compile, correlate, analyze, report and interpret data on water resources and uses in the basin, including without limitation thereto the relation of water to other resources, industrial water technology, ground water movement, relation between water price and water demand, and general hydrological conditions;

(d) Compile and coordinate systematic stream stage and ground water level forecasting data, and publicize such information when and as needed for water uses, flood warning, quality maintenance or other purposes;

(e) Conduct such special ground water investigations, tests, and operations and compile such data relating thereto as may be required to formulate and administer the comprehensive plan;

(f) Prepare, publish and disseminate information and reports with respect to the water problems of the basin and for the presentation of the needs, resources and policies of the basin to executive and legislative branches of the signatory parties;

(g) Negotiate for such loans, grants, services or other aids as may be lawfully available from public or private sources to finance or assist in effectuating any of the purposes of this Compact; and to receive and accept such aid upon such terms and conditions, and subject to such provisions for repayment as may be required by federal or state law or as the commission may deem necessary or desirable;

(h) Exercise such other and different powers as may be delegated to it by this Compact or otherwise pursuant to law and have and exercise all powers necessary or convenient to carry out its express powers or which may be reasonably implied therefrom.

### Section 3.7     Rates and Charges.

The commission may from time to time after public notice and hearing fix, alter and revise rates, rentals, charges and tolls and classifications thereof, for the use of facilities which it may own or operate and for products and services rendered thereby, without regulation or control by any department, office or agency of any signatory party.

### Section 3.8    Referral and Review.

No project having a substantial effect on the water resources of the basin shall hereafter be undertaken by any person, corporation or governmental authority unless it shall have been first submitted to and approved by the commission, subject to the provisions of Sections 3.3 and 3.5. The commission shall approve a project whenever it finds and determines that such project would not substantially impair or conflict with the comprehensive plan and may modify and approve as modified, or may disapprove any such project whenever it finds and determines that the project would substantially impair or conflict with such plan. The commission shall provide by regulation for the procedure of submission, review and consideration of projects, and for its determinations pursuant to this section. Any determination of the commission hereunder shall be subject to judicial review in any court of competent jurisdiction.

### Section 3.9    Coordination and Cooperation.

The commission shall promote and aid the coordination of the activities and programs of federal, state, municipal and private agencies concerned with water resources administration in the basin. To this end, but with limitation thereto, the commission may:

(a) Advise, consult, contract, financially assist, or otherwise cooperate with any and all such agencies;

(b) Employ any other agency or instrumentality of any of the signatory parties or of any political subdivision thereof, in the design, construction, operation and maintenance of structures, and the installation and management of river control systems, or for any other purpose;

(c) Develop and adopt plans and specifications for particular water resources projects and facilities which so far as consistent with the comprehensive plan incorporate any separate plans of other public and private organizations operating in the basin, and permit the decentralized administration thereof;

(d) Qualify as a sponsoring agency under any federal legislation heretofore or hereafter enacted to provide financial or other assistance for the planning, conservation, utilization, development, management or control of water resources.

### Section 3.10    Advisory Committees.

The commission may constitute and empower advisory committees, which may be comprised of representatives of the public and of federal, state, county and municipal governments, water resources agencies, water-using industries, water-interest groups, labor and agriculture.

# ARTICLE 4

## WATER SUPPLY

### Section 4.1    Generally.

The commission shall have power to develop, implement and effectuate plans and projects for the use of the water of the basin for domestic, municipal, agricultural and industrial water supply. To this end, without limitation thereto, it may provide for, construct, acquire, operate and maintain dams, reservoirs and other facilities for utilization of surface and ground water resources, and all

related structures, appurtenances and equipment on the river and its tributaries and at such off-river sites as it may find appropriate, and may regulate and control the use thereof.

### Section 4.2    Storage and Release of Waters.

(a) The commission shall have power to acquire, operate and control projects and facilities for the storage and release of waters, for the regulation of flows and supplies of surface and ground waters of the basin, for the protection of public health, stream quality control, economic development, improvement of fisheries, recreation, dilution and abatement of pollution, the prevention of undue salinity and other purposes.

(b) No signatory party shall permit any augmentation of flow to be diminished by the diversion of any water of the basin during any period in which waters are being released from storage under the direction of the commission for the purpose of augmenting such flow, except in cases where such diversion is duly authorized by this Compact, or by the commission pursuant thereto, or by the judgment, order or decree of a court of competent jurisdiction.

### Section 4.3    Assessable Improvements.

The commission may undertake to provide stream regulation in the main stream or any tributary in the basin and may assess on an annual basis or otherwise the cost thereof upon water users or any classification of them specially benefited thereby to a measurable extent, provided that no such assessment shall exceed the actual benefit to any water user. Any such assessment shall follow the procedure prescribed by law for local improvement assessments and shall be subject to judicial review in any court of competent jurisdiction.

### Section 4.4    Coordination.

Prior to entering upon the execution of any project authorized by this article, the commission shall review and consider all existing rights, plans and programs of the signatory parties, their political subdivisions, private parties, and water users which are pertinent to such project, and shall hold a public hearing on each proposed project.

### Section 4.5    Additional Powers.

In connection with any project authorized by this article, the commission shall have power to provide storage, treatment, pumping and transmission facilities, but nothing herein shall be construed to authorize the commission to engage in the business of distributing water.

# ARTICLE 5

# POLLUTION CONTROL

### Section 5.1    General Powers.

The commission may undertake investigations and surveys, and acquire, construct, operate and maintain projects and facilities to control potential pollution and abate or dilute existing pollution of the water resources of the basin. It may invoke as complainant the power and jurisdiction of water pollution abatement agencies of the signatory parties.

### Section 5.2    Policy and Standards.

The commission may assume jurisdiction to control future pollution and abate existing pollution in the waters of the basin, whenever it determines after investigation and public hearing upon due notice that the effectuation of the comprehensive plan so requires. The standard of such control shall be that pollution by sewage or industrial or other waste originating within a signatory state shall not injuriously affect waters of the basin as contemplated by the comprehensive plan. The commission, after such public hearing may classify the waters of the basin and establish standards of treatment of sewage, industrial or other waste, according to such classes including allowance for the variable factors of surface and ground waters, such as size of the stream, flow, movement, location, character, self-purification, and usage of the waters affected. After such investigation, notice and hearing the commission may adopt and from time to time amend and repeal rules, regulations and standards to control such future pollution and abate existing pollution, and to require such treatment of sewage, industrial or other waste within a time reasonable for the construction of the necessary works, as may be required to protect the public health or to preserve the waters of the basin for uses in accordance with the comprehensive plan.

### Section 5.3    Cooperative Legislation and Administration.

Each of the signatory parties covenants and agrees to prohibit and control pollution of the waters of the basin according to the requirements of this Compact and to cooperate faithfully in the control of future pollution in and abatement of existing pollution from the rivers, streams, and waters in the basin which flow through, under, into or border upon any of such signatory states, and in order to effect such object, agrees to enact any necessary legislation to enable each such party to place and maintain the waters of said basin in a satisfactory condition, available for safe and satisfactory use as public and industrial water supplies after reasonable treatment, suitable for recreational usage, capable of maintaining fish and other aquatic life, free from unsightly or malodorous nuisances due to floating solids or sludge deposits and adaptable to such other uses as may be provided by the comprehensive plan.

### Section 5.4    Enforcement.

The commission may, after investigation and hearing, issue an order or orders upon any person or public or private corporation, or other entity, to cease the discharge of sewage, industrial or other waste into waters of the basin which it determines to be in violation of such rules and regulations as it shall have adopted for the prevention and abatement of pollution. Any such order or orders may prescribe the date, including a reasonable time for the construction of any necessary works, on or before which such discharge shall be wholly or partially discontinued, modified or treated, or otherwise conformed to the requirements of such rules and regulations. Such order shall be reviewable in any court of competent jurisdiction. The courts of the signatory parties shall have jurisdiction to enforce against any person, public or private corporation, or other entity, any and all provisions of this article or of any such order. The commission may bring an action in its own name in any such court of competent jurisdiction to compel compliance with any provision of this article, or any rule or regulation issued pursuant thereto or of any such order, according to the practice and procedure of the court.

### Section 5.5    Further Jurisdiction.

Nothing in this Compact shall be construed to repeal, modify or qualify the authority of any signatory party to enact any legislation or enforce any additional conditions and restrictions to lessen or prevent the pollution of waters within its jurisdiction.

