**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SENATOR GENE YAW, *et al.*,

    Plaintiffs,

    v.

THE DELAWARE RIVER BASIN
COMMISSION,

    Defendant,

and

DELAWARE RIVERKEEPER NETWORK and
MAYA K. VAN ROSSUM, THE DELAWARE
RIVERKEEPER,

    Intervenor-Defendants,

and

SENATORS STEVE SANTARSIERO,
CAROLYN COMITTA, AMANDA
CAPPELLETTI, MARIA COLLETT, WAYNE
FONTANA, ART HAYWOOD, VINCE
HUGHES, JOHN KANE, TIM KEARNEY,
KATIE MUTH, JOHN SABATINA, NIKIL
SAVAL, JUDY SCHWANK, SHARIF STREET,
TINA TARTAGLIONE, AND ANTHONY
WILLIAMS,

    Intervenor-Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

No. 2:21-cv-119(PD)

**DEMOCRATIC SENATOR INTERVENORS'
MOTION TO DISMISS AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Pennsylvania State Senators Steve Santarsiero, Carolyn Comitta, Amanda Cappelletti, Maria Collett, Wayne Fontana, Art Haywood, Vince Hughes, John Kane, Tim Kearney, Katie Muth, John Sabatina, Nikil Saval, Judy Schwank, Sharif Street, Tina Tartaglione, and Anthony Williams (collectively, the "Democratic Senator Intervenors") hereby move to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. In support of this motion, the Democratic Senator Intervenors rely on their attached memorandum of law.

WHEREFORE, the Democratic Senator Intervenors respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

Dated: April 15, 2021

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: _/s/ Steven T. Miano_
    Steven T. Miano
    Robert A. Wiygul
    Peter V. Keays
One Logan Square, 27th Floor
Philadelphia, PA  19103
215-568-6200

*Counsel for the Democratic Senator Intervenors*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SENATOR GENE YAW, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| THE DELAWARE RIVER BASIN | : | No. 2:21-cv-119(PD) |
| COMMISSION, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| DELAWARE RIVERKEEPER NETWORK and | : | |
| MAYA K. VAN ROSSUM, THE DELAWARE | : | |
| RIVERKEEPER, | : | |
| | : | |
| Intervenor-Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| SENATORS STEVE SANTARSIERO, | : | |
| CAROLYN COMITTA, AMANDA | : | |
| CAPPELLETTI, MARIA COLLETT, WAYNE | : | |
| FONTANA, ART HAYWOOD, VINCE | : | |
| HUGHES, JOHN KANE, TIM KEARNEY, | : | |
| KATIE MUTH, JOHN SABATINA, NIKIL | : | |
| SAVAL, JUDY SCHWANK, SHARIF STREET, | : | |
| TINA TARTAGLIONE, AND ANTHONY | : | |
| WILLIAMS, | : | |
| | : | |
| Intervenor-Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEMOCRATIC SENATOR INTERVENORS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................ 1

II.   RELEVANT BACKGROUND ..................................................... 5

    A.   The Delaware River Basin Compact and Commission ..................... 5

    B.   The DRBC Actions Challenged by Plaintiffs ............................ 7

    C.   Plaintiffs' Allegations ............................................. 8

III.  ARGUMENT ................................................................. 10

    A.   Plaintiffs Lack Standing ............................................ 10

        1.   The Senator Plaintiffs Lack Standing ............................ 11

        2.   The Municipal Plaintiffs Lack Standing .......................... 16

    B.   Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law ........ 19

        1.   Plaintiffs Fail to State a Takings Claim ........................ 19

        2.   Plaintiffs' Takings Claims Are Time-Barred ...................... 22

    C.   Plaintiffs Have Failed to Plead a Claim Under the Constitutional Clause Guaranteeing a Republican Form of Government ................. 23

IV.   CONCLUSION ............................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*,
101 F.3d 320 (3d Cir. 1996)................................................................22, 23

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.*,
509 F.3d 1020 (9th Cir. 2007)..................................................................23

*Ala. Legislative Council v. Babbitt*,
181 F.3d 1333 (D.C. Cir. 1999) .........................................................13, 14

*Alaska v. United States*,
32 Fed. Cl. 689 (1995) ..............................................................................23

*Alexander v. Fletcher*,
367 F. App'x 289 (3d Cir. 2010)...............................................................23

*Anspach v. City of Phila.*,
503 F.3d 256 (3d Cir. 2007)........................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................22

*Benner v. Wolf*,
461 F. Supp. 3d 154 (M.D. Pa. 2020)........................................................24

*Bridge Aina Le'A, LLC v. Land Use Comm'n*,
950 F.3d 610 (9th Cir. 2020).....................................................................21

*Colegrove v. Green*,
328 U.S. 549 (1946)...................................................................................24

*Common Cause of Pa. v. Pennsylvania*,
558 F.3d 249 (3d Cir. 2009).......................................................................11

*In re Condemnation by Municipality of Penn Hills*,
870 A.2d 400 (Pa. Commw. Ct. 2005) .......................................................20

*Corman v. Torres*,
287 F. Supp. 3d 558 (M.D. Pa. 2018).................................................11, 12

*De Anza Props. X, Ltd. v. Cnty. of Santa Cruz*,
   936 F.2d 1084 (9th Cir. 1991)............................................................23

*Del. Valley Citizens' Council for Clear Air v. Pennsylvania*,
   674 F.2d 970 (3d Cir. 1982)..............................................................14

*Duran v. City of Corpus Christi*,
   240 F. App'x 639 (5th Cir. 2007)..............................................17, 18

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016)....................................... 10, 11, 16, 17

*Fischer v. Governor of N.J.*,
   No. 19-3914, --- F. App'x ----, 2021 WL 141609 (3d Cir. Jan. 15,
   2021) .................................................................................................17

*Goode v. City of Phila.*,
   539 F.3d 311 (3d Cir. 2008)..............................................................12

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S 30 (1994)..............................................................................25

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
   452 U.S. 264 (1981)...........................................................................20

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013)...........................................................................15