# ARTICLE 6

## FLOOD PROTECTION

### Section 6.1     General Powers.

The commission may plan, design, construct and operate and maintain projects and facilities, as it may deem necessary or desirable for flood damage reduction. It shall have power to operate such facilities and to store and release waters on the Delaware River and its tributaries and elsewhere within the basin, in such manner, at such times, and under such regulations as the commission may deem appropriate to meet flood conditions as they may arise.

### Section 6.2     Flood Plain Zoning.

(a) The commission shall have power to adopt, amend and repeal recommended standards, in the manner provided by this section, relating to the nature and extent of the uses of land in areas subject to flooding by waters of the Delaware River and its tributaries. Such standards shall not be deemed to impair or restrict the power of the signatory parties or their political subdivisions to adopt zoning and other land use regulations not inconsistent therewith.

(b) The commission may study and determine the nature and extent of the flood plains of the Delaware River and its tributaries. Upon the basis of such studies, it may establish encroachment lines and delineate the areas subject to flood, including a classification of lands with reference to relative risk of flood and the establishment of standards for flood plain use which will safeguard the public health, safety and property. Prior to the adoption of any standards delineating such area or defining such use, the commission shall hold public hearings, in the manner provided by Article 14, with respect to the substance of such standards. At or before such public hearings the proposed standards shall be available and all interested persons shall be given an opportunity to be heard thereon at the hearing. Upon the adoption and promulgation of such standards, the commission may enter into agreements to provide technical and financial aid to any municipal corporation for the administration and enforcement of any local land use ordinances or regulations giving effect to such standards.

### Section 6.3     Flood Lands Acquisition.

The commission shall have power to acquire the fee or any lesser interest in lands and improvements thereon within the area of a flood plain for the purpose of restricting the use of such property so as to minimize the flood hazard, converting property to uses appropriate to flood plain conditions, or preventing unwarranted constrictions that reduce the ability of the river channel to carry flood water. Any such action shall be in accord with the standards adopted and promulgated pursuant to Section 6.2.

### Section 6.4     Flood and Stream Stage Warnings and Posting.

The commission may cause lands particularly subject to flood to be posted with flood hazard warnings, and may from time to time cause flood advisory notices to be published and circulated as conditions may warrant.

# ARTICLE 7

## WATERSHED MANAGEMENT

### Section 7.1    Watersheds Generally.

The commission shall promote sound practices of watershed management in the basin, including projects and facilities to retard runoff and waterflow and prevent soil erosion.

### Section 7.2    Soil Conservation and Forestry.

The commission may acquire, sponsor or operate facilities and projects to encourage soil conservation, prevent and control erosion, and to promote land reclamation and sound forestry practices.

### Section 7.3    Fish and Wildlife.

The commission may acquire, sponsor or operate projects and facilities for the maintenance and improvement of fish and wildlife habitats related to the water resources of the basin.

### Section 7.4    Cooperative Planning and Operation.

(a) The commission shall cooperate with the appropriate agencies of the signatory parties and with other public and private agencies in the planning and effectuation of a coordinated program of facilities and projects authorized by this article.

(b) The commission shall not operate any such project or facility unless it has first found and determined that no other suitable unit or agency of government is available to operate the same upon reasonable conditions, in accordance with the intent and purpose expressed in Section 1.5 of this Compact.

# ARTICLE 8

## RECREATION

### Section 8.1    Development.

The commission shall provide for the development of water related public sports and recreational facilities. The commission on its own account or in cooperation with a signatory party, political subdivision or any agency thereof, may provide for the construction, maintenance and administration of such facilities, subject to the provisions of Section 8.2 hereof.

### Section 8.2    Cooperative Planning and Operation.

(a) The commission shall cooperate with the appropriate agencies of the signatory parties and with other public and private agencies in the planning and effectuation of a coordinated program of facilities and projects authorized by this article.

(b) The commission shall not operate any such project or facility unless it has first found and determined that no other suitable unit or agency of government is available to operate the same upon reasonable conditions, in accordance with the intent and purpose expressed in Section 1.5 of this Compact.

### Section 8.3    Operation and Maintenance.

The commission, within limits prescribed by this article, shall:

(a) Encourage activities of other public agencies having water related recreational interests and assist in the coordination thereof;

(b) Recommend standards for the development and administration of water related recreational facilities;

(c) Provide for the administration, operation and maintenance of recreational facilities owned or controlled by the commission and for the letting and supervision of private concessions in accordance with this article.

### Section 8.4    Concessions.

The commission shall after notice and public hearing provide by regulation for the award of contracts for private concessions in connection with recreational facilities, including any renewal or extension thereof, upon sealed competitive bids after public advertisement therefore.

# ARTICLE 9

## HYDROELECTRIC POWER

### Section 9.1    Development.

The waters of the Delaware River and its tributaries may be impounded and used by or under authority of the commission for the generation of hydroelectric power and hydroelectric energy, in accordance with the comprehensive plan.

### Section 9.2    Power Generation.

The commission may develop and operate, or authorize to be developed and operated, dams and related facilities and appurtenances for the purpose of generating hydroelectric power and hydroelectric energy.

### Section 9.3    Transmission.

The commission may provide facilities for the transmission of hydroelectric power and hydroelectric energy produced by it where such facilities are not otherwise available upon reasonable terms, for the purpose of wholesale marketing of power and nothing herein shall be construed to authorize the commission to engage in the business of direct sale to consumers.

### Section 9.4    Development Contracts.

The commission may after public notice and hearing enter into contracts on reasonable terms, consideration and duration under which public utilities or public agencies may develop hydroelectric power and hydroelectric energy through the use of dams, related facilities and appurtenances.

## Section 9.5    Rates and Charges.

Rates and charges fixed by the commission for power which is produced by its facilities shall be reasonable, nondiscriminatory, and just.

# ARTICLE 10

# REGULATION OF WITHDRAWALS AND DIVERSIONS

## Section 10.1    Power of Regulation.

The commission may regulate and control withdrawals and diversions from surface waters and ground waters of the basin, as provided by this article. The commission may enter into agreements with the signatory parties relating to the exercise of such power or regulation or control and may delegate to any of them such powers of the commission as it may deem necessary or desirable.

## Section 10.2    Determination of Protected Areas.

The commission may from time to time after public hearing upon due notice determine and delineate such areas within the basin wherein the demands upon supply made by water users have developed or threaten to develop to such a degree as to create a water shortage or to impair or conflict with the requirements or effectuation of the comprehensive plan, and any such areas may be designated as "protected areas." The commission, whenever it determines that such shortage no longer exists, shall terminate the protected status of such area and shall give public notice of such termination.

## Section 10.3    Withdrawal Permits.

In any protected areas so determined and delineated, no person, firm, corporation or other entity shall divert or withdraw water for domestic, municipal, agricultural or industrial uses in excess of such quantities as the commission may prescribe by general regulation, except (i) pursuant to a permit granted under this article, or (ii) pursuant to a permit or approval heretofore granted under the laws of any of the signatory states.

## Section 10.4    Emergency.

In the event of a drought or other condition which may cause an actual and immediate shortage of available water supply within the basin, or within any part thereof, the commission may, after public hearing, determine and delineate the area of such shortage and declare a water supply emergency therein. For the duration of such emergency as determined by the commission no person, firm, corporation or other public or private entity shall divert or withdraw water for any purpose, in excess of such quantities as the commission may prescribe by general regulation or authorize by special permit granted hereunder.

## Section 10.5    Standards.

Permits shall be granted, modified or denied as the case may be so as to avoid such depletion of the natural stream flows and ground waters in the protected area or in an emergency area as will adversely affect the comprehensive plan or the just and equitable interests and rights of other lawful users of the same source, giving due regard to the need to balance and reconcile alternative and conflicting uses in the event of an actual or threatened shortage of water of the quality required.

### Section 10.6    Judicial Review.

The determinations and delineations of the commission pursuant to Section 10.2 and the granting, modification or denial of permits pursuant to Section 10.3 through 10.5 shall be subject to judicial review in any court of competent jurisdiction.

### Section 10.7    Maintenance of Records.

Each state shall provide for the maintenance and preservation of such records of authorized diversions and withdrawals and the annual volume thereof as the commission shall prescribe. Such records and supplementary reports shall be furnished to the commission at its request.

### Section 10.8    Existing State Systems.

Whenever the commission finds it necessary or desirable to exercise the powers conferred by this article any diversion or withdrawal permits authorized or issued under the laws of any of the signatory states shall be superseded to the extent of any conflict with the control and regulation exercised by the commission.