*Jin Fu Zhong v. Sweeny*,
   No. 08-2204, 2011 WL 1193011 (E.D. Pa. Mar. 29, 2011)...............18

*Kerr v. Hickenlooper*,
   824 F.3d 1207 (10th Cir. 2016).........................................................12

*Largess v. Sup. Jud. Court for State of Mass.*,
   373 F.3d 219 (1st Cir. 2004) .............................................................24

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)....................................................................19, 20

*Machipongo Land & Coal Co. v. Commonwealth*,
   799 A.2d 751 (Pa. 2002) ...................................................................20

*Murr v. Wisconsin*,
   137 S. Ct. 1933 (2017) ................................................................21

*New York v. United States*,
   505 U.S. 144 (1992) ....................................................................24

*Pa. Env't Def. Found. v. Commonwealth*,
   161 A.3d 911 (Pa. 2017) ........................................................15, 17

*Pac. States Tel. & Tel. Co. v. Oregon*,
   223 U.S. 118 (1912) ....................................................................24

*Pagán v. Calderón*,
   448 F.3d 16 (1st Cir. 2006) .........................................................18

*Parker v. Merlino*,
   646 F.2d 848 (3d Cir. 1981) ........................................................24

*Patel v. City of Los Angeles*,
   No. 09-5978, 2016 WL 9276022 (C.D. Cal. Feb. 26, 2016) ...........23

*Penn Central Transp. v. New York City*,
   438 U.S. 104 (1978) ...............................................20, 21, 22, 24

*Pitchfrod v. PEPI, Inc.*,
   531 F.2d 92 (3d Cir. 1975) ..........................................................18

*Protect Our Parks, Inc. v. Chi. Park Dist.*,
   971 F.3d 722 (7th Cir. 2020) .......................................................16

*Pulte Home Corp. v. Montgomery Cnty.*,
   271 F. Supp. 3d 762 (D. Md. 2017) ..............................................22

*Raines v. Byrd*,
   521 U.S. 811 (1997) ..............................................................11, 12

*Robinson Twp. v. Washington Cnty.*,
   83 A.3d 901 (Pa. 2013) .......................................................1, 2, 15

*Robinson v. Johnson*,
   313 F.3d 128 (3d Cir. 2002) ........................................................22

*Rucho v. Common Cause*,
  139 S. Ct. 2484 (2019) ...................................................................................24

*Rumber v. D.C.*,
  595 F.3d 1298 (D.C. Cir. 2010) ...................................................................18

*Russell v. DeJohngh*,
  491 F.3d 130 (3d Cir. 2007) .........................................................................13

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ...........................................................................5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..................................................................................10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................11

*Tarrant Reg'l Water Dist. v. Herrmann*,
  569 U.S. 614 (2013) ......................................................................................25

*State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*,
  931 F.3d 499 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 549 (2020)...................13

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ..................................................................................10

*United HealthCare Corp. v. Am. Trade Ins. Co.*,
  88 F.3d 563 (8th Cir. 1996) ..........................................................................18

*Va. House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) ...............................................................11, 12, 13, 14

*Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*,
  331 F.R.D. 583 (M.D. Pa. 2019), *vacated and remanded*,
  959 F.3d 569 (3d Cir. 2020) ............................................................................8

*Wilson v. Garcia*,
  471 U.S. 261 (1985) ......................................................................................22

*Zankel v. Temple Univ.*,
  245 F. App'x 196 (3d Cir. 2007) ...................................................................22

**Statutes**

42 Pa. Cons. Stat. § 5527(a)(2) ...............................................................23

58 Pa. Cons. Stat. § 2314 ........................................................................17

71 Pa. Stat. § 732-204(c) .........................................................................14

42 U.S.C. § 1983.....................................................................................23

**Other Authorities**

Del. River Basin Comm'n, State of the Basin Report (July 25, 2019),
https://www.state.nj.us/drbc/library/documents/SOTBreport_july2
019.pdf.........................................................................................5

Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes,
https://www.state.nj.us/drbc/library/documents/5-05-
10_minutes.pdf ...........................................................................7

Del. River Basin Comm'n, New DRBC Regulation Prohibits High
Volume Hydraulic Fracturing in the Delaware River Basin (Feb.
25, 2021),
https://www.state.nj.us/drbc/home/newsroom/news/approved/2021
0225_newsrel_HVHF-rulemaking.html ..........................................7

Del. River Basin Comm'n, Supplemental Determination of the
Executive Director Concerning Natural Gas Extraction Activities
in Shale Formation Within the Drainage Area of Special Protection
Waters (June 14, 2010),
https://www.state.nj.us/drbc/library/documents/SupplementalEDD
6-14-10.pdf ..................................................................................7

 Del. River Basin Comm'n, Resolution No. 2021-01 (Feb. 25, 2021),
https://www.state.nj.us/drbc/library/documents/Res2021-
01_HVHF.pdf ...............................................................................7

Fed. R. Civ. P. 17(a) .............................................................................18

Fed. R. Civ. P. 24...................................................................................8

15 *Moore's Federal Practice: Civil* § 101.42 (2020) .............................17

Pa. Const. art. I, § 27........................................................................................1, 2

U.S. Const. art IV, § 4.....................................................................................10, 24

## I.    INTRODUCTION

In 1971, after being unanimously approved by two different sessions of the

Pennsylvania Legislature, the Environmental Rights Amendment to the

Pennsylvania Constitution ("ERA") was ratified by a nearly four-to-one margin of

Pennsylvania voters.[1] The Amendment provides that

> [t]he people have a right to clean air, pure water, and to the
> preservation of the natural, scenic, historic and esthetic values of the
> environment. Pennsylvania's public natural resources are the common
> property of all the people, including generations yet to come. As
> trustee of these resources, the Commonwealth shall conserve and
> maintain them for the benefit of all the people.

Pa. Const. art. I, § 27.