# ARTICLE 11

# INTERGOVERNMENTAL RELATIONS

### Section 11.1    Federal Agencies and Projects.

For the purposes of avoiding conflicts of jurisdiction and of giving full effect to the commission as a regional agency of the signatory parties, the following rules shall govern federal projects affecting the water resources of the basin, subject in each case to the provisions of Section 1.4 of this Compact:

(a) The planning of all projects related to powers delegated to the commission by this Compact shall be undertaken in consultation with the commission;

(b) No expenditure or commitment shall be made for or on account of the construction, acquisition or operation of any project or facility nor shall it be deemed authorized, unless it shall have first been included by the commission in the comprehensive plan;

(c) Each federal agency otherwise authorized by law to plan, design, construct, operate or maintain any project or facility in or for the basin shall continue to have, exercise and discharge such authority except as specifically provided by this section.

### Section 11.2    State and Local Agencies and Projects.

For the purposes of avoiding conflicts of jurisdiction and of giving full effect to the commission as a regional agency of the signatory parties, the following rules shall govern projects of the signatory states, their political subdivisions and public corporations affecting water resources of the basin:

(a) The planning of all projects related to powers delegated to the commission by this Compact shall be undertaken in consultation with the commission;

(b) No expenditure or commitment shall be made for or on account of the construction, acquisition or operation of any project or facility unless it shall have first been included by the commission in the comprehensive plan;

(c) Each state and local agency otherwise authorized by law to plan, design, construct, operate or maintain any project or facility in or for the basin shall continue to have, exercise and discharge such authority, except as specifically provided by this section.

### Section 11.3   Reserved Taxing Powers of States.

Each of the signatory parties reserves the right to levy, assess and collect fees, charges and taxes on or measured by the withdrawal or diversion of waters of the basin for use within the jurisdictions of the respective signatory parties.

### Section 11.4   Project Costs and Evaluation Standards.

The commission shall establish uniform standards and procedures for the evaluation, determination of benefits, and cost allocations of projects affecting the basin, and for the determination of project priorities, pursuant to the requirements of the comprehensive plan and its water resources program. The commission shall develop equitable cost sharing and reimbursement formulas for the signatory parties including:

(a) Uniform and consistent procedures for the allocation of project costs among purposes included in multiple-purpose programs;

(b) Contracts and arrangements for sharing financial responsibility among and with signatory parties, public bodies, groups and private enterprise, and for the supervision of their performance;

(c) Establishment and supervision of a system of accounts for reimbursable purposes and directing the payments and charges to be made from such accounts;

(d) Determining the basis and apportioning amounts (i) of reimbursable revenues to be paid signatory parties or their political subdivisions, and (ii) of payments in lieu of taxes to any of them.

### Section 11.5   Cooperative Services.

The commission shall furnish technical services, advice and consultation to authorized agencies of the signatory parties with respect to the water resources of the basin, and each of the signatory parties pledges itself to provide technical and administrative services to the commission upon request, within the limits of available appropriations and to cooperate generally with the commission for the purposes of this Compact, and the cost of such services may be reimbursable whenever the parties deem appropriate.

# ARTICLE 12

# CAPITAL FINANCING

### Section 12.1   Borrowing Power.

The commission may borrow money for any of the purposes of this Compact, and may issue its negotiable bonds and other evidences of indebtedness in respect thereto.

All such bonds and evidences of indebtedness shall be payable solely out of the properties and revenues of the commission without recourse to taxation. The bonds and other obligations of the commission, except as may be otherwise provided in the indenture under which they were issued, shall be direct and general obligations of the commission and the full faith and credit of the commission are hereby pledged for the prompt payment of the debt service thereon and for the fulfillment of all other undertakings of the commission assumed by it to or for the benefit of the holders thereof.

## Section 12.2    Funds and Expenses.

The purpose of this Compact shall include without limitation thereto all costs of any project or facility or any part thereof, including interest during a period of construction and a reasonable time thereafter and any incidental expenses (legal, engineering, fiscal, financial consultant and other expenses) connected with issuing and disposing of the bonds; all amounts required for the creation of an operating fund, construction fund, reserve fund, sinking fund, or other special fund; all other expenses connected with the planning, design, acquisition, construction, completion, improvement or reconstruction of any facility or any part thereof; and reimbursement of advances by the commission or by others for such purposes and for working capital.

## Section 12.3    Credit Excluded; Officers, State and Municipal.

The commission shall have no power to pledge the credit of any signatory party, or of any county or municipality, or to impose any obligation for payment of the bonds upon any signatory party or any county or municipality. Neither the commissioners nor any person executing the bonds shall be liable personally on the bonds of the commission or be subject to any personal liability or accountability by reason of the issuance thereof.

## Section 12.4    Funding and Refunding.

Whenever the commission deems it expedient, it may fund and refund its bonds and other obligations whether or not such bonds and obligations have matured. It may provide for the issuance, sale or exchange of refunding bonds for the purpose of redeeming or retiring any bonds (including the payment of any premium, duplicate interest or cash adjustment required in connection therewith) issued by the commission or issued by any other issuing body, the proceeds of the sale of which have been applied to any facility acquired by the commission or which are payable out of the revenues of any facility acquired by the commission. Bonds may be issued partly to refund bonds and other obligations then outstanding, and partly for any other purpose of the commission. All provisions of this Compact applicable to the issuance of bonds are applicable to refunding bonds and to the issuance, sale or exchange thereof.

## Section 12.5    Bonds; Authorization Generally.

Bonds and other indebtedness of the commission shall be authorized by resolution of the commission. The validity of the authorization and issuance of any bonds by the commission shall not be dependent upon nor affected in any way by: (i) the disposition of bond proceeds by the commission or by contract, commitment or action taken with respect to such proceeds; or (ii) the failure to complete any part of the project for which bonds are authorized to be issued. The commission may issue bonds in one or more series and may provide for one or more consolidated bond issues, in such principal amounts and with such terms and provisions as the commission may deem necessary. The bonds may be secured by a pledge of all or any part of the property, revenues and franchises under its control. Bonds may be issued by the commission in such amount, with

such maturities and in such denominations and form or forms, whether coupon or registered, as to both principal and interest, as may be determined by the commission. The commission may provide for redemption of bonds prior to maturity on such notice and at such time or times and with such redemption provisions, including premiums, as the commission may determine.

## Section 12.6    Bonds; Resolutions and Indentures Generally.

The commission may determine and enter into indentures providing for the principal amount, date or dates, maturities, interest rate, denominations, form, registration, transfer, interchange and other provisions of the bonds and coupons and the terms and conditions upon which the same shall be executed, issued, secured, sold, paid, redeemed, funded and refunded. The resolution of the commission authorizing any bond or any indenture so authorized under which the bonds are issued may include all such covenants and other provisions other than any restriction on the regulatory powers vested in the commission by this Compact as the commission may deem necessary or desirable for the issue, payment, security, protection or marketing of the bonds, including without limitation covenants and other provisions as to the rates or amounts of fees, rents and other charges to be charged or made for use of the facilities; the use, pledge, custody, securing, application and disposition of such revenues, of the proceeds of the bonds, and of any other moneys of the commission; the operation, maintenance, repair and reconstruction of the facilities and the amounts which may be expended therefor; the sale, lease or other disposition of the facilities; the insuring of the facilities and of the revenues derived therefrom; the construction or other acquisition of other facilities; the issuance of additional bonds or other indebtedness; the rights of the bondholders and of any trustee for the bondholders upon default by the commission or otherwise; and the modification of the provisions of the indenture and of the bonds. Reference on the face of the bonds to such resolution or indenture by its date of adoption or the apparent date on the face thereof is sufficient to incorporate all of the provisions thereof and of this Compact into the body of the bonds and their appurtenant coupons. Each taker and subsequent holder of the bonds or coupons, whether the coupons are attached to or detached from the bonds, has recourse to all of the provisions of the indenture and of this Compact and is bound thereby.

## Section 12.7    Maximum Maturity.

No bond or its terms shall mature in more than fifty years from its own date and in the event any authorized issue is divided into two or more series or divisions, the maximum maturity date herein authorized shall be calculated from the date on the face of each bond separately, irrespective of the fact that different dates may be prescribed for the bonds of each separate series or division of any authorized issue.

## Section 12.8    Tax Exemption.

All bonds issued by the commission under the provisions of this Compact and the interest thereof shall at all times be free and exempt from all taxation by or under authority of any of the signatory parties, except for transfer, inheritance and estate taxes.

## Section 12.9    Interest.[2]

Bonds shall bear interest at a rate determined by the commission, payable annually or semi-annually.

---

[2] Section 12.9 appears as amended on October 17, 1984.

## Section 12.10  Place of Payment.

The commission may provide for the payment of the principal and interest of bonds at any place or places within or without the signatory states, and in any specified lawful coin or currency of the United States of America.