As authoritatively established by the Pennsylvania Supreme Court—in a

case involving, not coincidentally, the same industrial activity (high-volume

hydraulic fracturing, known as "fracking") and statute (Act 13 of 2012, P.L. 87)

championed by Plaintiffs here—the ERA's "express purpose … [is] to be a

bulwark against actual or likely degradation of, *inter alia*, our air and water

quality." *Robinson Twp. v. Washington Cnty.*, 83 A.3d 901, 953 (Pa. 2013). Thus,

"economic development cannot take place at the expense of an unreasonable

degradation of the environment." *Id.* at 954. Relatedly, the ERA *rejects* the

"proprietary theory" of natural resources, whereby government "measur[es] its

gains by the balance sheet profits and appreciation it realizes from its resources

---

[1] *See Robinson Twp. v. Washington Cnty.*, 83 A.3d 901, 961-62 (Pa. 2013).

operations." *Id.* at 956. Instead, the ERA imposes a fiduciary duty on the Commonwealth, as trustee, to "conserve and maintain" Pennsylvania's public natural resources for the benefit of all Pennsylvanians. *Id.* at 957. That is, "the Commonwealth has a duty to refrain from permitting or encouraging the degradation, diminution, or depletion of public natural resources, whether such degradation, diminution, or depleting would occur through state action or … because of the state's failure to restrain the actions of private parties." *Id.*

Plaintiffs seek to stand this constitutional Amendment on its head. According to Plaintiffs' characterization, the ERA somehow *requires* that Pennsylvania's natural resources be liquidated so as to maximize "revenue" generation. (Am. Compl. ¶ 92; *accord id.* ¶ 30.) The Commonwealth's fiduciary duty to "conserve and maintain" Pennsylvania's public natural resources for the benefit of "generations yet to come," Pa. Const. art. I, § 27, has become, in Plaintiffs' telling, a "duty" to extract and monetize those natural resources to ensure that the Commonwealth's coffers are as full as possible in the present (Am. Compl. ¶ 76). Entirely absent from the Amended Complaint is any consideration of the pollution and other environmental harm caused by this exploitation. Plaintiffs' interpretation of the ERA is, in a word, perverse.

Based on this upside-down premise, Plaintiffs' initial Complaint challenged what it variously characterized as the Delaware River Basin Commission's

("DRBC") "de facto moratorium" or "blanket ban," since 2010, on fracking within the Delaware River Basin (the "Basin") (ECF 1 ¶ 73), which was instituted because of concerns about water pollution. When, on February 25, 2021, the DRBC "voted to adopt" what Plaintiffs describe as "proposed regulations memorializing the ban set forth in the moratorium" (Am. Compl. ¶ 81), Plaintiffs filed an Amended Complaint targeting those regulations as well. According to Plaintiffs, the fracking "ban" embodied in the DRBC's moratorium and regulations (collectively, the "Prohibition") exceeds the Commission's authority under the Delaware River Basin Compact, an interstate compact among the four states spanned by the Basin. Plaintiffs also contend that the Prohibition constitutes a "regulatory taking" of state-owned and private property—and even go so far as to allege that it violates the Federal Constitution's guarantee that each state have a republican form of government.

The Amended Complaint should be dismissed for several reasons. First and foremost, Plaintiffs—two individual Pennsylvania State Senators and the Pennsylvania Senate Republican Caucus (collectively, the "Senator Plaintiffs") and two townships (Damascus and Dyberry) and two counties (Carbon and Wayne) (collectively, the "Municipal Plaintiffs")—lack standing to assert their claims. None of the Plaintiffs is alleged to own property with natural-gas resources that, but for the Prohibition, would be extractable by fracking. And notwithstanding the

Amended Complaint's strained efforts, none of the Plaintiffs has standing to assert the Commonwealth's purported interests in its property or its laws. Nor does the ERA somehow provide Plaintiffs with a ticket to federal court. Just as Plaintiffs cannot twist the ERA into a constitutional imperative to extract and monetize natural resources regardless of the environmental consequences, neither can they convert the ERA's "public trust" theory into an exemption from the standing strictures of the Federal Constitution.  In sum, Plaintiffs have failed to plead a particularized, concrete injury satisfying the case-or-controversy requirements of Article III, and this Court thus lacks subject-matter jurisdiction to proceed.

Independently, Plaintiffs' claims asserting regulatory takings fail as a matter of law. By its nature, a regulatory takings claim of the sort Plaintiffs allege here turns on the specific facts regarding the particular property at issue; it is legally insufficient simply to assert that a regulation has prohibited a particular technique of extracting natural gas. Plaintiffs have not identified any particular property, let alone alleged any specific facts about any such property. Accordingly, they have failed to plead a claim for regulatory taking. In addition, Plaintiffs' takings claims are time-barred.

Also fatally flawed is Plaintiffs' claim for violation of the constitutional clause guaranteeing a republican form of government. As an initial matter, the Supreme Court has held that claims under the Guarantee Clause are not justiciable.

But even assuming a justiciable claim could potentially be pled, Plaintiffs have not done so. The Amended Complaint does not target an act purporting to dissolve the General Assembly or abolish the independence of the Pennsylvania judiciary. What Plaintiffs contest is the prohibition of a particular industrial activity within the Basin, a prohibition that was approved by an interstate agency—which includes Pennsylvania's Governor—in order to protect interstate water resources subject to an interstate compact duly ratified pursuant to Pennsylvania's law-making process. However much Plaintiffs may dislike the Prohibition as a matter of policy, Pennsylvania remains a commonwealth in form as well as name.

## II.    RELEVANT BACKGROUND[2]

### A.    <u>The Delaware River Basin Compact and Commission</u>

Spanning Pennsylvania, New Jersey, Delaware, and New York, the Delaware River Basin is a watershed covering approximately 13,600 square miles that drains into the Delaware River and its tributaries. The Basin provides drinking water to 13.3 million people; 5.6 million Pennsylvanians live within its boundaries. Del. River Basin Comm'n, State of the Basin Report at PDF pp. 3, 12 (July 25, 2019), https://www.state.nj.us/drbc/library/documents/SOTBreport_july2019.pdf.