## Section 12.11  Execution.

The commission may provide for the execution and authentication of bonds by the manual, lithographed or printed facsimile signature of officers of the commission, and by additional authentication by a trustee or fiscal agent appointed by the commission. If any of the officers whose signatures or counter signatures appear upon the bonds or coupons cease to be officers before the delivery of the bonds or coupons, their signatures or counter signatures are nevertheless valid and of the same force and effect as if the officers had remained in office until the delivery of the bonds and coupons.

## Section 12.12  Holding Own Bonds.

The commission shall have power out of any funds available therefor to purchase its bonds and may hold, cancel or resell such bonds.

## Section 12.13  Sale.

The commission may fix terms and conditions for the sale or other disposition of any authorized issue of bonds. The commission may sell bonds at less than their par or face value but no issue of bonds may be sold at an aggregate price below the par or face value thereof if such sale would result in a net interest cost to the commission calculated upon the entire issue so sold of more than six percent per annum payable semi-annually, according to standard tables of bond values. All bonds issued and sold for cash pursuant to this act shall be sold on sealed proposals to the highest bidder. Prior to such sale, the commission shall advertise for bids by publication of a notice of sale not less than ten days prior to the date of sale, at least once in a newspaper of general circulation printed and published in New York City carrying municipal bond notices and devoted primarily to financial news. The commission may reject any and all bids submitted and may thereafter sell the bonds so advertised for sale at private sale to any financially responsible bidder under such terms and conditions as it deems most advantageous to the public interest, but the bonds shall not be sold at a net interest cost calculated upon the entire issue so advertised, greater than the lowest bid which was rejected. In the event the commission desires to issue its bonds in exchange for an existing facility or portion thereof, or in exchange for bonds secured by the revenues of an existing facility, it may exchange such bonds for the existing facility or portion thereof or for the bonds so secured, plus an additional amount of cash, without advertising such bonds for sale.

## Section 12.14  Negotiability.

All bonds issued under the provisions of this Compact are negotiable instruments, except when registered in the name of a registered owner.

## Section 12.15  Legal Investments.

Bonds of the commission shall be legal investments for savings banks, fiduciaries and public funds in each of the signatory states.

### Section 12.16 Validation Proceedings.

Prior to the issuance of any bonds, the commission may institute a special proceeding to determine the legality of proceedings to issue the bonds and their validity under the laws of any of the signatory parties. Such proceeding shall be instituted and prosecuted *in rem* and the judgment rendered therein shall be conclusive against all persons whomsoever and against each of the signatory parties.

### Section 12.17 Recording.

No indenture need be recorded or filed in any public office, other than the office of the commission. The pledge of revenues provided in any indenture shall take effect forthwith as provided therein and irrespective of the date of receipts of such revenues by the commission or the indenture trustee. Such pledge shall be effective as provided in the indenture without physical delivery of the revenues to the commission or to the indenture trustee.

### Section 12.18 Pledged Revenues.

Bond redemption and interest payments shall, to the extent provided in the resolution or indenture, constitute a first, direct and exclusive charge and lien on all such rates, rents, tolls, fees and charges and other revenues and interest thereon received from the use and operation of the facility, and on any sinking or other funds created therefrom.  All such rates, rents, tolls, fees, charges and other revenues, together with interest thereon, shall constitute a trust fund for the security and payment of such bonds and except as and to the extent provided in the indenture with respect to the payment therefrom of expenses for other purposes including administration, operation, maintenance, improvements or extensions of the facilities or other purposes shall not be used or pledged for any other purpose so long as such bonds, or any of them, are outstanding and unpaid.

### Section 12.19 Remedies.

The holder of any bond may for the equal benefit and protection of all holders of bonds similarly situated:

(a) by mandamus or other appropriate proceedings require and compel the performance of any of the duties imposed upon the commission or assumed by it, its officers, agents or employees under the provisions of any indenture, in connection with the acquisition, construction, operation, maintenance, repair, reconstruction or insurance of the facilities, or in connection with the collection, deposit, investment, application and disbursement of the rates, rents, tolls, fees, charges and other revenues derived from the operation and use of the facilities, or in connection with the deposit, investment and disbursement of the proceeds received from the sale of bonds; or (b) by action or suit in a court of competent jurisdiction of any signatory party require the commission to account as if it were the trustee of an express trust, or enjoin any acts or things which may be unlawful or in violation of the rights of the holders of the bonds. The enumeration of such rights and remedies does not, however, exclude the exercise or prosecution of any other rights or remedies available to the holders of bonds.

_____

### Section 12.20  Capital Financing by Signatory Parties; Guarantees.

(a) The signatory parties will provide such capital funds required for projects of the commission as may be authorized by their respective statutes in accordance with a cost sharing plan prepared pursuant to Article 11 of this Compact; but nothing in this section shall be deemed to impose any mandatory obligation on any of the signatory parties other than such obligations as may be assumed by a signatory party in connection with a specific project or facility.

(b) Bonds of the commission, notwithstanding any other provision of this Compact, may be executed and delivered to any duly authorized agency of any of the signatory parties without public offering and may be sold and resold with or without the guaranty of such signatory party, subject to and in accordance with the constitutions of the respective signatory parties.

(c) The commission may receive and accept, and the signatory parties may make, loans, grants, appropriations, advances and payments of reimbursable or non-reimbursable funds or property in any form for the capital or operating purposes of the commission.

# ARTICLE 13

# PLAN, PROGRAM AND BUDGETS

### Section 13.1   Comprehensive Plan.

The commission shall develop and adopt, and may from time to time review and revise, a comprehensive plan for the immediate and long range development and use of the water resources of the basin. The plan shall include all public and private projects and facilities which are required, in the judgment of the commission, for the optimum planning, development, conservation, utilization, management and control of the water resources of the basin to meet present and future needs; provided that the plan shall include any projects required to conform with any present or future decree or judgment of any court of competent jurisdiction. The commission may adopt a comprehensive plan or any revision thereof in such part or parts as it may deem appropriate, provided that before the adoption of the plan or any part or revision thereof the commission shall consult with water users and interested public bodies and public utilities and shall consider and give due regard to the findings and recommendations of the various agencies of the signatory parties and their political subdivisions. The commission shall conduct public hearings with respect to the comprehensive plan prior to the adoption of the plan or any part of the revision thereof.

### Section 13.2   Water Resources Program.

The commission shall annually adopt a water resources program, based upon the comprehensive plan, consisting of the projects and facilities which the commission proposes to be undertaken by the commission and by other authorized governmental and private agencies, organizations and persons during the ensuing six years or such other reasonably foreseeable period as the commission may determine. The water resources program shall include a systematic presentation of:

(1) the quantity and quality of water resources needs for such period;

(2) the existing and proposed projects and facilities required to satisfy such needs, including all public and private projects to be anticipated;

_____

(3) a separate statement of the projects proposed to be undertaken by the commission during such period.

### Section 13.3   Annual Current Expense and Capital Budgets.

(a) The commission shall annually adopt a capital budget including all capital projects it proposes to undertake or continue during the budget period containing a statement of the estimated cost of each project and the method of financing thereof.

(b) The commission shall annually adopt a current expense budget for each fiscal year. Such budget shall include the commission's estimated expenses for administration, operation, maintenance and repairs, including a separate statement thereof for each project, together with its cost allocation. The total of such expenses shall be balanced by the commission's estimated revenues from all sources, including the cost allocations undertaken by any of the signatory parties in connection with any project. Following the adoption of the annual current expense budget by the commission, the executive director of the commission shall:

(1) certify to the respective signatory parties the amounts due in accordance with existing cost sharing established for each project; and

(2) transmit certified copies of such budget to the principal budget officer of the respective signatory parties at such time and in such manner as may be required under their respective budgetary procedures. The amount required to balance the current expense budget in addition to the aggregate amount of item (1) above and all other revenues available to the commission shall be apportioned equitably among the signatory parties by unanimous vote of the commission, and the amount of such apportionment to each signatory party shall be certified together with the budget.

(c) The respective signatory parties covenant and agree to include the amounts so apportioned for the support of the current expense budget in their respective budgets next to be adopted, subject to such review and approval as may be required by their respective budgetary processes. Such amounts shall be due and payable to the commission in quarterly installments during its fiscal year, provided that the commission may draw upon its working capital to finance its current expense budget pending remittances by the signatory parties.