---

[2] For purposes of this motion only, the Democratic Senator Intervenors accept the truth of the well-pled factual allegations in the Amended Complaint. *See Anspach v. City of Phila.*, 503 F.3d 256, 260 (3d Cir. 2007). This Court need not, however, "credit 'bald assertions'" or "'legal conclusions masquerading as factual conclusions.'" *Id.* In deciding a motion to dismiss, the Court may also consider documents relied on in Plaintiffs' pleading and take judicial notice of matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Recognizing that the water in the Basin has an "interstate regional character" and is a common resource over which local, State, and National interests have "joint responsibility," the governments of the four Basin states and the United States Congress entered into the Delaware River Basin Compact ("Compact") in 1961. Compact at 1 (Am. Compl., Ex. A).

Because "[t]he water resources of the basin are functionally inter-related, and the uses of these resources are independent," the signatories wished to replace the "duplicating, overlapping, and uncoordinated administration" of these water resources by a multiplicity of state, interstate, and federal agencies—which had proven grossly inadequate and unsatisfactory—with "a comprehensive plan administered by a basin wide agency." *Id.* at 1, 4. This joint reform effort was expressly intended to promote, among other things, "effective … abatement and control of stream pollution." *Id.* at 1. To that end, the Compact established the DRBC "as an agency and instrumentality of the governments of the respective signatory parties." *Id.* at 5.

To ensure its efficacy, the Compact endowed the DRBC with significant authority and responsibilities. Among other things, the Compact prohibits all "project[s] having a substantial effect on the water resources of the basin" unless and until they are "submitted to and approved by the [DRBC]." *Id.* § 3.8.

B.     **The DRBC Actions Challenged by Plaintiffs**

The Amended Complaint challenges what it describes as the DRBC's "categorical[] prohibit[ion on] natural gas extraction within the Basin" "since 2010," (Am. Compl. ¶ 78), which first took the form of "a *de facto* moratorium" and was then "memorialized" in regulations adopted on February 25, 2021 (*id.* ¶¶ 79, 81). Both the moratorium and the 2021 regulations were approved by all state members of the Commission, including Pennsylvania.[3] The DRBC's Prohibition was based on the Commission's finding that fracking "pose[s] significant, immediate and long-term risks to the development, conservation, utilization, management, and preservation of the water resources of the … Basin."[4]

---

[3] In May 2010, the Commission unanimously adopted a resolution directing Commission staff to develop regulations to govern the Commission's review of applications for fracking projects, and postponing consideration of all applications until those regulations have been adopted. Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes at 5, https://www.state.nj.us/drbc/library/documents/5-05-10_minutes.pdf. The final regulations issued on February 25, 2021, were approved by all four state Commissioners; the federal Commissioner abstained. Del. River Basin Comm'n, New DRBC Regulation Prohibits High Volume Hydraulic Fracturing in the Delaware River Basin (Feb. 25, 2021), https://www.state.nj.us/drbc/home/newsroom/news/approved/20210225_newsrel_HVHF-rulemaking.html.

[4] Del. River Basin Comm'n, Resolution No. 2021-01, at 4 (Feb. 25, 2021), https://www.state.nj.us/drbc/library/documents/Res2021-01_HVHF.pdf (explaining that "[s]pills and releases of hydraulic fracturing chemicals, fluids and wastewater would adversely impact surface water and groundwater," that "subsurface fluid (including gas) migration" would "impair[] drinking water resources," and that fracking would "adversely affect thousands of acres of sensitive water resource features"); *accord* Del. River Basin Comm'n, Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formation Within the Drainage Area of Special Protection Waters 1 (June 14, 2010), https://www.state.nj.us/drbc/library/documents/SupplementalEDD6-14-10.pdf (recognizing that fracking projects "could individually or cumulatively affect the water quality of Special Protection Waters [in the Basin] by altering their physical, biological, chemical or hydrological characteristics").

### C.   Plaintiffs' Allegations

The bulk of Plaintiffs' allegations appear aimed at establishing their standing rather than supporting the substance of their legal claims.[5] Thus, Plaintiffs point out that Pennsylvania's legislative power is vested in the General Assembly and that the Senate Republican Caucus is "one of two … subparts" of one of two components of the General Assembly. (Am. Compl. ¶ 24.) Plaintiffs further allege that the "General Assembly enacted a detailed regulatory scheme" (Act 13 of 2012) providing for fracking, including in the Basin, and "providing for payment of various fees" to the Commonwealth in connection with fracking activity. (*Id.* ¶¶ 51-52.) These fees are paid into the Commonwealth's "Well Fund." (*Id.*) According to the Amended Complaint, the DRBC's Prohibition has impaired the intent of this legislation, usurped the Legislature's authority, and denied the Well Fund money it would otherwise have received. (*Id.* ¶¶ 52-59, 62, 67, 84-86.) Plaintiffs allege that the Prohibition has similarly denied the Commonwealth fees it would have received were it able to allow fracking on state-owned land located in the Basin. (*Id.* ¶¶ 70-71, 73-75.) In Plaintiffs' view, by reducing the amount of

---

[5] The two individual Senator Plaintiffs in this case twice sought—and were denied—intervention in a challenge to the Commission's fracking moratorium currently pending in the Middle District of Pennsylvania, *Wayne Land and Mineral Group, LLC v. Del. River Basin Comm'n*, 3:16-CV-897 (M.D. Pa.). *See* ECF 17, Memo. at 6-8. Notably, the Middle District ruled that many of the same assertions the Senators make in their Amended Complaint in this case (presumably in an attempt to establish standing) did not give rise to the significant protectable interest that is required for intervention pursuant to Federal Rule of Civil Procedure 24. *See Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 331 F.R.D. 583, 593, 597-98 (M.D. Pa. 2019), *vacated on different grounds and remanded*, 959 F.3d 569 (3d Cir. 2020).

revenue derived from fracking, the Prohibition has "impair[ed] the growth of the … assets" in the public trust established by the ERA. (*Id.* ¶ 67.)