# ARTICLE 14

## GENERAL PROVISIONS

### Section 14.1   Auxiliary Powers of Commission; Functions of Commissioners.

(a) The commission, for the purposes of this Compact, may:

(1) Adopt and use a corporate seal, enter into contracts, sue and be sued in all courts of competent jurisdiction;

(2) Receive and accept such payments, appropriations, grants, gifts, loans, advances and other funds, properties and services as may be transferred or made available to it by any signatory party or by any other public or private corporation or individual, and enter into agreements to make reimbursement for all or part thereof;

(3) Provide for, acquire and adopt detailed engineering, administrative, financial and operating plans and specifications to effectuate, maintain or develop any facility or project;

(4) Control and regulate the use of facilities owned or operated by the commission;

(5) Acquire, own, operate, maintain, control, sell and convey real and personal property and any interest therein by contract, purchase, lease, license, mortgage or otherwise as it may deem necessary for any project or facility, including any and all appurtenances thereto necessary, useful or convenient for such ownership, operation, control, maintenance or conveyance;

(6) Have and exercise all corporate powers essential to the declared objects and purposes of the commission.

(b) The commissioners, subject to the provisions of this Compact, shall:

(1) Serve as the governing body of the commission and exercise and discharge its powers and duties except as otherwise provided by or pursuant to this Compact;

(2) Determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid subject to any provisions of law specifically applicable to agencies or instrumentalities created by Compact;

(3) Provide for the internal organization and administration of the commission;

(4) Appoint the principal officers of the commission and delegate to and allocate among them administrative functions, powers and duties;

(5) Create and abolish offices, employments and positions as it deems necessary for the purposes of the commission, and subject to the provisions of this article, fix and provide for the qualification, appointment, removal, term, tenure, compensation, pension and retirement rights of its officers and employees;

(6) Let and execute contracts to carry out the powers of the commission.

## Section 14.2   Regulations; Enforcement.

The commission may:

(a) Make and enforce reasonable rules and regulations for the effectuation, application and enforcement of this Compact; and it may adopt and enforce practices and schedules for or in connection with the use, maintenance and administration of projects and facilities it may own or operate and any product or service rendered thereby; provided that any rule or regulation, other than one which deals solely with the internal management of the commission, shall be adopted only after public hearing and shall not be effective unless and until filed in accordance with the law of the respective signatory parties applicable to administrative rules and regulations generally; and

(b) Designate any officer, agent or employee of the commission to be an investigator or watchman and such person shall be vested with the powers of a peace officer of the state in which he is duly assigned to perform his duties.

### Section 14.3    Tax Exemption.

The commission, its property, functions, and activities shall be exempt from taxation by or under the authority of any of the signatory parties or any political subdivision thereof; provided that in lieu of property taxes the commission shall, as to specific projects, make payments to local taxing districts in annual amounts which shall equal the taxes lawfully assessed upon property for the tax year next prior to its acquisition by the commission for a period of ten years. The nature and amount of such payments shall be reviewed by the commission at the end of ten years, and from time to time thereafter, upon reasonable notice and opportunity to be heard to the affected taxing district, and the payments may be thereupon terminated or continued in such reasonable amount as may be necessary or desirable to take into account hardships incurred and benefits received by the taxing jurisdiction which are attributable to the project.

### Section 14.4    Meetings; Public Hearing; Records, Minutes.

(a) All meetings of the commission shall be open to the public.

(b) The commission shall conduct at least one public hearing prior to the adoption of the comprehensive plan, water resources program, annual capital and current expense budgets, the letting of any contract for the sale or other disposition by the commission of hydroelectric energy or water resources to any person, corporation or entity, and in all other cases wherein this Compact requires a public hearing. Such hearing shall be held upon at least ten days public notice given by posting at the offices of the commission. The commission shall also provide forthwith for distribution of such notice to the press and by the mailing of a copy thereof to any person who shall request such notices.

(c) The minutes of the commission shall be a public record open to inspection at its offices during regular business hours.

### Section 14.5    Officers Generally.

(a) The officers of the commission shall consist of an executive director and such additional officers, deputies and assistants as the commission may determine. The executive director shall be appointed and may be removed by the affirmative vote of a majority of the full membership of the commission. All other officers and employees shall be appointed by the executive director under such rules of procedure as the commission may determine.

(b) In the appointment and promotion of officers and employees for the commission, no political, racial, religious or residence test or qualification shall be permitted or given consideration, but all such appointments and promotions shall be solely on the basis of merit and fitness. Any officer or employee of the commission who is found by the commission to be guilty of a violation of this section shall be removed from office by the commission.

### Section 14.6    Oath of Office.

An oath of office in such form as the commission shall prescribe shall be taken, subscribed and filed with the commission by the executive director and by each officer appointed by him not later than fifteen days after the appointment.

### Section 14.7    Bond.

Each officer shall give such bond and in such form and amount as the commission may require for which the commission may pay the premium.

## Section 14.8   Prohibited Activities.

(a) No commissioner, officer or employee shall:

(1) be financially interested, either directly or indirectly, in any contract, sale, purchase, lease or transfer of real or personal property to which the commission is a party;

(2) solicit or accept money or any other thing of value in addition to the compensation or expenses paid him by the commission for services performed within the scope of his official duties;

(3) offer money or anything of value for or in consideration of obtaining an appointment, promotion or privilege in his employment with the commission.

(b) Any officer or employee who shall willfully violate any of the provisions of this section shall forfeit his office or employment.

(c) Any contract or agreement knowingly made in contravention of this section is void.

(d) Officers and employees of the commission shall be subject in addition to the provisions of this section to such criminal and civil sanctions for misconduct in office as may be imposed by federal law and the law of the signatory state in which such misconduct occurs.

## Section 14.9   Purchasing.

Contract for the construction, reconstruction or improvement of any facility when the expenditure required exceeds ten thousand dollars and contracts for the purchase of services, supplies, equipment and materials when the expenditure required exceeds two thousand five hundred dollars shall be advertised and let upon sealed bids to the lowest responsible bidder. Notice requesting such bids shall be published in a manner reasonably likely to attract prospective bidders, which publication shall be made at least ten days before bids are received and in at least two newspapers of general circulation in the basin. The commission may reject any and all bids and readvertise in its discretion. If after rejecting bids the commission determines and resolves that in its opinion the supplies, equipment and materials may be purchased at a lower price in the open market, the commission may give each responsible bidder an opportunity to negotiate a price and may proceed to purchase the supplies, equipment and materials in the open market at a negotiated price which is lower than the lowest rejected bid of a responsible bidder, without further observance of the provisions requiring bids or notice. The commission shall adopt rules and regulations to provide for purchasing from the lowest responsible bidder when sealed bids, notice and publication are not required by this section. The commission may suspend and waive the provisions of this section requiring competitive bids whenever:

(1) the purchase is to be made from or the contract to be made with the federal or any state government or any agency or political subdivision thereof or pursuant to any open end bulk purchase contract of any of them;

(2) the public exigency requires the immediate delivery of the articles or performance of the service;

(3) only one source of supply is available;

(4) the equipment to be purchased is of a technical nature and the procurement thereof without advertising is necessary in order to assure standardization of equipment and interchangeability of parts in the public interest; or

(5) services are to be provided of a specialized or professional nature.

## Section 14.10  Insurance.

The commission may self-insure or purchase insurance and pay the premiums therefore against loss or damage to any of its properties; against liability for injury to persons or property; and against loss of revenue from any cause whatsoever. Such insurance coverage shall be in such form and amount as the commission may determine, subject to the requirements of any agreement arising out of the issuance of bonds by the commission.

## Section 14.11  Annual Independent Audit.

(a) As soon as practical after the closing of the fiscal year, an audit shall be made of the financial accounts of the commission. The audit shall be made by qualified certified public accountants selected by the commission, who have no personal interest direct or indirect in the financial affairs of the commission or any of its officers or employees. The report of audit shall be prepared in accordance with accepted accounting practices and shall be filed with the chairman and such other officers as the commission shall direct. Copies of the report shall be distributed to each commissioner and shall be made available for public distribution.

(b) Each signatory party by its duly authorized officers shall be entitled to examine and audit at any time all of the books, documents, records, files and accounts and all other papers, things or property of the commission. The representatives of the signatory parties shall have access to all books, documents, records, accounts, reports, files and all other papers, things or property belonging to or in use by the commission and necessary to facilitate the audit and they shall be afforded full facilities for verifying transactions with the balances or securities held by depositaries, fiscal agents and custodians.

(c) The financial transactions of the commission shall be subject to audit by the general accounting office in accordance with the principles and procedures applicable to commercial corporate transactions and under such rules and regulations as may be prescribed by the comptroller general of the United States. The audit shall be conducted at the place or places where the accounts of the commission are kept.