The Amended Complaint asserts four Counts. Count I contends that the Prohibition "exceeded the scope of authority granted [to the DRBC] under … Section 3.8 of the Compact." (*Id.* ¶ 103.) Count II alleges that the Prohibition constitutes a regulatory taking of state-owned property for purposes of the Federal and Pennsylvania Constitutions. (*Id.* ¶ 110.) Because the Compact does not allow the DRBC to exercise "the power of eminent domain" over the "property of a signatory state," Compact § 14.14, Plaintiffs seek a declaration that the Prohibition exceeds the Commission's authority under the Compact. In the alternative, Plaintiffs seek a declaration that the Prohibition is a taking "requiring provision of just compensation for the diminution of the property seized." (Am. Compl. at 23.)

Count III asserts a regulatory taking claim with respect to private property rather than state-owned land. Plaintiffs seek a declaration that, because the Prohibition is a regulatory taking, it exceeds the eminent domain powers granted to the DRBC under the Compact. Alternatively, Plaintiffs request a declaration that compensation is required. (*Id.* at 25.)

Most dramatically, Count IV contends that the Prohibition has "deprived 5.5 million Pennsylvanians of their ability to choose their laws and governmental

structure" (*id.* ¶ 121), thereby violating the Federal Constitution's guarantee of a

republican form of government. *See* U.S. Const. art IV, § 4.

## III.   ARGUMENT

### A.   <u>Plaintiffs Lack Standing</u>

This lawsuit is barred at the threshold because Plaintiffs lack standing to

bring it. To invoke the limited subject-matter jurisdiction of federal courts under

Article III of the Constitution, plaintiffs must adequately allege "such a personal

stake in the outcome of the controversy as to … justify the exercise of the court's

remedial powers on their behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S.

Ct. 1645, 1650 (2017). More specifically, plaintiffs "must demonstrate (1) an

injury-in-fact, (2) a sufficient causal connection between the injury and the conduct

complained of, and (3) a likelihood that the injury will be redressed by a favorable

decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016).

"To establish injury in fact," in turn, "a plaintiff must show that he or she is

suffering an invasion of a legally protected interest that is concrete and

particularized"—meaning that "it must affect the plaintiff in a personal and

individual way"—"and actual or imminent, not conjectural or hypothetical."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *see also Town of Chester*,

137 S. Ct. at 1650 ("a plaintiff must demonstrate standing for each claim he seeks

to press and for each form of relief that is sought"). "These requirements are

unyielding." *Finkelman*, 810 F.3d at 189. Because none of the Plaintiffs satisfies them, this Court lacks subject-matter jurisdiction, and the only proper course is to "announc[e] th[at] fact and dismiss[] the cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### 1. The Senator Plaintiffs Lack Standing

The Senator Plaintiffs lack standing because they fail to plead a particularized interest in the litigation. The law on legislator standing is well developed. Such standing is narrowly circumscribed, as "[c]oncerns for separation of powers and the limited role of the judiciary" are "particularly acute in legislator standing cases." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 265 (3d Cir. 2009).  The Supreme Court's precedent "stands 'at most' 'for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.'" *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1954 (2019) (quoting *Raines v. Byrd*, 521 U.S. 811, 823 (1997)). That precedent also makes "clear" that "a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Corman v. Torres*, 287 F. Supp. 3d 558, 567 (M.D. Pa. 2018) (three-judge panel). Such inadequate harm includes an asserted "institutional injury" in the form of "the diminution of

legislative power." *Id.* (quoting *Raines*, 521 U.S. at 821); *accord Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016).

That authority is dispositive here because the Senator Plaintiffs do not *even* allege an injury to the interest of the Pennsylvania Legislature as a body. Rather, they contend that they have an interest because the Prohibition allegedly exceeded the scope of the authority contractually ceded to the Commission by the Compact's signatories. But the General Assembly is not a signatory to the Compact; the Commonwealth is. That the Commonwealth's ratification took the form of a statute passed by the Legislature (*and signed by the Governor*), containing legislative findings, does not avail Plaintiffs. Nor do their assertions that the Prohibition has somehow stymied the purpose of Act 13 or other Pennsylvania statutes or—more generally—undermined Pennsylvania's sovereignty. This is because, as the case law recognizes, "once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." *Goode v. City of Phila.*, 539 F.3d 311, 317 (3d Cir. 2008). Indeed, legal threats to the validity or operation of an enacted statute are typically cognizable injuries only with respect to the state as a whole, not to the legislature as a particular organ of government. *See Bethune-Hill*, 139 S. Ct. at 1953 ("This Court has never held that a judicial decision invalidating a state law as unconstitutional inflicts a discrete, cognizable injury on each organ of

12

government that participated in the law's passage."). Even more so, then, Plaintiffs have no standing to complain that the Prohibition has allegedly reduced the value of state-owned land or the Commonwealth's receipt of fracking-related fees.

*Alaska Legislative Council v. Babbitt*, 181 F.3d 1333 (D.C. Cir. 1999), cited approvingly in *Russell v. DeJohngh*, 491 F.3d 130, 134 (3d Cir. 2007), is particularly instructive because of its similarities with this case. In *Babbitt*, individual Alaskan state legislators, as well as the Alaska Legislative Council, brought suit challenging federal management of fish and wildlife on federal public lands. The plaintiffs complained that the federal government had intruded upon Alaska's sovereign "prerogatives in the management of fish and wildlife." 181 F.3d at 1338. As the D.C. Circuit explained, "[t]he resulting injury is not to the Legislature and it is not to the individual legislators. It is to the State itself…. If [the challenged federal statute] diminishes the State's authority, it injures state sovereignty, not legislative sovereignty." *Id.* at 1338-39; *accord State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 512-14 (6th Cir. 2019) (Tennessee General Assembly lacked standing to seek relief for "alleged injury to Tennessee's sovereignty"), *cert. denied*, 141 S. Ct. 549 (2020).

Plaintiffs can represent the Commonwealth's interests only if the Commonwealth has authorized them to do so. *See Bethune-Hill*, 139 S. Ct. at 1951-52; *Tenn. Gen. Assembly*, 931 F.3d at 514-17. It has not. "By statute in

Pennsylvania, the Attorney General"—not the General Assembly, and not any individual legislators—"is responsible for vindicating the sovereign interests of the Commonwealth." *Del. Valley Citizens' Council for Clear Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (citing 71 Pa. Stat. § 732-204(c)).