(d) Any officer or employee who shall refuse to give all require  assistance and information to the accountants selected by the commission or to the authorized officers of any signatory party or who shall refuse to submit to them for examination such books, documents, records, files, accounts, papers, things or property as may be requested shall forfeit his office.

## Section 14.12  Reports.

The commission shall make and publish an annual report to the legislative bodies of the signatory parties and to the public reporting on its programs, operations and finances. It may also prepare, publish and distribute such other public reports and informational materials as it may deem necessary or desirable.

### Section 14.13  Grants, Loans or Payments by States or Political Subdivisions.

(a) Any or all of the signatory parties or any political subdivision thereof may:

1) Appropriate to the commission such funds as may be necessary to pay preliminary expenses such as the expenses incurred in the making of borings, and other studies of subsurface conditions, in the preparation of contracts for the sale of water and in the preparation of detailed plans and estimates required for the financing of a project;

2) Advance to the commission, either as grants or loans, such funds as may be necessary or convenient to finance the operation and management of or construction by the commission of any facility or project;

3) Make payments to the commission for benefits received or to be received from the operation of any of the projects or facilities of the commission.

(b) Any funds which may be loaned to the commission either by a signatory party or a political subdivision thereof shall be repaid by the commission through the issuance of bonds or out of other income of the commission, such repayment to be made within such period and upon such terms as may be agreed upon between the commission and the signatory party or political subdivision making the loan.

### Section 14.14  Condemnation Proceedings.

(a) The commission shall have the power to acquire by condemnation the fee or any lesser interest in lands, lands lying under water, development rights in land, riparian rights, water rights, waters and other real or personal property within the basin for any project or facility authorized pursuant to this Compact. This grant of power of eminent domain includes but is not limited to the power to condemn for the purposes of this Compact any property already devoted to a public use, by whomsoever owned or held, other than property of a signatory party and any property held, constructed, operated or maintained in connection with a diversion authorized by a United States Supreme Court decree. Any condemnation of any property or franchises owned or used by a municipal or privately owned public utility, unless the affected public utility facility is to be relocated or replaced, shall be subject to the authority of such state board, commission or other body as may have regulatory jurisdiction over such public utility.

(b) Such power of condemnation shall be exercised in accordance with the provisions of any federal law applicable to the commission; provided that if there is no such applicable federal law, condemnation proceedings shall be in accordance with the provisions of such general state condemnation law as may be in force in the signatory state in which the property is located.

(c) Any award or compensation for the taking of property pursuant to this article shall be paid by the commission, and none of the signatory parties nor any other agency, instrumentality or political subdivision thereof shall be liable for such award or compensation.

### Section 14.15  Conveyance of Lands and Relocation of Public Facilities.

(a) The respective officers, agencies, departments, commissions or bodies having jurisdiction and control over real and personal property owned by the signatory parties are authorized and empowered to transfer and convey in accordance with the laws of the respective parties to the commission any such property as may be necessary or convenient to the effectuation of the authorized purposes of the commission.

(b) Each political subdivision of each of the signatory parties is authorized and empowered, notwithstanding any contrary provision of law, to grant and convey to the commission, upon the commission's request, any real property or any interest therein owned by such political subdivisions including lands lying under water and lands already devoted to public use which may be necessary or convenient to the effectuation of the authorized purposes of the commission.

(c) Any highway, public utility or other public facility which will be dislocated by reason of a project deemed necessary by the commission to effectuate the authorized purposes of this Compact shall be relocated and the cost thereof shall be paid in accordance with the law of the state in which the facility is located; provided that the cost of such relocation payable by the commission shall not in any event exceed the expenditure required to serve the public convenience and necessity.

## Section 14.16  Rights of Way.

Permission is hereby granted to the commission to locate, construct and maintain any aqueducts, lines, pipes, conduits and auxiliary facilities authorized to be acquired, constructed, owned, operated or maintained by the commission in, over, under or across any streets and highways now or hereafter owned, opened or dedicated to or for public use, subject to such reasonable conditions as the highway department of the signatory party may require.

## Section 14.17  Penal Sanction.

Any person, association or corporation who violates or attempts or conspires to violate any provision of this Compact or any rule, regulation or order of the commission duly made, promulgated or issued pursuant to the Compact in addition to any other remedy, penalty or consequence provided by law shall be punishable as may be provided by statute of any of the signatory parties within which the offense is committed; provided that in the absence of such provision any such person, association or corporation shall be liable to a penalty of not less than $50 nor more than $1,000 for each such offense to be fixed by the court which the commission may recover in its own name in any court of competent jurisdiction, and in a summary proceeding where available under the practice and procedure of such court. For the purposes of this section in the event of a continuing offense each day of such violation, attempt or conspiracy shall constitute a separate offense.

## Section 14.18  Tort Liability.

The commission shall be responsible for claims arising out of the negligent acts or omissions of its officers, agents and employees only to the extent and subject to the procedures prescribed by law generally with respect to officers, agents and employees of the government of the United States.

## Section 14.19  Effect on Riparian Rights.

Nothing contained in this Compact shall be construed as affecting or intending to affect or in any way to interfere with the law of the respective signatory parties relating to riparian rights.

## Section 14.20  Amendments and Supplements.

Amendments and supplements to this Compact to implement the purposes thereof may be adopted by legislative action of any of the signatory parties concurred in by all of the others.

## Section 14.21  Construction and Severability.

The provisions of this Act and of agreements thereunder shall be severable and if any phrase, clause, sentence or provision of the Delaware River Basin Compact or such agreement is declared to be unconstitutional or the applicability thereof to any signatory party, agency or person is held invalid, the constitutionality of the remainder of such Compact or such agreement and the applicability thereof to any other signatory party, agency, person or circumstance shall not be affected thereby. It is the legislative intent that the provisions of such Compact be reasonably and liberally construed.

## Section 14.22  Effective Date; Execution.

This Compact shall become binding and effective thirty days after the enactment of concurring legislation by the federal government, the states of Delaware, New Jersey and New York, and the Commonwealth of Pennsylvania. The Compact shall be signed and sealed in six duplicate original copies by the respective chief executives of the signatory parties. One such copy shall be filed with the Secretary of State of each of the signatory parties or in accordance with the laws of the state in which the filing is made, and one copy shall be filed and retained in the archives of the commission upon its organization.

IN WITNESS WHEREOF, and in evidence of the adoption and enactment into law of this Compact by the Congress and legislatures, respectively, of the signatory parties, the President of the United States and the respective Governors do hereby, in accordance with authority conferred by law, sign this Compact in six duplicate original copies, as attested by the respective secretaries of state, and have caused the seals of the United States and of the respective states to be hereunto affixed this **2nd** day of **November, 1961**.

*s/* **JOHN F. KENNEDY**
PRESIDENT OF THE UNITED STATES

*Attest:*

*s/* **DEAN RUSK**
SECRETARY OF STATE

*s/* **ELBERT N. CARVEL**
GOVERNOR OF
THE STATE OF DELAWARE

*s/* **ROBERT B. MEYNER**
GOVERNOR OF
THE STATE OF NEW JERSEY

*Attest:*

*s/* **ELISHA C. DUKES**
SECRETARY OF STATE

*Attest:*

*s/* **EDWARD J. PATTEN**
SECRETARY OF STATE

*s/* **NELSON A. ROCKEFELLER**
GOVERNOR OF
THE STATE OF NEW YORK

*s/* **DAVID L. LAWRENCE**
GOVERNOR OF
THE COMMONWEALTH OF PENNSYLVANIA

*Attest:*

*s/* **CAROLINE K. SIMON**
SECRETARY OF STATE

*Attest:*

*s/* **E. JAMES TRIMARCHI, JR.**
SECRETARY OF THE COMMONWEALTH

# PART II

## EFFECTUATION

## UNITED STATES:  (from Public Law 87-328, 75 Stat. 688)

### Section 15.1   Reservations.

In the exercise of the powers reserved to the Congress, pursuant to Section 1.4 of the Compact, the consent to and participation in the Compact by the United States is subject to the following conditions and reservations:

(a) Notwithstanding any provision of the Delaware River Basin Compact the Delaware River Basin Commission shall not undertake any project (as defined in such Compact), other than a project for which State supplied funds only will be used, beyond the planning stage until –

(1) such commission has submitted to the Congress such complete plans and estimates for such project as may be necessary to make an engineering evaluation of such project, including–

(A) where the project will serve more than one purpose, an allocation of costs among the purposes served and an estimate of the ratio of benefits to costs for each such purpose.

(B) an apportionment of costs among the beneficiaries of the project, including the portion of the costs to be borne by the Federal Government and by State and local governments, and

(C) a proposal for financing the project, including the terms of any proposed bonds or other evidences of indebtedness to be used for such purposes; and

(2) such project has been authorized by Act of Congress.