Even if Plaintiffs had asserted an injury to an interest that truly belonged to the Pennsylvania Legislature, rather than to the Commonwealth, they would still fail to establish standing. As the Supreme Court has made pellucidly clear, "individual [legislators] lack standing to assert the institutional interests of a legislature." *Bethune-Hill*, 139 S. Ct. at 1953. Indeed, even "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 1954. As underscored by the involvement of the sixteen Democratic Senator Intervenors in this litigation, the Senator Plaintiffs comprise only two individual Senators and one of two Senate caucuses. They do not speak for the General Assembly as a whole. Accordingly, the Senator Plaintiffs fall well short of Article III's standing bar. *See Babbitt*, 181 F.3d at 1337-38.

Nor can the Senator Plaintiffs predicate standing on their purported status as "trustees" of the public natural resources trust created by the ERA. This is true for several reasons. First, Plaintiffs cite no authority for the proposition that each individual legislator, as opposed to the legislature as a whole, is an ERA trustee. Second, Plaintiffs' theory—namely, that such trustees have a fiduciary duty to

maximize the revenue derived from liquidating natural resources—rests on a gross misapprehension of the interests protected by the ERA. As the Pennsylvania Supreme Court has explained, "the corpus of the trust" at issue consists of "the public natural resources" themselves. *Robinson Twp.*, 83 A.3d at 957. Although the court has explained "that proceeds from the sale of oil and gas from [the ERA's] public trust remain in the corpus of the trust," *Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 933 (Pa. 2017), Plaintiffs completely misinterpret that pronouncement. It does *not* mean that the Commonwealth has a fiduciary duty to maximize those proceeds. To the contrary, it means that those proceeds, to the extent they are realized, must be devoted to "preventing and remedying the degradation, diminution and depletion of our public natural resources." *Id.* at 936. Put simply, as a matter of law, the constitutional duty or interest invoked by Plaintiffs does not exist.

Third, Plaintiffs fail to cite any Pennsylvania authority, let alone federal authority, suggesting that a "trustee" under the ERA has standing, based on that status alone, to bring suit challenging actions restricting extraction of natural resources. That is because no such authority exists.

Fourth, even if Pennsylvania law did recognize such standing, it would not avail Plaintiffs here. It is well settled that "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013);

*accord Finkelman*, 810 F.3d at 203. The recent decision in *Protect Our Parks, Inc.*

*v. Chi. Park Dist.*, 971 F.3d 722 (7th Cir. 2020) (Barrett, J.), is particularly on

point. The plaintiffs in that case brought state-law claims and claimed standing

under Illinois's "public trust doctrine." It was undisputed that plaintiffs would have

had standing, under this doctrine, to assert their claims in state court. *Id.* at 729-30.

Nonetheless, the plaintiffs' federal action had to be dismissed because they could

not show the particularized, concrete injury required by Article III. *Id.* at 730-32.

The same result obtains here.

### 2.      The Municipal Plaintiffs Lack Standing

For the reasons discussed above, the Municipal Plaintiffs likewise cannot

predicate standing on their alleged status as "trustees" of the ERA's natural

resources trust. Nor do the Municipal Plaintiffs otherwise plead standing. As

Intervenor-Defendants previously pointed out, Plaintiffs' initial Complaint did not

allege that any plaintiff owned land affected by the DRBC's fracking prohibition.

(*See* ECF 17-1, Memo. at 9.) Plaintiffs' Amended Complaint now includes the bare

allegation that the Municipal Plaintiffs own land containing natural gas reserves.

(Am. Compl. ¶ 72.) But Plaintiffs conspicuously refrain from alleging that these

reserves could feasibly be extracted via fracking, let alone that, but for the

Prohibition, the Municipal Plaintiffs would be legally authorized to—and would, in

fact—extract these resources.[6] Accordingly, the Municipal Plaintiffs have not pled a cognizable injury that is caused by the Prohibition and would be redressed by the relief Plaintiffs seek. *See Finkelman*, 810 F.3d at 198 (causation element of standing "requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury"); *Fischer v. Governor of N.J.*, No. 19-3914, --- F. App'x ----, 2021 WL 141609, at *6 (3d Cir. Jan. 15, 2021) (redressability prong not met where "a favorable result would [merely] eliminate one of multiple causes of an [alleged] injury without actually decreasing the injury at all" (quoting 15 *Moore's Federal Practice: Civil* § 101.42 (2020))).

The Municipal Plaintiffs also appear to assert that they have suffered a cognizable injury because the Prohibition has allegedly diminished the fees flowing into the Commonwealth's Well Fund, some of which ostensibly would have been disbursed to the Municipal Plaintiffs.[7] But this allegation is likewise insufficient to confer standing. "Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641 (5th Cir.

---

[6] Tellingly, the Amended Complaint asserts regulatory takings claims only with respect to "state-owned land" (Am. Compl. ¶ 110 (Count II)) and "private property" (*id.* ¶ 115 (Count III)). It does not assert a regulatory takings claim on behalf of the Municipal Plaintiffs.

[7] Notably, the Municipal Plaintiffs have no statutory *right* to these funds. To the contrary, the pertinent statute expressly provides that "[d]istribution of funds under this section … are contingent on availability of funds in the [Well Fund]." 58 Pa. Cons. Stat. § 2314. Further, any money received from the Well Fund must be used for environmental purposes; it is not available for the municipality's general use. *See Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 936 (Pa. 2017).