(b) No provision of Section 3.7 of the Compact shall be deemed to authorize the commission to impose any charge for water withdrawals or diversions from the Basin if such withdrawals or diversions could lawfully have been made without charge on the effective date of the Compact; or to impose any charges with respect to commercial navigation within the Basin, jurisdiction over which is reserved to the Federal Government:  provided, that this paragraph shall be applicable to the extent not inconsistent with Section 1.4 of this Compact.

(c) Nothing contained in the Compact shall be deemed to restrict the executive powers of the President in the event of a national emergency.

(d) Notwithstanding the provisions of Article 2, Section 2.2 of the Compact, the member of the commission appointed by the President of the United States and his alternate shall serve at the pleasure of the President.[3]

---

[3] Section 15.1(d) is as enacted in 1961.  This section was subsequently repealed by Public Law 105-18 in June of 1997. Also see Editor's Note on this subject.

_____

(e) Nothing contained in the Compact shall be construed as impairing or in any manner affecting the applicability to all Federal funds budgeted and appropriated for use by the commission, or such authority over budgetary and appropriation matters as the President and Congress may have with respect to agencies in the Executive Branch of the Federal Government.

(f) Except to the same extent that state bonds are or may continue to be free or exempt from Federal taxation under the internal revenue laws of the United States, nothing contained in the Compact shall be construed as freeing or exempting from internal revenue taxation in any manner whatsoever any bonds issued by the commission, their transfer, or the income therefrom (including any profits made on the sale thereon).

(g) Nothing contained in the Compact shall be construed to obligate the United States legally or morally to pay the principal or interest on any bonds issued by the Delaware River Basin Commission.

(h) Notwithstanding the provisions of Section 11.5 or any other provision of the Compact, the furnishing of technical services to the commission by agencies of the Executive Branch of the Government of the United States is pledged only to the extent that the respective agencies shall from time to time agree thereto or to the extent that the President may from time to time direct such agencies to perform such services for the commission. Nothing in the Compact shall be deemed to require the United States to furnish administrative services or facilities for carrying out functions of the commission except to the extent that the President may direct.

(i) All laborers and mechanics employed by contractors or subcontractors in the construction, alteration or repair, including painting and decorating, of projects, buildings and works which are undertaken by the commission or are financially assisted by it, shall be paid wages at rates not less than those prevailing on similar construction in the locality so determined by the Secretary of Labor in accordance with the Davis-Bacon Act, as amended (40 U. S. C. 276a-276a-5), and every such employee shall receive compensation at a rate not less than one and one-half times his basic rate of pay for all hours worked in any workweek in excess of eight hours in any workday or forty hours in any workweek, as the case may be. A provision stating the minimum wages thus determined and the requirement that overtime be paid as above provided shall be set out in each project advertisement for bids and in each bid proposal form and shall be made a part of the contract covering the project. The Secretary of Labor shall have, with respect to the administration and enforcement of labor standards specified in this provision, the supervisory, investigatory and other authority and functions set forth in Reorganization Plan Numbered 14 of 1950 (15 F. R. 3176, 64 Stat. 1267, 5 U. S. C. 133z-15, and Section 2 of the Act of June 13, 1934, as amended (48 Stat. 948, as amended; 40 U. S. C. 276(c)).

(j) Contracts for the manufacture or furnishing of materials, supplies, articles and equipment with the commission which are in excess of $10,000 shall be subject to the provisions of the Walsh-Healey Public Contracts Act (41 U. S. C. 35 et seq.).

(k) Notwithstanding any other provision of this Act, nothing contained in this Act or in the Compact shall be construed as superseding or limiting the functions, under any other law, of the Secretary of Health, Education, and Welfare or of any other officer or agency of the United States, relating to water pollution: *Provided,* That the exercise of such functions shall not limit the authority of the commission to control, prevent, or abate water pollution.

(l) The provisions of Section 8.4 of Article 8 of the Compact shall not be construed to apply to facilities operated pursuant to any other Federal law.

_____

(m) For purposes of the Act of June 25, 1948, 62 Stat. 982, as amended (Title 28, U. S. Code, chapter 171, and Sections 1346( b) and 240 (b)) and the Act of March 3, 1887, 24 Stat. 505, as amended (Title 28, U. S. Code, Section 1402, 1491, 1496, 1501, 1503, 2071, 2072, 2411, 2412, 2501), and the Act of June 11, 1946, 60 Stat. 237, as amended (Title 5, U. S. Code, Sections 1001 and 1011, Title 50 App. U.S. Code, Section 1900), the commission shall not be considered a Federal agency.

(n) The officers and employees of the commission (other than the United States member, alternate United States member, and advisors, and personnel employed by the United States member under direct Federal appropriation) shall not be deemed to be, for any purpose, officers or employees of the United States or to become entitled at any time by reason of employment by the commission to any compensation or benefit payable or made available by the United States solely and directly to its officers or employees.

(o) Neither the Compact nor this Act shall be deemed to enlarge the authority of any Federal agency other than the commission to participate in or to provide funds for projects or activities in the Delaware River Basin.

(p) The United States district courts shall have original jurisdiction of all cases or controversies arising under the Compact, and this Act and any case or controversy so arising initiated in a State Court shall be removable to the appropriate United States district court in the manner provided by ' 1446, Title 28 U. S. C. Nothing contained in the Compact or elsewhere in this Act shall be construed as a waiver by the United States of its immunity from suit.

(q) The right to alter, amend, or repeal this Act is hereby expressly reserved. The right is hereby reserved to the Congress or any of its standing committees to require the disclosure and furnishing of such information and data by the Delaware River Basin Compact Commission as is deemed appropriate by the Congress or any such committee.

(r) The provisions of Sections 2.4 and 2.6 of Article 2 of the Compact notwithstanding, the member and alternate member appointed by the President and advisor there referred to may be paid compensation by the United States, such compensation to be fixed by the President at the rates which he shall deem to prevail in respect to comparable officers in the executive branch.

(s)  (1) Nothing contained in this Act or in the Compact shall impair or affect the constitutional authority of the United Sates or any of its powers, rights, functions, or jurisdiction under other existing or future legislation in and over the area or waters which are the subject of the Compact including projects of the commission: *Provided,* That whenever a comprehensive plan, or any part or revision thereof, has been adopted with the concurrence of the member appointed by the President, the exercise of any powers conferred by law on any officer, agency or instrumentality of the United States with regard to water and related land resources in the Delaware River Basin shall not substantially conflict with any such portion of such comprehensive plan and the provisions of Section 3.8 and Article 11 of the Compact shall be applicable to the extent necessary to avoid such substantial conflict: *Provided further,* That whenever the President shall find and determine that the national interest so requires, he may suspend, modify or delete any provision of the comprehensive plan to the extent that it affects the exercise of any powers, rights, functions, or jurisdiction conferred by law on any officer, agency or instrumentality of the United States other than the commission. Such action shall be taken by executive order in which such finding and determination shall be set forth.

(2) For the purposes of paragraph 1 hereof, concurrence by the member appointed by the President shall be presumed unless within 60 days after notice to him of adoption of the comprehensive plan, or any part or revision thereof, he shall file with the commission notice of his nonconcurrence. Each concurrence of the member appointed by the President in the adoption of the comprehensive plan or any part or revision thereof may be withdrawn by notice filed with the commission at any time between the first and sixtieth day of the sixth year after the initial adoption of the comprehensive plan and of every sixth year thereafter.

(t) In the event that any phrase, clause, sentence or provision of Section 1.4 of Article 1 of the Compact, is declared to be unconstitutional under the constitution of any of the signatory parties, or the applicability thereof to any signatory party, agency or person is held invalid by a court of last resort of competent jurisdiction, the United States shall cease to be a party to the Compact, except to the extent that the President deems remaining a party necessary and proper to protect the national interest, and shall cease to be bound by the terms thereof.

(u) All Acts or parts of Acts inconsistent with the provisions of this Act are hereby amended for the purpose of this Act to the extent necessary to carry out the provisions of this Act: *Provided, however,* that no act of the commission shall have the effect of repealing, modifying or amending any Federal law.

## Section 15.2   Effectuation.

(a) The President is authorized to take such action as may be necessary and proper, in his discretion, to effectuate the Compact and the initial organization and operation of the Commission thereunder.

(b) Executive departments and other agencies of the executive branch of the Federal Government shall cooperate with and furnish appropriate assistance to the United States member. Such assistance shall include the furnishing of services and facilities and may include the detailing of personnel to the United States member. Appropriations are hereby authorized as necessary for the carrying out of the functions of the United States member, including appropriations for the employment of personnel by the United States member.