2007). For that reason, the Third Circuit and other courts have repeatedly held that employees, creditors, and stockholders lack standing to assert claims based on economic harm that is derivative of an alleged injury suffered by the employer, debtor, or stock company. *See, e.g.*, *Pitchfrod v. PEPI, Inc.*, 531 F.2d 92, 96-98 (3d Cir. 1975); *Jin Fu Zhong v. Sweeny*, No. 08-2204, 2011 WL 1193011, at *8-10 (E.D. Pa. Mar. 29, 2011); *accord Rumber v. D.C.*, 595 F.3d 1298, 1300-01 (D.C. Cir. 2010); *Duran*, 240 F. App'x at 641-43; *Pagán v. Calderón*, 448 F.3d 16, 26-30 (1st Cir. 2006). That reasoning applies with even greater force here. Indeed, the Municipal Plaintiffs are at least two steps removed from the party alleged to be directly injured: the Prohibition allegedly prevents landowners from engaging in fracking, which in turn diminishes the fees paid into the Commonwealth's Well Fund, which in turn reduces the amount, if any, of the Commonwealth's distribution to the Municipal Plaintiffs. This kind of purely derivative interest does not support standing.[8]

---

[8] For essentially the same reasons, the Municipal Plaintiffs' derivative theory of injury also fails to satisfy Rule 17's requirement that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996). The purpose of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17(a), 1966 Advisory Committee Note. That purpose is squarely implicated here, where the Municipal Plaintiffs—and, for that matter, the Senator Plaintiffs—seek to assert regulatory takings claims on behalf of the Commonwealth and private parties, who presumably would not be bound by a judgment in this case.

Because Plaintiffs have failed to plead standing with respect to any of their claims, the Amended Complaint must be dismissed.

**B.    Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law**

Independent of the all-pervasive standing defect, Counts II and III fail to state a claim. This is true for at least two reasons: (1) Plaintiffs fail to plead facts making out a regulatory takings claim; and (2) any such claim is time-barred.

**1.    Plaintiffs Fail to State a Takings Claim**

The facts Plaintiffs must plead to survive a motion to dismiss depend on the particular species of takings claim Plaintiffs assert—something Plaintiffs themselves fail to address. The Supreme Court's case law has "stake[d] out" "two relatively narrow categories" "of regulatory action that generally will be deemed *per se* takings." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). The first involves government actions that "require[] an owner to suffer a permanent physical invasion of her property." *Id.* "A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. *Id.* The current case falls into neither category: The challenged Prohibition does not involve any "physical invasion," and Plaintiffs do not allege that a suspension of approvals of a particular gas-extraction technique effected a "complete elimination of a property's value," *id.* at 539.

Plaintiffs' regulatory takings challenge is thus "governed by the standards set forth in *Penn Central Transportation v. New York City*, 438 U.S. 104 (1978)."[9] *Lingle*, 544 U.S. at 537-38. As courts have emphasized, application of those standards requires "essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action—that have particular significance." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295 (1981). These inquires "*must be conducted with respect to specific property*, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Id.* (emphasis added). The goal of the analysis is to determine "the severity of the impact of [the challenged regulation] on [the plaintiff's particular] parcel" of land, and whether "the interference with [the] property is of such a magnitude that 'there must be an exercise of eminent domain and compensation to sustain [it].'" *Penn Central*, 438 U.S. at 136.

It is easy to see how the application of the *Penn Central* factors will necessarily turn on particular facts regarding the specific property at issue. For

---

[9] These federal-law standards also govern takings claims brought under Pennsylvania law. *See Machipongo Land & Coal Co. v. Commonwealth*, 799 A.2d 751, 763 n.7, 765 (Pa. 2002); *In re Condemnation by Municipality of Penn Hills*, 870 A.2d 400, 404-05 (Pa. Commw. Ct. 2005). Thus, assuming *arguendo* that Plaintiffs may assert takings claims under Pennsylvania as well as federal law, *but see* Compact § 14.14(b) (DRBC's "power of condemnation shall be exercised in accordance with the provisions of any *federal* law applicable to the commission" (emphasis added)), the analysis is the same.

example, the "investment-backed expectations" factor requires courts to determine the "reasonable expectations" the owner had for the property "at the time of its acquisition." *Bridge Aina Le'A, LLC v. Land Use Comm'n*, 950 F.3d 610, 633 (9th Cir. 2020). For present purposes, that means it would be extremely significant, if not dispositive, if, for example, a specific parcel were acquired before the development of fracking techniques rendering extraction of its natural gas reserves commercially viable. In those cases, the DRBC's Prohibition could not have interfered with the owner's investment-backed expectations regarding the property.

The "economic impact of the regulation" will also obviously depend on the particular parcel at issue. As the Supreme Court has explained, the "test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1944 (2017).

Plaintiffs do not plead any facts bearing on the "complex of [property-specific] factors" determinative of a *Penn Central* takings claim. *See id.* at 1943. Indeed, Plaintiffs do not identify any specific parcel of property at all. Instead, they sweepingly request a declaration that the DRBC's Prohibition effected a regulatory taking with respect to unidentified "state-owned land" and unidentified "private property." (Am. Compl. ¶¶ 110, 115.) Because the Amended Complaint does not come close to alleging facts sufficient to make out a viable regulatory takings

claim, Counts II and III fail as a matter of law.[10] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (it is insufficient to plead facts "merely consistent with" liability; "a complaint must contain sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant *is* liable" under the legal theory asserted (emphasis added)); *see also, e.g.*, *Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 776-777 (D. Md. 2017) (dismissing takings claim after finding the facts pled insufficient to satisfy *Penn Central* test).

## 2.    Plaintiffs' Takings Claims Are Time-Barred

In any event, Plaintiffs' takings claims are time-barred as a matter of law.[11] Because federal law does not expressly prescribe a statute of limitations for federal takings claims, courts "must look to the most 'appropriate' or 'analogous' state statute of limitations." *287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 323 (3d Cir. 1996) (quoting *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)). The Third Circuit has held that, in the case of a federal regulatory takings claim, the appropriate analog is either the personal-injury statute of limitations applicable to

---

[10] The failure to plead facts regarding any specific parcel is itself fatal to Plaintiffs' regulatory takings claims. But it is also worth noting that, as discussed below, any such claim is limited to, at most, the marginal additional loss of value, if any, effected by the DRBC's February 2021 regulations relative to the pre-existing fracking moratorium. *See infra* note 12. The Amended Complaint is devoid of any allegations plausibly suggesting that any such minimal loss of value could constitute a regulatory taking or was even incurred. For this reason, too, Counts II and III must be dismissed.