## Section 15.3      Effect Date.

This Act shall take effect immediately.

_____

## DELAWARE:  (from 53 Delaware Laws, Chapter 71)

## Section 1011  Repealer.

All acts and parts of acts inconsistent with any provision of this act are to the extent of such inconsistency hereby repealed.

## Section 1012  Effectuation by Chief Executive.

The chief executive is authorized to take such action as may be necessary and proper, in his discretion, to effectuate the Compact and the initial organization and operation of the commission thereunder.

**Section 1013   Effective Date.**

This act shall take effect immediately.

————

## NEW JERSEY:  (from New Jersey Laws of 1961, Chapter 13)

**Section 15.1    Repealer.**

All acts and parts of acts inconsistent with any provision of this act are to the extent of such inconsistency hereby repealed.

**Section 15.2    Effectuation by Chief Executive.**

The chief executive is authorized to take such action as may be necessary and proper, in his discretion, to effectuate the Compact and the initial organization and operation of the commission thereunder.

**Section 15.3    Effective Date.**

This act shall take effect immediately.

————

## NEW YORK:[4]  *(from New York Laws of 1961, Chapter 148);* with Sections of the Conservation Law as renumbered by Laws of 1962, Chapter 73)

**Section 631    Commissioner and Alternate.**

1. As provided in the second subdivision of section two of article two of the Compact, the governor shall be this state's member on the commission established thereby. The governor shall appoint a member of the water resources commission as his alternate pursuant to the third subdivision of said section two of article two of the Compact. In the absence of the governor and such member of the water resources commission, the powers, duties and functions of this state's member of the Delaware River Basin Commission shall be performed by the alternate of said department head on the water resources commission.

2. Any person serving on the Delaware River Basin Commission pursuant to this section shall be reimbursed for all necessary expenses incurred as an incident of such service, and such reimbursement shall be from the funds of said person's department or office.

**Section 632    Advisors.**

1. The member of the Delaware River Basin Commission from this state shall have an advisor as contemplated by subdivision six of section two of article two of the Compact.  Such advisor shall

---

[4] The Sections have been renumbered by Laws of 1962, Chapter 73 and now constitute Sections 802-812 of the Conservation Law.

_____

be the mayor of the city of New York or his designee, but no designee of the mayor shall be recognized as an advisor or accorded any privileges as such unless the mayor shall have notified the commission member from this state and the Delaware River Basin Commission in writing of the selection of such designee and of his identity.

2. The members of the water resources commission and the state commissioner of commerce shall constitute an advisory committee with whom the member of the Delaware River Basin Commission from this state shall consult with respect to the conduct of New York participation in the Compact. Such member of the commission also shall consult from time to time with other officers of the state government or any subdivision thereof, as may be appropriate.

### Section 633    Consent to Alteration of Diversions.

1. Consent of this state to the impairment, diminution or other adverse effect on diversions, compensating releases, rights, conditions, obligations, and provisions for the administration thereof as contemplated by subdivision three of section three of article three of the Compact shall not be given, except with the prior approval of the water resources commission.

2. Except with respect to diversions governed by subdivision one of this section and the provision of the Compact referred to therein, the provisions of section four hundred fifty-two of the conservation law shall not apply to any diversion or furnishing of water authorized by or made pursuant to the Compact.

### Section 634    Jurisdiction of Courts.

Except as otherwise specifically provided herein, the phrase "court of competent jurisdiction" as used in the Compact shall, with reference to this state, mean the supreme court, and said court is hereby given all necessary and appropriate jurisdiction to hear and determine any action or proceeding brought before it pursuant to appropriate provisions of the Compact. As used in subdivision six of section ten of article ten of the Compact, the phrase "court of competent jurisdiction" shall mean a court in which an appropriate proceeding under article seventy-eight of the civil practice act may be brought. As used in item one of paragraph (a) of subdivision one of section fourteen of article fourteen of the Compact, the phrase "court of competent jurisdiction" shall mean any court of this state in which an action or proceeding of the class brought by the Delaware River Basin Commission may be heard and determined.

### Section 635    Prior to Project Approval.

No project requiring a license, permit or other approval by any agency or officer of this state, or any subdivision thereof, shall be given any such license, permit, or approval, if such project requires approval of the Delaware River Basin Commission pursuant to the Compact and such has not been given.

### Section 636    Agreements with Municipalities.

Any city, county, town or village within the "basin", as that term is defined in the Compact, shall have power to make agreements to provide technical and financial aid as contemplated by paragraph (b) of subdivision two of section six of article six of the Compact. Nothing herein contained shall be construed to relieve any such city, county, town or village from compliance with any general or special laws relating to the receipt of grants or other assistance from other governmental units and contracts in connection therewith.

_____

### Section 637   Delegations of Power.

No agency or officer of this state or any subdivision thereof shall accept or exercise any delegation of power pursuant to subdivision one of section ten of article ten of the Compact unless, in the absence of the Compact, it would have the constitutional or statutory power to exercise such power on its own account.

### Section 638   Cooperative Services.

Departments, agencies and officers shall provide technical and administrative services to the Delaware River Basin Commission upon request, within the limits of available appropriations and shall cooperate generally with said commission for the purposes of the Compact.

### Section 639   Budget.

The Delaware River Basin Commission shall submit annually to the director of the budget, in accordance with the rules and practice of the state, for study and consideration by such director, an estimate of moneys required to administer, manage and support the commission during the ensuring fiscal year. Such estimate shall include any request for appropriation of funds by New York and shall be accompanied by a tabulation of similar requests which the commission expects to make to each other member state and the formula or factors upon which such respective requests are based. The provisions of subdivision three of section thirteen of article thirteen of the Compact shall apply to the budgetary and other fiscal matters related to the participation of this state in the Compact.

### Section 640   Audit.

Pursuant to paragraph (b) of subdivision eleven of section fourteen of article fourteen of the Compact, the state comptroller is hereby authorized and empowered from time to time to examine the accounts and books of the commission, including its receipts, disbursements and such other items referring to its financial standing as such comptroller may deem proper and to report the results of such examination to the governor.

### Section 641   Inconsistent Laws.

No provision of the conservation law or of any other law, which is inconsistent with the provisions of the Compact shall be applicable to the Delaware River Basin Commission or to any matter governed by the Compact.

### Section 2   Effectuation.

The Compact set forth in the conservation law as amended by section one of this act shall become binding and effective in accordance with the provisions of subdivision twenty-one of section fourteen of article fourteen thereof. The governor is hereby authorized and directed to sign and seal the Compact as provided in said subdivision twenty-one and to cause copies thereof to be filed in accordance therewith.

### Section 3   Effective Date.

This act shall take effect immediately.

_____

## PENNSYLVANIA:  (from Pennsylvania Acts of 1961, Act No. 268)

### Section 2          Repealer.

All acts and parts of acts inconsistent with any provision of this act are to the extent of such inconsistency hereby repealed.

### Section 3          Effectuation by Chief Executive.

The chief executive is authorized to take such action as may be necessary and proper in his discretion to effectuate the Compact and the initial organization and operation of the commission thereunder.

### Section 4          Effective Date.

This act shall take effect immediately.

—————

*Delaware River Basin Compact*

---

## EDITOR'S NOTE

### CONCERNING THE UNITED STATES MEMBER

In June of 1997, Congress enacted and President Clinton signed into law the 1997 Emergency Appropriations Act ("the Act"), which specified that beginning in fiscal year 1997 and thereafter, the United States members and alternate members appointed under the Delaware River Basin Compact "shall be officers of the U.S. Army Corps of Engineers, who hold Presidential appointments as Regular Army officers with Senate confirmation …." P.L. 105-18, Sec. 3001(a). The Act also repealed Section 15.1(d) of the Compact, which provided that the member of the Commission appointed by the President and his alternate would serve at the pleasure of the President, and amended Section 2.2 by replacing the words "during the term of office of the President" with the words "at the pleasure of the President." Previously, Sections 2.2 and 15.1(d) were inconsistent as to the term of the federal representative's appointment.

A decade later, Congress enacted and President Bush signed into law the Water Resources Development Act of 2007, which further modified the Compact in relevant part by providing that notwithstanding the 1997 amendments, "beginning in fiscal year 2002, and each fiscal year thereafter, the Division Engineer, North Atlantic Division, Corps of Engineers … shall be … the ex officio United States member of the … Delaware River Basin Compact; … shall serve without compensation; and … may designate an alternate member in accordance with the terms of those compacts."

---