[11] Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where, as here, "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d Cir. 2007) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).

claims under 42 U.S.C. § 1983 (in Pennsylvania, two years, *see Alexander v. Fletcher*, 367 F. App'x 289, 290 & n.1 (3d Cir. 2010)) or the limitations period for state-law regulatory takings claims (in Pennsylvania, six years, 42 Pa. Cons. Stat. § 5527(a)(2).). *287 Corp. Ctr. Assocs.*, 101 F.3d at 323-324.

Based on the face of the Amended Complaint, the takings claims alleged by Plaintiffs here accrued no later than "2010," when the DRBC's purported "categorical[] prohibit[ion on] natural gas extraction within the Basin" took effect. (Am. Compl. ¶ 78.) Accordingly, whether the applicable limitations period was two years or six years, it expired long before Plaintiffs commenced this lawsuit in January 2021.[12] For this reason, too, Counts II and III fail as a matter of law.

## C.  Plaintiffs Have Failed to Plead a Claim Under the Constitutional Clause Guaranteeing a Republican Form of Government

Finally, Plaintiffs have also failed to state a claim under the Guarantee

---

[12] The Amended Complaint states that the DRBC's 2021 regulations merely "memorializ[ed] the ban set forth in the [2010] moratorium" (Am. Compl. ¶ 81), *i.e.*, they affected only the form of the Prohibition, not its scope or nature. Indeed, Plaintiffs describe the 2010 moratorium as a "blanket ban on the construction or operation of natural gas wells within the Basin" (*id.* ¶ 79), which, in Plaintiffs' view, constituted regulatory takings of state-owned and private property (*see* ECF 1 ¶¶ 96-108). Accordingly, the 2021 regulations did not somehow restart the statute-of-limitations period for Plaintiffs' regulatory takings claims. *See Patel v. City of Los Angeles*, No. 09-5978, 2016 WL 9276022, at *1 (C.D. Cal. Feb. 26, 2016) (holding that "permanent enactment of the [challenged] ordinance" did not restart the statute-of-limitations clock that had begun to run based on "interim enactment," where plaintiffs did not allege that permanent enactment constituted a "substantive amendment" of the regulation; noting that these principles apply to taking claims (citing *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)); *De Anza Props. X, Ltd. v. Cnty. of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991); *Alaska v. United States*, 32 Fed. Cl. 689, 701-03 (1995). Moreover, even if the 2021 regulations *had* broadened the pre-existing prohibition, any takings claim would, by virtue of the statute of limitations, be limited to the marginal *additional* loss of value caused by the regulations relative to the 2010 moratorium.

Clause, which provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government." U.S. Const., art. IV, § 4.

First, the Supreme Court "has several times concluded … that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019); *accord Colegrove v. Green*, 328 U.S. 549, 555 (1946) (plurality opinion) ("Violation of the [Guarantee Clause] cannot be challenged in the courts."); *Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 133 (1912) (such claims are "not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress"); *Parker v. Merlino*, 646 F.2d 848, 856 n.15 (3d Cir. 1981); *Benner v. Wolf*, 461 F. Supp. 3d 154, 168 n.17 (M.D. Pa. 2020).[13] For this reason alone, the claim must be dismissed.

Second, even assuming *arguendo* that "individuals could utilize the federal courts to enforce the Guarantee Clause" "in unusual and extreme cases, such as the establishment of a monarchy by a state in place of a republican form of government," this is not such a case. *Largess v. Sup. Jud. Court for State of Mass.*, 373 F.3d 219, 229 (1st Cir. 2004). Plaintiffs' argument seems to be that, if the DRBC's Prohibition is authorized by the Compact, the Compact violates the

---

[13] In *New York v. United States*, 505 U.S. 144 (1992), the Supreme Court suggested that "perhaps not all claims under the Guarantee Clause present nonjusticiable questions." *Id.* at 185. But that statement was dictum, as the Court concluded that petitioners had not made out a Guarantee Clause claim in any event. *Id.* at 185-86. Importantly, the Court has never overruled its earlier nonjusticiability holdings, and Chief Justice Roberts did not refer to the dictum in *New York* in his recent opinion for the Court in *Rucho*, 139 S. Ct. at 2506.

Guarantee Clause because Pennsylvania lacks unilateral, unchecked authority to permit industrial activities affecting interstate water resources within the Basin. This argument overlooks (1) that what Plaintiffs attack, *i.e.*, the ceding of unilateral authority over interstate resources to a joint interstate authority, is the very purpose of interstate compacts, which are expressly authorized by the Constitution, *see Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S 30, 41-42 (1994) ("the States agreed to the power sharing, coordination, and unified action that typify Compact Clause creations"); (2) that Pennsylvania voluntarily ratified the Compact, and its representative on the DRBC, the Governor, approved the Prohibition; and (3) in any event, there can be no question that the federal government, which is a signatory to the Compact, has constitutional authority to regulate activities affecting interstate water resources; Plaintiffs provide no reason why the exercise of such authority under a congressionally-approved Compact is any less constitutional. *See generally Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 n.8 (2013) (congressional approval transforms interstate compact into federal law preempting any conflicting state law under Supremacy Clause). As a matter of law, Plaintiffs' allegations do not state a violation of the Guarantee Clause.

## IV.    CONCLUSION

For the foregoing reasons, the Democratic Senator Intervenors respectfully request that the Amended Complaint be dismissed in its entirety.

Respectfully submitted,

Dated: April 15, 2021                    HANGLEY ARONCHICK SEGAL
                                         PUDLIN & SCHILLER


                                         By: _/s/ Steven T. Miano_____
                                             Steven T. Miano
                                             Robert A. Wiygul
                                             Peter V. Keays
                                         One Logan Square, 27th Floor
                                         Philadelphia, PA  19103
                                         215-568-6200

                                         *Counsel for the Democratic Senator*
                                         *Intervenors*

## **CERTIFICATE OF SERVICE**

I, Steven T. Miano, hereby certify that, on April 15, 2021, I caused true and correct copies of the foregoing Motion to Dismiss the Amended Complaint and supporting Memorandum of Law to be served on all counsel of record through the Court's electronic filing system.

/s/ Steven T. Miano
STEVEN T. MIANO