# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENATOR GENE YAW, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 2:21-cv-119(PD) |
| THE DELAWARE RIVER BASIN COMMISSION, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| DELAWARE RIVERKEEPER NETWORK and MAYA K. VAN ROSSUM, THE DELAWARE RIVERKEEPER, | : | |
| | : | |
| Intervenor-Defendants. | : | |
| | : | |
| and | : | |
| | : | |
| SENATORS STEVE SANTARSIERO, CAROLYN COMITTA, AMANDA CAPPELLETTI, MARIA COLLETT, WAYNE FONTANA, ART HAYWOOD, VINCE HUGHES, JOHN KANE, TIM KEARNEY, KATIE MUTH, JOHN SABATINA, NIKIL SAVAL, JUDY SCHWANK, SHARIF STREET, TINA TARTAGLIONE, AND ANTHONY WILLIAMS, | : | |
| | : | |
| Intervenor-Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of the Motion to Intervene filed by Bucks County and Montgomery County ("Counties"), it is hereby **ORDERED** that the Motion to Intervene is **GRANTED**. *See* Fed. R. Civ. P. 24. The **CLERK OF COURT** shall **ADD** the Counties to the docket as Intervenor-Defendants.

**AND IT IS SO ORDERED.**

_____
Paul S. Diamond, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENATOR GENE YAW, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 2:21-cv-119(PD) |
| THE DELAWARE RIVER BASIN COMMISSION, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| DELAWARE RIVERKEEPER NETWORK and MAYA K. VAN ROSSUM, THE DELAWARE RIVERKEEPER, | : | |
| | : | |
| Intervenor-Defendants. | : | |
| | : | |
| and | : | |
| | : | |
| SENATORS STEVE SANTARSIERO, CAROLYN COMITTA, AMANDA CAPPELLETTI, MARIA COLLETT, WAYNE FONTANA, ART HAYWOOD, VINCE HUGHES, JOHN KANE, TIM KEARNEY, KATIE MUTH, JOHN SABATINA, NIKIL SAVAL, JUDY SCHWANK, SHARIF STREET, TINA TARTAGLIONE, AND ANTHONY WILLIAMS, | : | |
| | : | |
| Intervenor-Defendants. | : | |

## MOTION TO INTERVENE

Bucks County and Montgomery County ("Counties"), of the

Commonwealth of Pennsylvania, hereby move to intervene as defendants in this

action. The Counties seek intervention as of right pursuant to Rule 24(a)(2) of the

Federal Rules of Civil Procedure or, in the alternative, permissive intervention

pursuant to Rule 24(b)(1)(B). In support of this Motion, the Counties rely on the

accompanying Memorandum of Law and the Declarations of Evan J. Stone and

Lee Soltysiak, filed herewith, all of which are intended to be incorporated as if set

forth herein.

Pursuant to Rule 24(c), the Counties submit, as Exhibit A, their proposed

Motion to Dismiss the Amended Complaint and supporting Memorandum of Law.

WHEREFORE, the Counties respectfully request that the Court grant their

Motion and permit them to intervene as defendants in this action.

HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER

By:   */s/ Steven T. Miano*
Steven T. Miano
Robert A. Wiygul
Peter V. Keays
One Logan Square, 27th Floor
Philadelphia, PA 19103
215-568-6200

*Attorneys for Bucks County and Montgomery
County*

Dated:      April 15, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Steven T. Miano, hereby certify that, on April 15, 2021, I caused true and correct copies of the foregoing Motion to Intervene, along with the accompanying Memorandum of Law, Declarations, proposed order, proposed Intervenor Defendant Counties' Motion to Dismiss the Amended Complaint, and proposed Memorandum of Law in Support of Intervenor Defendant Counties' Motion to Dismiss the Amended Complaint, to be served on all counsel of record through the Court's electronic filing system.


*/s/ Steven T. Miano*
STEVEN T. MIANO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SENATOR GENE YAW, *et al.*,                    :
                                               :
       Plaintiffs,                 :
                                               :
       v.                          :
                                               :      No. 2:21-cv-119(PD)
THE DELAWARE RIVER BASIN                        :
COMMISSION,                                     :
                                               :
       Defendant,                  :
                                               :
   and                                    :
                                               :
DELAWARE RIVERKEEPER NETWORK and               :
MAYA K. VAN ROSSUM, THE DELAWARE               :
RIVERKEEPER,                                    :
                                               :
       Intervenor-Defendants.      :
                                               :
   and                                    :
                                               :
SENATORS STEVE SANTARSIERO,                     :
CAROLYN COMITTA, AMANDA                         :
CAPPELLETTI, MARIA COLLETT, WAYNE               :
FONTANA, ART HAYWOOD, VINCE                     :
HUGHES, JOHN KANE, TIM KEARNEY,                 :
KATIE MUTH, JOHN SABATINA, NIKIL                :
SAVAL, JUDY SCHWANK, SHARIF                      :
STREET, TINA TARTAGLIONE, AND                   :
ANTHONY WILLIAMS,                               :
                                               :
       Intervenor-Defendants.      :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 1

II.    RELEVANT BACKGROUND ....................................................... 2

    A.     The Delaware River Basin and Commission ....................................... 2

    B.     The Commission's Prohibition on High Volume Hydraulic
        Fracturing ........................................................................... 4

    C.     Procedural History and Plaintiffs' Claims ......................................... 5

III.   ARGUMENT ................................................................................. 6

    A.     The Counties are Entitled to Intervene as of Right Pursuant to
        Rule 24(a)(2) ........................................................................... 6

        1.     The Intervenor Counties' Motion is Timely ............................. 7

        2.     The Intervenor Counties Possess Sufficient Interests in the
            Litigation to Warrant Intervention as of Right ......................... 9

            (a)     The Intervenor Counties Stand on Equal Footing With
                the Plaintiff Counties and Have an Equal Interest in
                Interpreting the Nature of Whatever Obligations and
                Authority May Be Found to Have Been Conferred
                Upon Them By the ERA ............................................... 10

            (b)     The Intervenor Counties Have Significant Interests
                Associated With the Land They Own Within the
                Basin ...................................................................... 13

        3.     The Intervenor Counties' Interests May Be Affected or
            Impaired By the Disposition of This Action ............................ 16

        4.     The Intervenor Counties' Interests Are Not Adequately
            Represented By Existing Parties to the Litigation ................... 17

    B.     The Intervenor Counties Should Be Permitted to Intervene
        Pursuant to Rule 24(b)(1)(B) ............................................................ 20

IV.    CONCLUSION ........................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Farm Bureau Fed'n v. U.S. E.P.A.*,
    278 F.R.D. 98 (M.D. Pa. 2011) ............................................................. 16, 17, 19

*Blake v. Pallan*,
    554 F.2d 947 (9th Cir. 1977) ........................................................................ 10

*Chester Water Auth. v. Susquehanna River Basin Comm'n*,
    No. 1:14-CV-1076, 2014 WL 3908186 (M.D. Pa. Aug. 11, 2014) .................... 8

*Defs. of Wildlife v. Johanns*,
    No. C 04-4512 PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) ................... 15

*Eco-Site LLC v. Cnty. of Pueblo, Colorado by & Through Bd. of Cnty.
    Comm'rs*,
    352 F. Supp. 3d 1079 (D. Colo. 2018) ........................................................... 14

*Ga. River Network v. U.S. Army Corps of Eng'rs*,
    No. 4:10-CV-00267, 2011 WL 3320514 (S.D. Ga. Aug. 1, 2011) ................... 15

*Iron Quarter, LLC v. Mims*,
    No. 3:10-CV-539-H, 2011 WL 1343778 (W.D. Ky. Apr. 8, 2011) ................... 14

*Kitzmiller v. Dover Area Sch. Dist.*,
    229 F.R.D. 463 (M.D. Pa. 2005) .................................................................... 21

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ............................................................. 7, 9, 10, 19

*Libertarian Party of Pa. v. Wolf*,
    No. CV 20-2299, 2020 WL 6580739 (E.D. Pa. July 8, 2020) .......................... 21

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ........................................................................ 7, 8, 9

*Nat'l Res. Def. Council v. U.S. E.P.A.*,
    437 F. Supp. 2d 1137, 1152 (C.D. Cal. 2006), *aff'd sub nom. Nat.
    Res. Def. Council v. U.S. E.P.A.*, 542 F.3d 1235 (9th Cir. 2008) .................... 15

*Pa. Env't Def. Found. v. Commonwealth*,
   161 A.3d 911 (Pa. 2017) ........................................................10, 11

*Pennsylvania v. President of the U.S.*,
   888 F.3d 52 (3d Cir. 2018).......................................... 9, 16, 17, 18

*Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*,
   No. 2:14-CV-00274-JDL, 2015 WL 12990147 (D. Me. Feb. 3,
   2015) ..................................................................................14

*Robinson Twp. v. Commonwealth*,
   83 A.3d 901 (Pa. 2013) ...............................................................12

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
   101 F.3d 503, 507 (7th Cir. 1996) ..............................................14

*UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*,
   No. 18-CV-17191, 2020 WL 5810562 (D.N.J. Sept. 30, 2020).......................20

*United States v. Territory of Virgin Islands*,
   748 F.3d 514 (3d Cir. 2014)..........................................................7

*Utah Ass'n of Cntys. v. Clinton*,
   255 F.3d 1246, 1253 (10th Cir. 2001) ..........................................16

*W. Expl., LLC v. U.S. Dep't of the Interior*,
   250 F. Supp. 3d 718 (D. Nev. 2017) ............................................15

*Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*,
   959 F.3d 569 (3d Cir. 2020)..........................................................6

*Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*,
   331 F.R.D. 583 (M.D. Pa. 2019), *vacated and remanded*, 959 F.3d
   569 (3d Cir. 2020)....................................................................5

## Other Authorities

Census Bureau, Population Estimates, July 1, 2019,
   https://www.census.gov/quickfacts/fact/table/montgomerycountyp
   ennsylvania,buckscountypennsylvania,PA/PST045219 .......................3

Del. River Basin Comm'n, State of the Basin Report (July 25, 2019),
https://www.state.nj.us/drbc/library/documents/SOTBreport_july2
019.pdf...............................................................................................3

Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes,
https://www.state.nj.us/drbc/library/documents/5-05-
10_minutes.pdf ................................................................................4

Del. River Basin Comm'n, Resolution No. 2021-01 (Feb. 25, 2021),
https://www.state.nj.us/drbc/library/documents/Res2021-
01_HVHF.pdf....................................................................................4

Fed. R. Civ. P. 24.....................................................................1, 7, 9

Fed. R. Civ. P. 24(a) .......................................................................6

Fed. R. Civ. P. 24(a)(2)............................................................6, 7, 16

Fed. R. Civ. P. 24(b)(1)(B) .............................................................20

Fed. R. Civ. P. 24(b)(3).................................................................20

Bucks and Montgomery Counties (collectively, the "Intervenor Counties") submit this Memorandum of Law in support of their Motion to Intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. The Intervenor Counties seek to intervene as defendants alongside the Delaware River Basin Commission ("Commission") for the purpose of opposing the claims brought by Pennsylvania State Senators Gene Yaw, Lisa Baker, and the Pennsylvania State Republican Caucus (collectively, the "Senate Plaintiffs"), Carbon and Wayne Counties (collectively, the "Plaintiff Counties") and Damascus and Dyberry Townships (collectively, the "Plaintiff Townships"). If the Intervenor Counties' Motion is granted, they would be jointly represented by the same counsel as the sixteen Pennsylvania State Senators that are Intervenor-Defendants in this action.

## I.    INTRODUCTION

The waters of the Delaware River Basin are a vital and irreplaceable asset shared by the citizens of four states. In an inspired act of cooperative federalism— and in recognition of the collective action problem presented by the diffusion of this resource across multiple political jurisdictions—the Basin states created the Delaware River Basin Commission. In so doing, the states ceded certain powers to the Commission so that it may act in the best interest of the common resource, particularly in situations where the pursuit of one set of stakeholders' parochial economic interests would cause significant harm to the waters upon which all

stakeholders rely. Toward that end, the Commission issued a prohibition on a particular industrial practice that it determined could cause considerable and irreparable harm to the waters of the Basin: high volume hydraulic fracturing, or "fracking." Plaintiffs now seek to claw back and collaterally attack the Commission's authority to enact such a measure. Ironically, Plaintiffs' misguided assertions are based in part on the Environmental Rights Amendment ("ERA") to the Pennsylvania Constitution, which recognizes, as relevant to this matter, that all citizens of the Commonwealth have an inviolable right to pure water, and that the Commonwealth and its municipalities have an obligation to conserve and maintain that resource.

Plaintiffs' claims are wholly without merit. The Commission's fracking prohibition is entirely consistent with the Pennsylvania Constitution and is a valid exercise of the authority ceded to the Commission by the Commonwealth and the other Basin states six decades ago. The Intervenor Counties have a significant interest in the outcome of this misguided litigation, and therefore respectfully request that the Court grant their Motion to Intervene.

## II.   RELEVANT BACKGROUND

### A.   The Delaware River Basin and Commission

The Delaware River Basin ("Basin") is a watershed covering approximately 13,600 square miles that drains into the Delaware River and its tributaries. The

Basin spans four states—Pennsylvania, New Jersey, Delaware, and New York—

and provides drinking water to 13.3 million people; 5.6 million residents of

Pennsylvania live within its boundaries. Del. River Basin Comm'n, State of the

Basin Report at PDF pp. 3, 12 (July 25, 2019),

https://www.state.nj.us/drbc/library/documents/SOTBreport_july2019.pdf. Bucks

and Montgomery Counties lie completely within the Basin, *id.* at PDF p. 8, which

provides water to their combined population of nearly 1.5 million citizens, U.S.

Census Bureau, Population Estimates, July 1, 2019,

https://www.census.gov/quickfacts/fact/table/montgomerycountypennsylvania,buc

kscountypennsylvania,PA/PST045219. Declaration of Evan J. Stone ¶¶ 4, 5;

Declaration of Lee Soltysiak ¶¶ 4, 5.

The water in the Basin is a common resource over which local, state, and

national interests have "joint responsibility." Del. River Basin Compact at 1 (Am.

Compl., Ex. A). In recognition of that fact, the governments of the four Basin

states and the United States Congress entered into the Delaware River Basin

Compact ("Compact") in 1961. Acknowledging that the "water resources of the

basin are subject to the sovereign right and responsibility of the signatory parties,"

those parties enacted the Compact with "the purpose of … provid[ing] for a joint

exercise of such powers and sovereignty in the common interest of the people of

the region." *Id.* § 1.3(b). The signatory parties also acknowledged the reality that

the waters of the Basin do not respect political boundaries; rather, "the water resources of the basin are functionally inter-related, and the uses of these resources are interdependent," and "[a] single administrative agency is therefore essential." *Id.* § 1.3(c). The Compact established the Commission as that agency. *Id.* § 2.1.

### B.    The Commission's Prohibition on High Volume Hydraulic Fracturing

Exercising the authority ceded to it by the Basin states through the Compact, the Commission prohibited high volume hydraulic fracturing ("fracking") within the Basin. The prohibition was first effectuated in 2010 by what amounted to a moratorium pending the Commission's development and adoption of regulations governing its review of applications for fracking projects (the "moratorium"). Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes at 5, https://www.state.nj.us/drbc/library/documents/5-05-10_minutes.pdf. Then, by resolution dated February 25, 2021, the Commission adopted final regulations prohibiting any fracking within the Basin (the "regulations"). Del. River Basin Comm'n, Resolution No. 2021-01, at 5 (Feb. 25, 2021), https://www.state.nj.us/drbc/library/documents/Res2021-01_HVHF.pdf. (The moratorium and the regulations are hereafter referred to collectively as the "Prohibition.")

The Prohibition was based, *inter alia*, on the Commission's findings that if fracking were to proceed in the Basin: "[s]pills and releases of hydraulic fracturing

chemicals, fluids and wastewater would adversely impact surface water and groundwater, and losses of well integrity would result in subsurface fluid (including gas) migration, impairing drinking water resources;" "[t]he fluids released or migrating would contain pollutants, including salts, metals, radioactive materials, organic compounds, endocrine-disrupting and toxic chemicals, and chemicals for which toxicity has not been determined, impairing the water uses;" and fracking and its impacts "would be dispersed over and adversely affect thousands of acres of sensitive water resource features." *Id.* at 4. The Commission therefore concluded that fracking and related activities "pose significant, immediate and long-term risks to the development, conservation, utilization, management, and preservation of the water resources of the Delaware River Basin." *Id.*

### C.   <u>Procedural History and Plaintiffs' Claims</u>

The original complaint in this action was filed by Senate Plaintiffs and Damascus Township on January 11, 2021. (ECF 1.) Because the regulations had not yet been adopted, the initial complaint targeted only the moratorium.[1] The

---

[1]   This case is not Senators Yaw or Baker's first attempt to challenge the Commission's fracking moratorium: they twice moved for and were twice denied intervention in a related suit that remains pending in the U.S. District Court for the Middle District of Pennsylvania. *Wayne Land & Mineral Group, LLC v. Del. River Basin Comm'n*, 331 F.R.D. 583, 593-596 (M.D. Pa. 2019), *vacated on different grounds and remanded*, 959 F.3d 569 (3d Cir. 2020). On appeal, the Third Circuit did not reach the merits of the Senators' motion for intervention, but rather remanded for the district court to rule on the threshold issue of whether

(continued...)

Delaware Riverkeeper Network and Delaware Riverkeeper Maya van Rossum (collectively "DRN") filed a motion to intervene as defendants, which the Court granted over Plaintiffs' objection. (ECF 9, 12, 15). Sixteen Democratic State Senators ("Intervenor-Defendant Senators") also filed a motion to intervene as defendants, which the court likewise granted. (ECF 17, 24.) On March 31, 2021, the original plaintiffs, joined by Carbon and Wayne Counties and Dyberry Township, filed their Amended Complaint, which targets the Prohibition as a whole. (ECF 29.) Defendants and Intervenor-Defendants are required to respond to the Amended Complaint by April 15, 2021 (ECF 32), the same date upon which Intervenor Counties filed their Motion to Intervene.

## III.   ARGUMENT

### A.   The Counties are Entitled to Intervene as of Right Pursuant to Rule 24(a)(2)

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right and provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the

---

(continued...)

the Senators had standing to bring the claims contained in the proposed complaint that accompanied their second motion to intervene. *Wayne Land*, 959 F.3d at 577. Upon remand, however, the Senators declined to litigate the question of their standing, opting instead to withdraw their motion to intervene, *see* Senators Joseph B. Scarnati, Lisa Baker and Gene Yaw's Motion to Withdraw (July 1, 2020), *Wayne Land*, 3:16-CV-897 (M.D. Pa.) (ECF 193), and try their hand in this Court instead.

> property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a
> practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately
> represent that interest.

Fed. R. Civ. P. 24(a)(2). In applying Rule 24(a)(2), the Third Circuit has held that a

non-party may intervene as of right if it satisfies four criteria: "(1) the application

for intervention is timely; (2) the applicant has a sufficient interest in the litigation;

(3) the interest may be affected or impaired, as a practical matter by the disposition

of the action; and (4) the interest is not adequately represented by an existing party

in the litigation." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519

(3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 593, 596 (3d Cir. 1987)). The

Third Circuit has also explained that "Rule 24 demands flexibility when dealing

with the myriad situations in which claims for intervention arise." *Kleissler v. U.S.

Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

The Counties respectfully submit that they have satisfied all four criteria,

and that they are therefore entitled to intervene in this matter as of right.

## 1.   The Intervenor Counties' Motion is Timely

The Third Circuit has articulated three factors for courts to consider when

determining whether a motion to intervene is timely: "(1) the stage of the

proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason

for the delay." *Mountain Top Condominium Ass'n v. Dave Stabbert Master*

*Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). All three factors support a determination that the Intervenor Counties' motion has been timely filed.

This case is in the very early stages. The Intervenor Counties' motion was filed on the same day as Defendant's and Intervenor-Defendants' responses to the Amended Complaint are to be filed. Moreover, discovery has not yet commenced. Those facts also support a finding that the granting of the Intervenor Counties' Motion to Intervene will not prejudice the existing parties. *See Chester Water Auth. v. Susquehanna River Basin Comm'n*, No. 1:14-CV-1076, 2014 WL 3908186, at *2 (M.D. Pa. Aug. 11, 2014) ("Generally, the intervention of a non-party will not prejudice the current parties when discovery has yet to commence and dispositive motions have not been filed." (citing *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 347 (M.D.Pa. 2013)); *see also Mountain Top Condo. Ass'n*, 72 F.3d at 370 ("The record before us reveals that while some written discovery and settlement negotiations had occurred between the MTCA and the contractors prior to the [motion to intervene], there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in question. Under these circumstances, we cannot say that intervention at this stage of the litigation would prejudice the current parties."). Moreover, the fact that the proposed Motion to Dismiss the Amended Complaint that the Intervenor Counties intend to file is substantively the same as the motion to dismiss filed by the

Intervenor-Defendant Senators further supports a finding that the existing parties would not be prejudiced by the intervention of the Intervenor Counties. (*Compare* Exhibit A *with* ECF 34.)

Finally, there is no delay to speak of, as the Intervenor Counties moved expeditiously to intervene. The Intervenor Counties filed their motion a mere fifteen days after the Amended Complaint (which, notably, is the first time that their counterparts, the Plaintiff Counties, appear in this case). The Intervenor Counties' Motion to Intervene is therefore timely filed.

### 2.    The Intervenor Counties Possess Sufficient Interests in the Litigation to Warrant Intervention as of Right

In order to satisfy the "sufficient interest" required to intervene as of right, the prospective intervener must possess an interest that is "specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania v. President of the U.S.*, 888 F.3d 52, 58 (3d Cir. 2018) (quoting *Kleissler*, 157 F.3d at 972). The Third Circuit has acknowledged the "nebulous" nature of this standard, *Kleissler*, 157 F.3d at 969, and has recognized that "the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition," *Mountain Top Condo. Ass'n*, 72 F.3d at 366. Along the same lines, in reflecting on its jurisprudence on the "sufficient interest" requirement, the Third Circuit has emphasized its own "adherence to the elasticity that Rule 24 contemplates when compared to the

rigidity of earlier [intervention] practice," *Kleissler*, 157 F.3d at 970, and stated that "[t]he facts assume overwhelming importance in each decision," *id.* at 972. The Intervenor Counties have at least two interests that are sufficient to warrant intervention in this matter as of right.

> **(a)     The Intervenor Counties Stand on Equal Footing With the Plaintiff Counties and Have an Equal Interest in Interpreting the Nature of Whatever Obligations and Authority May Be Found to Have Been Conferred Upon Them By the ERA**

The bulk of Plaintiff Counties' claims are premised upon the presumption that counties in Pennsylvania are trustees for purposes of the ERA.[2] (See Am. Compl. ¶¶ 29, 76, 91.) To the extent the Court vindicates that position, the Intervenor Counties would have precisely the same obligations under the ERA as their plaintiff counterparts, and as such, they have a direct and substantial interest in the Court's determination of what those obligations require. *See Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977) ("A state official has a sufficient interest in adjudications which will directly affect his own duties and powers …."). The Plaintiff and Intervenor Counties have diametrically opposed views with respect to

---

[2]     Presumably, this interpretation of the ERA is drawn from the Pennsylvania Supreme Court's decision in *Pennsylvania Environmental Defense Foundation v. Commonwealth* ("*PEDF*"), in which the Court reiterated that trustee obligations under the ERA "are not vested exclusively in any single branch of Pennsylvania's government, and instead, all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." 161 A.3d 911, 931 n.23 (Pa. 2017) (quoting *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 956-957 (Pa. 2013)).

the nature of the obligations that the ERA imposes upon its trustees, and the former should not be permitted to speak for the latter on that score.

Specifically, the Plaintiff Counties contend that the Commission's fracking Prohibition impinges upon the ERA, whereas the Intervenor Counties believe that the two are in perfect harmony. In fact, the Intervenor Counties contend that the fracking moratorium advances the ERA's purpose in that it protects a vital natural resource of the Commonwealth—clean water—from degradation caused by a polluting enterprise. The Plaintiff Counties' argument is presumably premised on the Pennsylvania Supreme Court's ruling in *PEDF* that funds derived from the exploitation of the Commonwealth's natural resources are part of the corpus of the trust created by the ERA. *See PEDF*, 161 A.3d at 936 (ruling that "proceeds from the sale of trust principal … remain in the corpus"). However, the Plaintiff Counties seize upon this statement to turn the ERA on its head in what can only be described as an audacious attempt at legal gaslighting. In the alternate universe conjured by the Plaintiffs, making money by exploiting and degrading the Commonwealth's natural resources is the primary objective of the ERA. Moreover, Plaintiffs imply that the trust created by the ERA is benefitted from the monetization of the very natural resources that the ERA is intended to protect. Plaintiffs' arguments simply cannot be squared with the Pennsylvania Supreme

11

Court's landmark opinions in *Robinson Township*[3]—a case involving fracking in which the Court invalidated significant portions of Act 13, the very law upon which Plaintiffs now rely to support their claims, because they violated the ERA, *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 985 (Pa. 2013)—and *PEDF*. Regardless, the Intervenor Counties have a direct interest in ensuring that the contours of any obligations they may have under the ERA are drawn based upon a proper interpretation of that constitutional provision.

Relatedly, the Intervenor Counties strongly object to the assertion that the Commission has impinged upon the ability of counties impacted by the Prohibition to satisfy their obligations under the ERA. (*See* Am. Compl. ¶ 91.) To the contrary, the Prohibition is entirely consistent with—and indeed, acts in furtherance of—any obligation that counties within the Basin may have as trustees under the ERA. Moreover, the Intervenor Counties reject the claim that the Prohibition has diminished the legislative or executive powers of Counties within the Basin. (*See id.* ¶ 122). In any event, the Intervenor Counties have a significant interest in the

---

[3]     The Pennsylvania Supreme Court ruled that the ERA's "express purpose … [is] to be a bulwark against actual or likely degradation of, *inter alia*, our air and water quality," *Robinson Twp.*, 83 A.3d at 953, that "economic development cannot take place at the expense of an unreasonable degradation of the environment," *id.* at 954, and that the ERA *rejects* the "proprietary theory" of natural resources, whereby government "measur[es] its gains by the balance sheet profits and appreciation it realizes from its resources operations," *id.* at 956. Moreover, the Court concluded that the ERA imposes a fiduciary duty on the Commonwealth, as trustee, to "conserve and maintain" Pennsylvania's public natural resources for the benefit of all Pennsylvanians. *Id.* at 957. That is, "the Commonwealth has a duty to refrain from permitting or encouraging the degradation, diminution, or depletion of public natural resources." *Id.*

merits determination on those issues that mirrors whatever interests the Plaintiff Counties may be deemed to have with respect to their obligations under the ERA.

### (b)   The Intervenor Counties Have Significant Interests Associated With the Land They Own Within the Basin

Each of the Intervenor Counties owns a significant amount of land within the Basin consisting primarily of county parks, trails, recreation sites, and historic sites. Stone Decl. ¶ 7; Soltysiak Decl. ¶ 7. The Intevenor Counties hold a proprietary interest in protecting their lands—and the surface water and groundwater thereupon—from pollution, degradation, and nuisance, all which are implicated by the relief that Plaintiffs seek: the effective revocation of the Prohibition by declaratory judgement, which would pave the way for fracking and all its attendant environmental impacts.[4] If fracking were to be permitted, the Counties' land would be subject to nuisance and loss of value caused by fracking on adjacent or nearby lands, as well as pollution and degradation of ground and surface water from fracking activities being conducted near (and not so near) their lands. Stone Decl. ¶¶ 9, 10; Soltysiak Decl. ¶¶ 10, 11.

---

[4]      The Intervenor Counties also have a related but broader interest in the protection of the waters within their boundaries on lands they do not own. *See Nw. Env't Advocs. v. United States Env't Prot. Agency*, No. 03-05760, 2005 WL 8155191, at *2 (N.D. Cal. May 27, 2005) (granting several states' motion to intervene based on their "interest in their waters and the aquatic life found in their waters").

This type of proprietary interest in land and the attendant interest a landowner holds in preventing these types of harms fall squarely within the range of interests contemplated by Rule 24(a)(2). *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs,* 101 F.3d 503, 507 (7th Cir. 1996) (holding that a township and other prospective interevnor landowners' "legally protected interest (protected by the law of nuisance) against being subjected to noise, dust, and odors by a neighboring land" qualifies as a sufficient interest for purposes of Rule 24(a)(2)); *Eco-Site LLC v. Cnty. of Pueblo, Colorado by & Through Bd. of Cnty. Comm'rs*, 352 F. Supp. 3d 1079, 1084–85 (D. Colo. 2018) (in an action regarding the potential construction of a cellular communications facility, the court determined that a neighboring landowner's "legally protected interest in insulating [his] property" against "land use decisions that would diminish [its value] from adverse effects" under Colorado law was sufficient for purposes of Rule 24(a)(2)); *Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*, No. 2:14-CV-00274-JDL, 2015 WL 12990147, at *2 (D. Me. Feb. 3, 2015) (in an action regarding a proposed water district facility, the court concluded that Rule 24(a)(2)'s sufficient interest factor was met based on the "[a]butter interest in the use of a property" with respect to the owner of a neighboring property); *Iron Quarter, LLC v. Mims*, No. 3:10-CV-539-H, 2011 WL 1343778, at *3 (W.D. Ky. Apr. 8, 2011) (holding that Rule 24(a)(2)'s sufficient interest requirement was

14

satisfied by the "substantial legal interest" arising from prospective intervenor's part ownership of an "adjacent property which could incur physical or economic harm from events" at the property that was the subject of the action); *Ga. River Network v. U.S. Army Corps of Eng'rs*, No. 4:10-CV-00267, 2011 WL 3320514, at *2 (S.D. Ga. Aug. 1, 2011) ("A noncontingent property interest is commonly claimed in intervention cases. It is the most elementary type of right that Rule 24(a) is designed to protect. Here no one disputes that … Leon [County] wants to protect substantial portions of its land from what it claims will be a substantial adverse environmental impact from Grady County's upstream activities. Leon [County] thus easily satisfies this intervention requirement." (internal quotation marks and citations omitted)).[5]

---

[5]       There is a substantial body of caselaw in which government entities have been found to have standing based on similar interests. This authority, although not directly on point, lends support to the Intervenor Counties' argument with respect to Rule 24(a)(2)'s "sufficient interest" requirement. *See, e.g.*, *W. Expl., LLC v. U.S. Dep't of the Interior*, 250 F. Supp. 3d 718, 732 (D. Nev. 2017) ("A municipality, such as a county, has a proprietary interest … in protecting natural resources from harm."); *Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *6 (N.D. Cal. Dec. 1, 2005) ("[T]he State alleges concrete interests in protecting the State's natural resources and wildlife, as well as concrete interests based on its ownership of land in and adjacent to national forests. Because it alleges that these lands and resources will be harmed by the [proposed rule pertaining to adjacent federal land], the State demonstrates both that it has a protectable interest, and that the interest is related to the subject of the litigation."); *Nat'l Res. Def. Council v. U.S. E.P.A.*, 437 F. Supp. 2d 1137, 1152 (C.D. Cal. 2006), *aff'd sub nom. Nat. Res. Def. Council v. U.S. E.P.A.*, 542 F.3d 1235 (9th Cir. 2008) ("A state's interest in protecting its natural resources and environment from harm constitutes a proprietary interest.").

### 3.    The Intervenor Counties' Interests May Be Affected or Impaired By the Disposition of This Action

Rule 24(a)(2) requires that the litigation present a "tangible threat" to the intervenor's protectable interest, meaning that the interest "may be affected or impaired as a practical matter by the disposition of the action." *Pennsylvania*, 888 F.3d at 59. A prospective intervenor "must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is minimal." *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98, 108 (M.D. Pa. 2011) (quoting *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001)) (emphasis in original).

With respect to the Intervenor Counties' first interest, *see supra* section III(A)(2)(a), the Court's resolution of the issues Plaintiff Counties have raised regarding the nature and scope of a county's obligations under the ERA, if any, could have a broad and tangible impact upon how the Intervenor Counties may (or must) conduct a wide swath of their activities. If intervention is denied, the Intervenor Counties will be deprived of the opportunity to rebut their counterparts' assertions as to how the ERA is to be interpreted with respect to any obligations that Pennsylvania counties may be found to have thereunder. Suffice it to say, if the Court concludes that Plaintiffs are correct and counties, as trustees under the ERA, have a duty to foster the exploitation of natural resources in order to generate

16

revenue, the Intervenor Counties would need to seriously reevaluate and recalibrate their overall approach to managing their public resources.

This litigation also presents a tangible threat to the Intervenor Counties' proprietary interests arising from land that they own within the Basin. If the Prohibition is stricken down and fracking is permitted, the Intervenor Counties' land, and the water thereon, is likely to suffer, perhaps significantly. *See* Stone Decl. ¶¶ 9, 10; Soltysiak Decl. ¶¶ 10, 11. As the Commission's regulations make abundantly clear, fracking conducted both close to and distant from the Intervenor Counties' lands will likely have a significant and detrimental impact on their lands. *See supra* section II(B); *see also* Stone Decl. ¶¶ 9, 10; Soltysiak Decl. ¶¶ 10, 11. The threat to Intervenor Counties' interests in this respect is direct, substantial, and real.

### 4. The Intervenor Counties' Interests Are Not Adequately Represented By Existing Parties to the Litigation

A prospective intervenor's interests are inadequately represented "if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." *Pennsylvania*, 888 F.3d at 60 (quoting *Virgin Islands*, 748 F.3d at 520). The burden imposed by this factor "is generally treated as minimal and requires the applicant to show that the representation of his interest *may be* inadequate." *Id.* (quoting *Mountain Top Condo. Ass'n*, 72 F.3d at 368) (emphasis in original).

17

The Intervenor Counties believe that they are the only parties to the right of the "*v.*" that could plausibly be considered trustees under the ERA, and thus, that they are uniquely situated when it comes to questions regarding the nature and scope of the obligations that devolve upon such trustees. Similarly, the Intervenor Counties' proprietary interests related to the lands they own are unique and unrepresented by existing parties. Moreover, while the Intervenor Counties' interests are presumably aligned with the Commission and the Intervenor-Defendants insofar as they support the Commission's Prohibition and ultimately seek the dismissal of the Plaintiffs' claims, the extent to which their interests will align beyond that is unknown. For example, it is not clear whether the Commission will take the same position with respect to interests discussed above, *see supra* section III(A)(2)(a), related to the duties and obligations of a county vis-à-vis the ERA. At the very least, it cannot be said that the Commission shares those interests, which are unique to the counties. For these reasons, the Commission's involvement and the involvement of the existing Intervenor-Defendants certainly "*may be* inadequate" to advance and defend the Intervenor Counties' interests, which is all that Rule 24(a)(2) requires. *Pennsylvania*, 888 F.3d at 60 (internal quotation marks omitted).

The Third Circuit has held that "a rebuttable presumption of adequacy arises if one party is a government entity charged by law with representing the interests

18

of the applicant for intervention." *Id.* (quoting *Virgin Islands*, 748 F.3d at 520). There is no such rebuttable presumption here. Assuming *arguendo* that the Commission is a "government entity" within the meaning of the Third Circuit's jurisprudence in this area (which is not clear), the Commission has not been charged by law with representing any interests implicated either by the Intervenor Counties' purported role as ERA trustees or their status as landowners. Moreover, even if a rebuttable presumption did arise, the Intervenor Counties' burden would be "comparatively light" because the Commission's views "are necessarily colored by its view of the public welfare rather than the more parochial views" of the Intervenor Counties, "whose interest[s are] personal to [them]." *Kleissler*, 157 F.3d at 972. In light of the foregoing, and given the fact that the "parochial views" of the Intervenor Counties relate to fundamental questions regarding the authority and duties that devolve upon them by virtue of their role as state entities and landowners, this burden is easily met.[6]

---

[6]     It is perhaps obvious that although they are also Pennsylvania counties within the Basin, the Plaintiff Counties do not represent the Intervenor Counties' interests in this case. As this brief outlines, there is a fundamental disagreement between the two sets of counties regarding, *inter alia*, the nature of the obligations purportedly bestowed upon them by the ERA and the extent to which fracking is consistent with those obligations; as such, their interests in this case are diametrically opposed.

**B.** **The Intervenor Counties Should Be Permitted to Intervene Pursuant to Rule 24(b)(1)(B)**

The Intervenor Counties respectfully submit that if the Court determines they are not entitled to intervene as of right, they should nevertheless be permitted to intervene under Rule 24(b)(1)(B). A non-party may be permitted to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). District courts have "broad discretion to determine whether permissive intervention in a case is appropriate." *UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co*., No. 18-CV-17191, 2020 WL 5810562, at *2 (D.N.J. Sept. 30, 2020) (citing *Virgin Islands*, 748 F.3d at 524). In exercising that discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As explained above, the Intervenor Counties' motion to intervene in this action is timely, and their intervention will neither delay this litigation nor prejudice the existing parties. *See supra* section III(A)(1). Moreover, the Intervenor Counties' defenses and arguments fall squarely within the current bounds of this litigation. Specifically, the Intervenor Counties intend to refute Plaintiffs' claims that the fracking Prohibition exceeds the scope of the Commission's authority under the Compact, that the Prohibition is in any way inconsistent with the ERA, that the Prohibition amounts to a taking, that the Plaintiffs have any duties or authority under the ERA or the Compact, that the Commission usurped the

20

authority of individual members of the legislature and the Plaintiff Counties, and that Plaintiffs have standing to bring their claims.

In deciding whether to permit intervention, "courts consider whether the proposed intervenors will add anything to the litigation." *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 471 (M.D. Pa. 2005). Relatedly, courts have granted permissive intervention where the prospective intervenor "could aid the court when it comes to adding adversarial testing to the parties' dispute." *Libertarian Party of Pa. v. Wolf*, No. CV 20-2299, 2020 WL 6580739, at *1 (E.D. Pa. July 8, 2020). The Intervenor Counties believe they will provide a vital counterpoint with respect to the arguments that their counterparts have raised, and that in so doing, they will add adversarial testing to the existing parties' dispute. As explained above, the Plaintiff Counties make numerous assertions related to their duties, obligations, and authority in their role vis-à-vis the ERA. The Intervenor Counties have a fundamentally different view on some of those issues, and believe that the Court may benefit from informed counterarguments presented by other counties.

Finally, the Intervenor Counties respectfully submit that the principles of fairness and equity weigh heavily in favor of the Court's exercising its broad discretion to grant intervention in this instance. The Plaintiff Counties do not speak on behalf of all counties within the Basin (and certainly not on behalf of the Intervenor Counties), and they should not be the only counties who are permitted

to play a role in resolving the issues that they have raised. The Intervenor Counties stand on equal footing with the Plaintiff Counties, and should be afforded an equal opportunity to litigate questions that go to the fundamental nature and scope of their role as counties, and as landowners.

## IV.    CONCLUSION

For the reasons set forth above, the Intervenor Counties respectfully request that this Court enter an order granting their Motion to Intervene.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By:    */s/ Steven T. Miano*
Steven T. Miano
Robert A. Wiygul
Peter V. Keays
One Logan Square, 27th Floor
Philadelphia, PA  19103
215-568-6200

*Attorneys for Bucks County and Montgomery County*

Dated:       April 15, 2021

22

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SENATOR GENE YAW, *et al.*,

    Plaintiffs,

    v.

THE DELAWARE RIVER BASIN
COMMISSION,

    Defendant,

and

DELAWARE RIVERKEEPER NETWORK and
MAYA K. VAN ROSSUM, THE DELAWARE
RIVERKEEPER,

    Intervenor-Defendants,

and

SENATORS STEVE SANTARSIERO,
CAROLYN COMITTA, AMANDA
CAPPELLETTI, MARIA COLLETT, WAYNE
FONTANA, ART HAYWOOD, VINCE
HUGHES, JOHN KANE, TIM KEARNEY,
KATIE MUTH, JOHN SABATINA, NIKIL
SAVAL, JUDY SCHWANK, SHARIF STREET,
TINA TARTAGLIONE, AND ANTHONY
WILLIAMS,

    Intervenor-Defendants.

CIVIL ACTION

No. 2:21-cv-119(PD)

**COUNTY INTERVENORS'
MOTION TO DISMISS AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Bucks County and Montgomery County (collectively, the "County Intervenors") hereby move to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. In support of this motion, the County Intervenors rely on their attached memorandum of law.

WHEREFORE, the County Intervenors respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

Dated: _____, 2021     HANGLEY ARONCHICK SEGAL
                                   PUDLIN & SCHILLER

                                   By:_____
                                     Steven T. Miano
                                     Robert A. Wiygul
                                     Peter V. Keays
                                 One Logan Square, 27th Floor
                                 Philadelphia, PA  19103
                                 215-568-6200

                                 *Counsel for the County Intervenors*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SENATOR GENE YAW, *et al.*,                                    :
                                                              :
    Plaintiffs,                                           :
                                                              :
    v.                                                    :      CIVIL ACTION
                                                              :
THE DELAWARE RIVER BASIN                                       :      No. 2:21-cv-119(PD)
COMMISSION,                                                   :
                                                              :
    Defendant,                                            :
                                                              :
and                                                           :
                                                              :
DELAWARE RIVERKEEPER NETWORK and                              :
MAYA K. VAN ROSSUM, THE DELAWARE                              :
RIVERKEEPER,                                                  :
                                                              :
    Intervenor-Defendants,                                :
                                                              :
and                                                           :
                                                              :
SENATORS STEVE SANTARSIERO,                                   :
CAROLYN COMITTA, AMANDA                                       :
CAPPELLETTI, MARIA COLLETT, WAYNE                             :
FONTANA, ART HAYWOOD, VINCE                                   :
HUGHES, JOHN KANE, TIM KEARNEY,                               :
KATIE MUTH, JOHN SABATINA, NIKIL                              :
SAVAL, JUDY SCHWANK, SHARIF STREET,                           :
TINA TARTAGLIONE, AND ANTHONY                                 :
WILLIAMS,                                                     :
                                                              :
    Intervenor-Defendants.                                :

## MEMORANDUM OF LAW IN SUPPORT OF
## COUNTY INTERVENORS'
## MOTION TO DISMISS AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 1

II.   RELEVANT BACKGROUND ................................................. 5

      A.    The Delaware River Basin Compact and Commission ..................... 5

      B.    The DRBC Actions Challenged by Plaintiffs ..................... 7

      C.    Plaintiffs' Allegations ........................................ 8

III.  ARGUMENT ...................................................................10

      A.    Plaintiffs Lack Standing ...................................................10

            1.    The Senator Plaintiffs Lack Standing ..................................11

            2.    The Municipal Plaintiffs Lack Standing................................16

      B.    Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law .........19

            1.    Plaintiffs Fail to State a Takings Claim..................................19

            2.    Plaintiffs' Takings Claims Are Time-Barred...........................22

      C.    Plaintiffs Have Failed to Plead a Claim Under the Constitutional
            Clause Guaranteeing a Republican Form of Government.................23

IV.   CONCLUSION ........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*,
  101 F.3d 320 (3d Cir. 1996)....................................................................22, 23

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.*,
  509 F.3d 1020 (9th Cir. 2007)........................................................................23

*Ala. Legislative Council v. Babbitt*,
  181 F.3d 1333 (D.C. Cir. 1999) ................................................................13, 14

*Alaska v. United States*,
  32 Fed. Cl. 689 (1995) ....................................................................................23

*Alexander v. Fletcher*,
  367 F. App'x 289 (3d Cir. 2010)......................................................................23

*Anspach v. City of Phila.*,
  503 F.3d 256 (3d Cir. 2007)..............................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................22

*Benner v. Wolf*,
  461 F. Supp. 3d 154 (M.D. Pa. 2020)..............................................................24

*Bridge Aina Le'A, LLC v. Land Use Comm'n*,
  950 F.3d 610 (9th Cir. 2020)...........................................................................21

*Colegrove v. Green*,
  328 U.S. 549 (1946).........................................................................................24

*Common Cause of Pa. v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009).............................................................................11

*In re Condemnation by Municipality of Penn Hills*,
  870 A.2d 400 (Pa. Commw. Ct. 2005) ............................................................20

*Corman v. Torres*,
  287 F. Supp. 3d 558 (M.D. Pa. 2018)........................................................11, 12

*De Anza Props. X, Ltd. v. Cnty. of Santa Cruz*,
   936 F.2d 1084 (9th Cir. 1991)..........................................................................23

*Del. Valley Citizens' Council for Clear Air v. Pennsylvania*,
   674 F.2d 970 (3d Cir. 1982)..............................................................................14

*Duran v. City of Corpus Christi*,
   240 F. App'x 639 (5th Cir. 2007)...............................................................17, 18

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016).........................................................10, 11, 16, 17

*Fischer v. Governor of N.J.*,
   No. 19-3914, --- F. App'x ----, 2021 WL 141609 (3d Cir. Jan. 15,
   2021) ................................................................................................................17

*Goode v. City of Phila.*,
   539 F.3d 311 (3d Cir. 2008)..............................................................................12

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S 30 (1994)..............................................................................................25

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
   452 U.S. 264 (1981)...........................................................................................20

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013)...........................................................................................15

*Jin Fu Zhong v. Sweeny*,
   No. 08-2204, 2011 WL 1193011 (E.D. Pa. Mar. 29, 2011) ............................18

*Kerr v. Hickenlooper*,
   824 F.3d 1207 (10th Cir. 2016).........................................................................12

*Largess v. Sup. Jud. Court for State of Mass.*,
   373 F.3d 219 (1st Cir. 2004) ............................................................................24

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005).....................................................................................19, 20

*Machipongo Land & Coal Co. v. Commonwealth*,
   799 A.2d 751 (Pa. 2002) ...................................................................................20

*Murr v. Wisconsin*,
    137 S. Ct. 1933 (2017)......................................................................................21

*New York v. United States*,
    505 U.S. 144 (1992)..........................................................................................24

*Pa. Env't Def. Found. v. Commonwealth*,
    161 A.3d 911 (Pa. 2017).............................................................................15, 17

*Pac. States Tel. & Tel. Co. v. Oregon*,
    223 U.S. 118 (1912)..........................................................................................24

*Pagán v. Calderón*,
    448 F.3d 16 (1st Cir. 2006)...............................................................................18

*Parker v. Merlino*,
    646 F.2d 848 (3d Cir. 1981)..............................................................................24

*Patel v. City of Los Angeles*,
    No. 09-5978, 2016 WL 9276022 (C.D. Cal. Feb. 26, 2016)............................23

*Penn Central Transp. v. New York City*,
    438 U.S. 104 (1978)....................................................................20, 21, 22, 24

*Pitchfrod v. PEPI, Inc.*,
    531 F.2d 92 (3d Cir. 1975)................................................................................18

*Protect Our Parks, Inc. v. Chi. Park Dist.*,
    971 F.3d 722 (7th Cir. 2020).............................................................................16

*Pulte Home Corp. v. Montgomery Cnty.*,
    271 F. Supp. 3d 762 (D. Md. 2017)..................................................................22

*Raines v. Byrd*,
    521 U.S. 811 (1997)....................................................................................11, 12

*Robinson Twp. v. Washington Cnty.*,
    83 A.3d 901 (Pa. 2013).............................................................................1, 2, 15

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002)..............................................................................22

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ..................................................................................24

*Rumber v. D.C.*,
    595 F.3d 1298 (D.C. Cir. 2010) ...................................................................18

*Russell v. DeJohngh*,
    491 F.3d 130 (3d Cir. 2007) .........................................................................13

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ...........................................................................5

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..................................................................................10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................................11

*Tarrant Reg'l Water Dist. v. Herrmann*,
    569 U.S. 614 (2013) ......................................................................................25

*State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*,
    931 F.3d 499 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 549 (2020) ...................13

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ..................................................................................10

*United HealthCare Corp. v. Am. Trade Ins. Co.*,
    88 F.3d 563 (8th Cir. 1996) ..........................................................................18

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) ............................................................ 11, 12, 13, 14

*Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*,
    331 F.R.D. 583 (M.D. Pa. 2019), *vacated and remanded*,
    959 F.3d 569 (3d Cir. 2020) ...........................................................................8

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ......................................................................................22

*Zankel v. Temple Univ.*,
    245 F. App'x 196 (3d Cir. 2007) ..................................................................22

**Statutes**

42 Pa. Cons. Stat. § 5527(a)(2) ...............................................................23

58 Pa. Cons. Stat. § 2314 ........................................................................17

71 Pa. Stat. § 732-204(c)..........................................................................14

42 U.S.C. § 1983.......................................................................................23

**Other Authorities**

Del. River Basin Comm'n, State of the Basin Report (July 25, 2019),
https://www.state.nj.us/drbc/library/documents/SOTBreport_july2
019.pdf.....................................................................................................5

Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes,
https://www.state.nj.us/drbc/library/documents/5-05-
10_minutes.pdf .......................................................................................7

Del. River Basin Comm'n, New DRBC Regulation Prohibits High
Volume Hydraulic Fracturing in the Delaware River Basin (Feb.
25, 2021),
https://www.state.nj.us/drbc/home/newsroom/news/approved/2021
0225_newsrel_HVHF-rulemaking.html ............................................7

Del. River Basin Comm'n, Supplemental Determination of the
Executive Director Concerning Natural Gas Extraction Activities
in Shale Formation Within the Drainage Area of Special Protection
Waters (June 14, 2010),
https://www.state.nj.us/drbc/library/documents/SupplementalEDD
6-14-10.pdf .............................................................................................7

Del. River Basin Comm'n, Resolution No. 2021-01 (Feb. 25, 2021),
https://www.state.nj.us/drbc/library/documents/Res2021-
01_HVHF.pdf.........................................................................................7

Fed. R. Civ. P. 17(a) ...............................................................................18

Fed. R. Civ. P. 24.....................................................................................8

15 *Moore's Federal Practice: Civil* § 101.42 (2020) ............................17

Pa. Const. art. I, § 27..............................................................................1, 2

U.S. Const. art IV, § 4............................................................................10, 24

## I.    INTRODUCTION

In 1971, after being unanimously approved by two different sessions of the

Pennsylvania Legislature, the Environmental Rights Amendment to the

Pennsylvania Constitution ("ERA") was ratified by a nearly four-to-one margin of

Pennsylvania voters.[1] The Amendment provides that

> [t]he people have a right to clean air, pure water, and to the
> preservation of the natural, scenic, historic and esthetic values of the
> environment. Pennsylvania's public natural resources are the common
> property of all the people, including generations yet to come. As
> trustee of these resources, the Commonwealth shall conserve and
> maintain them for the benefit of all the people.

Pa. Const. art. I, § 27.

As authoritatively established by the Pennsylvania Supreme Court—in a

case involving, not coincidentally, the same industrial activity (high-volume

hydraulic fracturing, known as "fracking") and statute (Act 13 of 2012, P.L. 87)

championed by Plaintiffs here—the ERA's "express purpose … [is] to be a

bulwark against actual or likely degradation of, *inter alia*, our air and water

quality." *Robinson Twp. v. Washington Cnty.*, 83 A.3d 901, 953 (Pa. 2013). Thus,

"economic development cannot take place at the expense of an unreasonable

degradation of the environment." *Id.* at 954. Relatedly, the ERA *rejects* the

"proprietary theory" of natural resources, whereby government "measur[es] its

gains by the balance sheet profits and appreciation it realizes from its resources

---

[1] *See Robinson Twp. v. Washington Cnty.*, 83 A.3d 901, 961-62 (Pa. 2013).

operations." *Id.* at 956. Instead, the ERA imposes a fiduciary duty on the

Commonwealth, as trustee, to "conserve and maintain" Pennsylvania's public

natural resources for the benefit of all Pennsylvanians. *Id.* at 957. That is, "the

Commonwealth has a duty to refrain from permitting or encouraging the

degradation, diminution, or depletion of public natural resources, whether such

degradation, diminution, or depleting would occur through state action or …

because of the state's failure to restrain the actions of private parties." *Id.*

Plaintiffs seek to stand this constitutional Amendment on its head.

According to Plaintiffs' characterization, the ERA somehow *requires* that

Pennsylvania's natural resources be liquidated so as to maximize "revenue"

generation. (Am. Compl. ¶ 92; *accord id.* ¶ 30.) The Commonwealth's fiduciary

duty to "conserve and maintain" Pennsylvania's public natural resources for the

benefit of "generations yet to come," Pa. Const. art. I, § 27, has become, in

Plaintiffs' telling, a "duty" to extract and monetize those natural resources to

ensure that the Commonwealth's coffers are as full as possible in the present (Am.

Compl. ¶ 76). Entirely absent from the Amended Complaint is any consideration of

the pollution and other environmental harm caused by this exploitation. Plaintiffs'

interpretation of the ERA is, in a word, perverse.

Based on this upside-down premise, Plaintiffs' initial Complaint challenged

what it variously characterized as the Delaware River Basin Commission's

("DRBC") "de facto moratorium" or "blanket ban," since 2010, on fracking within the Delaware River Basin (the "Basin") (ECF 1 ¶ 73), which was instituted because of concerns about water pollution. When, on February 25, 2021, the DRBC "voted to adopt" what Plaintiffs describe as "proposed regulations memorializing the ban set forth in the moratorium" (Am. Compl. ¶ 81), Plaintiffs filed an Amended Complaint targeting those regulations as well. According to Plaintiffs, the fracking "ban" embodied in the DRBC's moratorium and regulations (collectively, the "Prohibition") exceeds the Commission's authority under the Delaware River Basin Compact, an interstate compact among the four states spanned by the Basin. Plaintiffs also contend that the Prohibition constitutes a "regulatory taking" of state-owned and private property—and even go so far as to allege that it violates the Federal Constitution's guarantee that each state have a republican form of government.

The Amended Complaint should be dismissed for several reasons. First and foremost, Plaintiffs—two individual Pennsylvania State Senators and the Pennsylvania Senate Republican Caucus (collectively, the "Senator Plaintiffs") and two townships (Damascus and Dyberry) and two counties (Carbon and Wayne) (collectively, the "Municipal Plaintiffs")—lack standing to assert their claims. None of the Plaintiffs is alleged to own property with natural-gas resources that, but for the Prohibition, would be extractable by fracking. And notwithstanding the

Amended Complaint's strained efforts, none of the Plaintiffs has standing to assert the Commonwealth's purported interests in its property or its laws. Nor does the ERA somehow provide Plaintiffs with a ticket to federal court. Just as Plaintiffs cannot twist the ERA into a constitutional imperative to extract and monetize natural resources regardless of the environmental consequences, neither can they convert the ERA's "public trust" theory into an exemption from the standing strictures of the Federal Constitution.  In sum, Plaintiffs have failed to plead a particularized, concrete injury satisfying the case-or-controversy requirements of Article III, and this Court thus lacks subject-matter jurisdiction to proceed.

Independently, Plaintiffs' claims asserting regulatory takings fail as a matter of law. By its nature, a regulatory takings claim of the sort Plaintiffs allege here turns on the specific facts regarding the particular property at issue; it is legally insufficient simply to assert that a regulation has prohibited a particular technique of extracting natural gas. Plaintiffs have not identified any particular property, let alone alleged any specific facts about any such property. Accordingly, they have failed to plead a claim for regulatory taking. In addition, Plaintiffs' takings claims are time-barred.

Also fatally flawed is Plaintiffs' claim for violation of the constitutional clause guaranteeing a republican form of government. As an initial matter, the Supreme Court has held that claims under the Guarantee Clause are not justiciable.

But even assuming a justiciable claim could potentially be pled, Plaintiffs have not done so. The Amended Complaint does not target an act purporting to dissolve the General Assembly or abolish the independence of the Pennsylvania judiciary. What Plaintiffs contest is the prohibition of a particular industrial activity within the Basin, a prohibition that was approved by an interstate agency—which includes Pennsylvania's Governor—in order to protect interstate water resources subject to an interstate compact duly ratified pursuant to Pennsylvania's law-making process. However much Plaintiffs may dislike the Prohibition as a matter of policy, Pennsylvania remains a commonwealth in form as well as name.

## II.    RELEVANT BACKGROUND[2]

### A.    The Delaware River Basin Compact and Commission

Spanning Pennsylvania, New Jersey, Delaware, and New York, the Delaware River Basin is a watershed covering approximately 13,600 square miles that drains into the Delaware River and its tributaries. The Basin provides drinking water to 13.3 million people; 5.6 million Pennsylvanians live within its boundaries. Del. River Basin Comm'n, State of the Basin Report at PDF pp. 3, 12 (July 25, 2019), https://www.state.nj.us/drbc/library/documents/SOTBreport_july2019.pdf.

---

[2] For purposes of this motion only, the County Intervenors accept the truth of the well-pled factual allegations in the Amended Complaint. *See Anspach v. City of Phila.*, 503 F.3d 256, 260 (3d Cir. 2007). This Court need not, however, "credit 'bald assertions'" or "'legal conclusions masquerading as factual conclusions.'" *Id.* In deciding a motion to dismiss, the Court may also consider documents relied on in Plaintiffs' pleading and take judicial notice of matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Recognizing that the water in the Basin has an "interstate regional character" and is a common resource over which local, State, and National interests have "joint responsibility," the governments of the four Basin states and the United States Congress entered into the Delaware River Basin Compact ("Compact") in 1961. Compact at 1 (Am. Compl., Ex. A).

Because "[t]he water resources of the basin are functionally inter-related, and the uses of these resources are independent," the signatories wished to replace the "duplicating, overlapping, and uncoordinated administration" of these water resources by a multiplicity of state, interstate, and federal agencies—which had proven grossly inadequate and unsatisfactory—with "a comprehensive plan administered by a basin wide agency." *Id.* at 1, 4. This joint reform effort was expressly intended to promote, among other things, "effective … abatement and control of stream pollution." *Id.* at 1. To that end, the Compact established the DRBC "as an agency and instrumentality of the governments of the respective signatory parties." *Id.* at 5.

To ensure its efficacy, the Compact endowed the DRBC with significant authority and responsibilities. Among other things, the Compact prohibits all "project[s] having a substantial effect on the water resources of the basin" unless and until they are "submitted to and approved by the [DRBC]." *Id.* § 3.8.

**B.      The DRBC Actions Challenged by Plaintiffs**

The Amended Complaint challenges what it describes as the DRBC's

"categorical[] prohibit[ion on] natural gas extraction within the Basin" "since

2010," (Am. Compl. ¶ 78), which first took the form of "a *de facto* moratorium"

and was then "memorialized" in regulations adopted on February 25, 2021 (*id.*

¶¶ 79, 81). Both the moratorium and the 2021 regulations were approved by all

state members of the Commission, including Pennsylvania.[3] The DRBC's

Prohibition was based on the Commission's finding that fracking "pose[s]

significant, immediate and long-term risks to the development, conservation,

utilization, management, and preservation of the water resources of the … Basin."[4]

---

[3] In May 2010, the Commission unanimously adopted a resolution directing Commission staff to develop regulations to govern the Commission's review of applications for fracking projects, and postponing consideration of all applications until those regulations have been adopted. Del. River Basin Comm'n, Meeting of May 5, 2010 Minutes at 5, https://www.state.nj.us/drbc/library/documents/5-05-10_minutes.pdf. The final regulations issued on February 25, 2021, were approved by all four state Commissioners; the federal Commissioner abstained. Del. River Basin Comm'n, New DRBC Regulation Prohibits High Volume Hydraulic Fracturing in the Delaware River Basin (Feb. 25, 2021), https://www.state.nj.us/drbc/home/newsroom/news/approved/20210225_newsrel_HVHF-rulemaking.html.

[4] Del. River Basin Comm'n, Resolution No. 2021-01, at 4 (Feb. 25, 2021), https://www.state.nj.us/drbc/library/documents/Res2021-01_HVHF.pdf (explaining that "[s]pills and releases of hydraulic fracturing chemicals, fluids and wastewater would adversely impact surface water and groundwater," that "subsurface fluid (including gas) migration" would "impair[] drinking water resources," and that fracking would "adversely affect thousands of acres of sensitive water resource features"); *accord* Del. River Basin Comm'n, Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formation Within the Drainage Area of Special Protection Waters 1 (June 14, 2010), https://www.state.nj.us/drbc/library/documents/SupplementalEDD6-14-10.pdf (recognizing that fracking projects "could individually or cumulatively affect the water quality of Special Protection Waters [in the Basin] by altering their physical, biological, chemical or hydrological characteristics").

### C.   **Plaintiffs' Allegations**

The bulk of Plaintiffs' allegations appear aimed at establishing their standing rather than supporting the substance of their legal claims.[5] Thus, Plaintiffs point out that Pennsylvania's legislative power is vested in the General Assembly and that the Senate Republican Caucus is "one of two … subparts" of one of two components of the General Assembly. (Am. Compl. ¶ 24.) Plaintiffs further allege that the "General Assembly enacted a detailed regulatory scheme" (Act 13 of 2012) providing for fracking, including in the Basin, and "providing for payment of various fees" to the Commonwealth in connection with fracking activity. (*Id.* ¶¶ 51-52.) These fees are paid into the Commonwealth's "Well Fund." (*Id.*) According to the Amended Complaint, the DRBC's Prohibition has impaired the intent of this legislation, usurped the Legislature's authority, and denied the Well Fund money it would otherwise have received. (*Id.* ¶¶ 52-59, 62, 67, 84-86.) Plaintiffs allege that the Prohibition has similarly denied the Commonwealth fees it would have received were it able to allow fracking on state-owned land located in the Basin. (*Id.* ¶¶ 70-71, 73-75.) In Plaintiffs' view, by reducing the amount of

---

[5] The two individual Senator Plaintiffs in this case twice sought—and were denied—intervention in a challenge to the Commission's fracking moratorium currently pending in the Middle District of Pennsylvania, *Wayne Land and Mineral Group, LLC v. Del. River Basin Comm'n*, 3:16-CV-897 (M.D. Pa.). *See* ECF 17, Memo. at 6-8. Notably, the Middle District ruled that many of the same assertions the Senators make in their Amended Complaint in this case (presumably in an attempt to establish standing) did not give rise to the significant protectable interest that is required for intervention pursuant to Federal Rule of Civil Procedure 24. *See Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 331 F.R.D. 583, 593, 597-98 (M.D. Pa. 2019), *vacated on different grounds and remanded*, 959 F.3d 569 (3d Cir. 2020).

revenue derived from fracking, the Prohibition has "impair[ed] the growth of the

… assets" in the public trust established by the ERA. (*Id.* ¶ 67.)

The Amended Complaint asserts four Counts. Count I contends that the

Prohibition "exceeded the scope of authority granted [to the DRBC] under …

Section 3.8 of the Compact." (*Id.* ¶ 103.) Count II alleges that the Prohibition

constitutes a regulatory taking of state-owned property for purposes of the Federal

and Pennsylvania Constitutions. (*Id.* ¶ 110.) Because the Compact does not allow

the DRBC to exercise "the power of eminent domain" over the "property of a

signatory state," Compact § 14.14, Plaintiffs seek a declaration that the Prohibition

exceeds the Commission's authority under the Compact. In the alternative,

Plaintiffs seek a declaration that the Prohibition is a taking "requiring provision of

just compensation for the diminution of the property seized." (Am. Compl. at 23.)

Count III asserts a regulatory taking claim with respect to private property

rather than state-owned land. Plaintiffs seek a declaration that, because the

Prohibition is a regulatory taking, it exceeds the eminent domain powers granted to

the DRBC under the Compact. Alternatively, Plaintiffs request a declaration that

compensation is required. (*Id.* at 25.)

Most dramatically, Count IV contends that the Prohibition has "deprived 5.5

million Pennsylvanians of their ability to choose their laws and governmental

structure" (*id.* ¶ 121), thereby violating the Federal Constitution's guarantee of a republican form of government. *See* U.S. Const. art IV, § 4.

## III.   ARGUMENT

### A.   <u>Plaintiffs Lack Standing</u>

This lawsuit is barred at the threshold because Plaintiffs lack standing to bring it. To invoke the limited subject-matter jurisdiction of federal courts under Article III of the Constitution, plaintiffs must adequately allege "such a personal stake in the outcome of the controversy as to … justify the exercise of the court's remedial powers on their behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). More specifically, plaintiffs "must demonstrate (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). "To establish injury in fact," in turn, "a plaintiff must show that he or she is suffering an invasion of a legally protected interest that is concrete and particularized"—meaning that "it must affect the plaintiff in a personal and individual way"—"and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *see also Town of Chester*, 137 S. Ct. at 1650 ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). "These requirements are

unyielding." *Finkelman*, 810 F.3d at 189. Because none of the Plaintiffs satisfies them, this Court lacks subject-matter jurisdiction, and the only proper course is to "announc[e] th[at] fact and dismiss[] the cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### 1.      The Senator Plaintiffs Lack Standing

The Senator Plaintiffs lack standing because they fail to plead a particularized interest in the litigation. The law on legislator standing is well developed. Such standing is narrowly circumscribed, as "[c]oncerns for separation of powers and the limited role of the judiciary" are "particularly acute in legislator standing cases." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 265 (3d Cir. 2009).  The Supreme Court's precedent "stands 'at most' 'for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.'" *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1954 (2019) (quoting *Raines v. Byrd*, 521 U.S. 811, 823 (1997)). That precedent also makes "clear" that "a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Corman v. Torres*, 287 F. Supp. 3d 558, 567 (M.D. Pa. 2018) (three-judge panel). Such inadequate harm includes an asserted "institutional injury" in the form of "the diminution of

legislative power." *Id.* (quoting *Raines*, 521 U.S. at 821); *accord Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016).

That authority is dispositive here because the Senator Plaintiffs do not *even* allege an injury to the interest of the Pennsylvania Legislature as a body. Rather, they contend that they have an interest because the Prohibition allegedly exceeded the scope of the authority contractually ceded to the Commission by the Compact's signatories. But the General Assembly is not a signatory to the Compact; the Commonwealth is. That the Commonwealth's ratification took the form of a statute passed by the Legislature (*and signed by the Governor*), containing legislative findings, does not avail Plaintiffs. Nor do their assertions that the Prohibition has somehow stymied the purpose of Act 13 or other Pennsylvania statutes or—more generally—undermined Pennsylvania's sovereignty. This is because, as the case law recognizes, "once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." *Goode v. City of Phila.*, 539 F.3d 311, 317 (3d Cir. 2008). Indeed, legal threats to the validity or operation of an enacted statute are typically cognizable injuries only with respect to the state as a whole, not to the legislature as a particular organ of government. *See Bethune-Hill*, 139 S. Ct. at 1953 ("This Court has never held that a judicial decision invalidating a state law as unconstitutional inflicts a discrete, cognizable injury on each organ of

government that participated in the law's passage."). Even more so, then, Plaintiffs have no standing to complain that the Prohibition has allegedly reduced the value of state-owned land or the Commonwealth's receipt of fracking-related fees.

*Alaska Legislative Council v. Babbitt*, 181 F.3d 1333 (D.C. Cir. 1999), cited approvingly in *Russell v. DeJohngh*, 491 F.3d 130, 134 (3d Cir. 2007), is particularly instructive because of its similarities with this case. In *Babbitt*, individual Alaskan state legislators, as well as the Alaska Legislative Council, brought suit challenging federal management of fish and wildlife on federal public lands. The plaintiffs complained that the federal government had intruded upon Alaska's sovereign "prerogatives in the management of fish and wildlife." 181 F.3d at 1338. As the D.C. Circuit explained, "[t]he resulting injury is not to the Legislature and it is not to the individual legislators. It is to the State itself…. If [the challenged federal statute] diminishes the State's authority, it injures state sovereignty, not legislative sovereignty." *Id.* at 1338-39; *accord State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 512-14 (6th Cir. 2019) (Tennessee General Assembly lacked standing to seek relief for "alleged injury to Tennessee's sovereignty"), *cert. denied*, 141 S. Ct. 549 (2020).

Plaintiffs can represent the Commonwealth's interests only if the Commonwealth has authorized them to do so. *See Bethune-Hill*, 139 S. Ct. at 1951-52; *Tenn. Gen. Assembly*, 931 F.3d at 514-17. It has not. "By statute in

Pennsylvania, the Attorney General"—not the General Assembly, and not any individual legislators—"is responsible for vindicating the sovereign interests of the Commonwealth." *Del. Valley Citizens' Council for Clear Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (citing 71 Pa. Stat. § 732-204(c)).

Even if Plaintiffs had asserted an injury to an interest that truly belonged to the Pennsylvania Legislature, rather than to the Commonwealth, they would still fail to establish standing. As the Supreme Court has made pellucidly clear, "individual [legislators] lack standing to assert the institutional interests of a legislature." *Bethune-Hill*, 139 S. Ct. at 1953. Indeed, even "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 1954. As underscored by the involvement of the sixteen Democratic Senator Intervenors in this litigation, the Senator Plaintiffs comprise only two individual Senators and one of two Senate caucuses. They do not speak for the General Assembly as a whole. Accordingly, the Senator Plaintiffs fall well short of Article III's standing bar. *See Babbitt*, 181 F.3d at 1337-38.

Nor can the Senator Plaintiffs predicate standing on their purported status as "trustees" of the public natural resources trust created by the ERA. This is true for several reasons. First, Plaintiffs cite no authority for the proposition that each individual legislator, as opposed to the legislature as a whole, is an ERA trustee. Second, Plaintiffs' theory—namely, that such trustees have a fiduciary duty to

maximize the revenue derived from liquidating natural resources—rests on a gross misapprehension of the interests protected by the ERA. As the Pennsylvania Supreme Court has explained, "the corpus of the trust" at issue consists of "the public natural resources" themselves. *Robinson Twp.*, 83 A.3d at 957. Although the court has explained "that proceeds from the sale of oil and gas from [the ERA's] public trust remain in the corpus of the trust," *Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 933 (Pa. 2017), Plaintiffs completely misinterpret that pronouncement. It does *not* mean that the Commonwealth has a fiduciary duty to maximize those proceeds. To the contrary, it means that those proceeds, to the extent they are realized, must be devoted to "preventing and remedying the degradation, diminution and depletion of our public natural resources." *Id.* at 936. Put simply, as a matter of law, the constitutional duty or interest invoked by Plaintiffs does not exist.

Third, Plaintiffs fail to cite any Pennsylvania authority, let alone federal authority, suggesting that a "trustee" under the ERA has standing, based on that status alone, to bring suit challenging actions restricting extraction of natural resources. That is because no such authority exists.

Fourth, even if Pennsylvania law did recognize such standing, it would not avail Plaintiffs here. It is well settled that "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013);

15

*accord Finkelman*, 810 F.3d at 203. The recent decision in *Protect Our Parks, Inc.*

*v. Chi. Park Dist.*, 971 F.3d 722 (7th Cir. 2020) (Barrett, J.), is particularly on

point. The plaintiffs in that case brought state-law claims and claimed standing

under Illinois's "public trust doctrine." It was undisputed that plaintiffs would have

had standing, under this doctrine, to assert their claims in state court. *Id.* at 729-30.

Nonetheless, the plaintiffs' federal action had to be dismissed because they could

not show the particularized, concrete injury required by Article III. *Id.* at 730-32.

The same result obtains here.

### 2. The Municipal Plaintiffs Lack Standing

For the reasons discussed above, the Municipal Plaintiffs likewise cannot

predicate standing on their alleged status as "trustees" of the ERA's natural

resources trust. Nor do the Municipal Plaintiffs otherwise plead standing. As

Intervenor-Defendants previously pointed out, Plaintiffs' initial Complaint did not

allege that any plaintiff owned land affected by the DRBC's fracking prohibition.

(*See* ECF 17-1, Memo. at 9.) Plaintiffs' Amended Complaint now includes the bare

allegation that the Municipal Plaintiffs own land containing natural gas reserves.

(Am. Compl. ¶ 72.) But Plaintiffs conspicuously refrain from alleging that these

reserves could feasibly be extracted via fracking, let alone that, but for the

Prohibition, the Municipal Plaintiffs would be legally authorized to—and would, in

fact—extract these resources.[6] Accordingly, the Municipal Plaintiffs have not pled a cognizable injury that is caused by the Prohibition and would be redressed by the relief Plaintiffs seek. *See Finkelman*, 810 F.3d at 198 (causation element of standing "requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury"); *Fischer v. Governor of N.J.*, No. 19-3914, --- F. App'x ----, 2021 WL 141609, at *6 (3d Cir. Jan. 15, 2021) (redressability prong not met where "a favorable result would [merely] eliminate one of multiple causes of an [alleged] injury without actually decreasing the injury at all" (quoting 15 *Moore's Federal Practice: Civil* § 101.42 (2020))).

The Municipal Plaintiffs also appear to assert that they have suffered a cognizable injury because the Prohibition has allegedly diminished the fees flowing into the Commonwealth's Well Fund, some of which ostensibly would have been disbursed to the Municipal Plaintiffs.[7] But this allegation is likewise insufficient to confer standing. "Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641 (5th Cir.

---

[6] Tellingly, the Amended Complaint asserts regulatory takings claims only with respect to "state-owned land" (Am. Compl. ¶ 110 (Count II)) and "private property" (*id.* ¶ 115 (Count III)). It does not assert a regulatory takings claim on behalf of the Municipal Plaintiffs.

[7] Notably, the Municipal Plaintiffs have no statutory *right* to these funds. To the contrary, the pertinent statute expressly provides that "[d]istribution of funds under this section … are contingent on availability of funds in the [Well Fund]." 58 Pa. Cons. Stat. § 2314. Further, any money received from the Well Fund must be used for environmental purposes; it is not available for the municipality's general use. *See Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 936 (Pa. 2017).

2007). For that reason, the Third Circuit and other courts have repeatedly held that employees, creditors, and stockholders lack standing to assert claims based on economic harm that is derivative of an alleged injury suffered by the employer, debtor, or stock company. *See, e.g.*, *Pitchfrod v. PEPI, Inc.*, 531 F.2d 92, 96-98 (3d Cir. 1975); *Jin Fu Zhong v. Sweeny*, No. 08-2204, 2011 WL 1193011, at *8-10 (E.D. Pa. Mar. 29, 2011); *accord Rumber v. D.C.*, 595 F.3d 1298, 1300-01 (D.C. Cir. 2010); *Duran*, 240 F. App'x at 641-43; *Pagán v. Calderón*, 448 F.3d 16, 26-30 (1st Cir. 2006). That reasoning applies with even greater force here. Indeed, the Municipal Plaintiffs are at least two steps removed from the party alleged to be directly injured: the Prohibition allegedly prevents landowners from engaging in fracking, which in turn diminishes the fees paid into the Commonwealth's Well Fund, which in turn reduces the amount, if any, of the Commonwealth's distribution to the Municipal Plaintiffs. This kind of purely derivative interest does not support standing.[8]

---

[8] For essentially the same reasons, the Municipal Plaintiffs' derivative theory of injury also fails to satisfy Rule 17's requirement that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996). The purpose of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17(a), 1966 Advisory Committee Note. That purpose is squarely implicated here, where the Municipal Plaintiffs—and, for that matter, the Senator Plaintiffs—seek to assert regulatory takings claims on behalf of the Commonwealth and private parties, who presumably would not be bound by a judgment in this case.

Because Plaintiffs have failed to plead standing with respect to any of their claims, the Amended Complaint must be dismissed.

### B.     Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law

Independent of the all-pervasive standing defect, Counts II and III fail to state a claim. This is true for at least two reasons: (1) Plaintiffs fail to plead facts making out a regulatory takings claim; and (2) any such claim is time-barred.

### 1.     Plaintiffs Fail to State a Takings Claim

The facts Plaintiffs must plead to survive a motion to dismiss depend on the particular species of takings claim Plaintiffs assert—something Plaintiffs themselves fail to address. The Supreme Court's case law has "stake[d] out" "two relatively narrow categories" "of regulatory action that generally will be deemed *per se* takings." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). The first involves government actions that "require[] an owner to suffer a permanent physical invasion of her property." *Id.* "A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. *Id.* The current case falls into neither category: The challenged Prohibition does not involve any "physical invasion," and Plaintiffs do not allege that a suspension of approvals of a particular gas-extraction technique effected a "complete elimination of a property's value," *id.* at 539.

Plaintiffs' regulatory takings challenge is thus "governed by the standards set forth in *Penn Central Transportation v. New York City*, 438 U.S. 104 (1978)."[9] *Lingle*, 544 U.S. at 537-38. As courts have emphasized, application of those standards requires "essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action—that have particular significance." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295 (1981). These inquires "*must be conducted with respect to specific property*, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Id.* (emphasis added). The goal of the analysis is to determine "the severity of the impact of [the challenged regulation] on [the plaintiff's particular] parcel" of land, and whether "the interference with [the] property is of such a magnitude that 'there must be an exercise of eminent domain and compensation to sustain [it].'" *Penn Central*, 438 U.S. at 136.

It is easy to see how the application of the *Penn Central* factors will necessarily turn on particular facts regarding the specific property at issue. For

---

[9] These federal-law standards also govern takings claims brought under Pennsylvania law. *See Machipongo Land & Coal Co. v. Commonwealth*, 799 A.2d 751, 763 n.7, 765 (Pa. 2002); *In re Condemnation by Municipality of Penn Hills*, 870 A.2d 400, 404-05 (Pa. Commw. Ct. 2005). Thus, assuming *arguendo* that Plaintiffs may assert takings claims under Pennsylvania as well as federal law, *but see* Compact § 14.14(b) (DRBC's "power of condemnation shall be exercised in accordance with the provisions of any *federal* law applicable to the commission" (emphasis added)), the analysis is the same.

example, the "investment-backed expectations" factor requires courts to determine the "reasonable expectations" the owner had for the property "at the time of its acquisition." *Bridge Aina Le'A, LLC v. Land Use Comm'n*, 950 F.3d 610, 633 (9th Cir. 2020). For present purposes, that means it would be extremely significant, if not dispositive, if, for example, a specific parcel were acquired before the development of fracking techniques rendering extraction of its natural gas reserves commercially viable. In those cases, the DRBC's Prohibition could not have interfered with the owner's investment-backed expectations regarding the property.

The "economic impact of the regulation" will also obviously depend on the particular parcel at issue. As the Supreme Court has explained, the "test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1944 (2017).

Plaintiffs do not plead any facts bearing on the "complex of [property-specific] factors" determinative of a *Penn Central* takings claim. *See id.* at 1943. Indeed, Plaintiffs do not identify any specific parcel of property at all. Instead, they sweepingly request a declaration that the DRBC's Prohibition effected a regulatory taking with respect to unidentified "state-owned land" and unidentified "private property." (Am. Compl. ¶¶ 110, 115.) Because the Amended Complaint does not come close to alleging facts sufficient to make out a viable regulatory takings

claim, Counts II and III fail as a matter of law.[10] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (it is insufficient to plead facts "merely consistent with" liability; "a complaint must contain sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant *is* liable" under the legal theory asserted (emphasis added)); *see also, e.g.*, *Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 776-777 (D. Md. 2017) (dismissing takings claim after finding the facts pled insufficient to satisfy *Penn Central* test).

### 2.   Plaintiffs' Takings Claims Are Time-Barred

In any event, Plaintiffs' takings claims are time-barred as a matter of law.[11] Because federal law does not expressly prescribe a statute of limitations for federal takings claims, courts "must look to the most 'appropriate' or 'analogous' state statute of limitations." *287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 323 (3d Cir. 1996) (quoting *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)). The Third Circuit has held that, in the case of a federal regulatory takings claim, the appropriate analog is either the personal-injury statute of limitations applicable to

---

[10] The failure to plead facts regarding any specific parcel is itself fatal to Plaintiffs' regulatory takings claims. But it is also worth noting that, as discussed below, any such claim is limited to, at most, the marginal additional loss of value, if any, effected by the DRBC's February 2021 regulations relative to the pre-existing fracking moratorium. *See infra* note 12. The Amended Complaint is devoid of any allegations plausibly suggesting that any such minimal loss of value could constitute a regulatory taking or was even incurred. For this reason, too, Counts II and III must be dismissed.

[11] Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where, as here, "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d Cir. 2007) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).

claims under 42 U.S.C. § 1983 (in Pennsylvania, two years, *see Alexander v. Fletcher*, 367 F. App'x 289, 290 & n.1 (3d Cir. 2010)) or the limitations period for state-law regulatory takings claims (in Pennsylvania, six years, 42 Pa. Cons. Stat. § 5527(a)(2).). *287 Corp. Ctr. Assocs.*, 101 F.3d at 323-324.

Based on the face of the Amended Complaint, the takings claims alleged by Plaintiffs here accrued no later than "2010," when the DRBC's purported "categorical[] prohibit[ion on] natural gas extraction within the Basin" took effect. (Am. Compl. ¶ 78.) Accordingly, whether the applicable limitations period was two years or six years, it expired long before Plaintiffs commenced this lawsuit in January 2021.[12] For this reason, too, Counts II and III fail as a matter of law.

## C.   Plaintiffs Have Failed to Plead a Claim Under the Constitutional Clause Guaranteeing a Republican Form of Government

Finally, Plaintiffs have also failed to state a claim under the Guarantee

---

[12] The Amended Complaint states that the DRBC's 2021 regulations merely "memorializ[ed] the ban set forth in the [2010] moratorium" (Am. Compl. ¶ 81), *i.e.*, they affected only the form of the Prohibition, not its scope or nature. Indeed, Plaintiffs describe the 2010 moratorium as a "blanket ban on the construction or operation of natural gas wells within the Basin" (*id.* ¶ 79), which, in Plaintiffs' view, constituted regulatory takings of state-owned and private property (*see* ECF 1 ¶¶ 96-108). Accordingly, the 2021 regulations did not somehow restart the statute-of-limitations period for Plaintiffs' regulatory takings claims. *See Patel v. City of Los Angeles*, No. 09-5978, 2016 WL 9276022, at *1 (C.D. Cal. Feb. 26, 2016) (holding that "permanent enactment of the [challenged] ordinance" did not restart the statute-of-limitations clock that had begun to run based on "interim enactment," where plaintiffs did not allege that permanent enactment constituted a "substantive amendment" of the regulation; noting that these principles apply to taking claims (citing *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)); *De Anza Props. X, Ltd. v. Cnty. of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991); *Alaska v. United States*, 32 Fed. Cl. 689, 701-03 (1995). Moreover, even if the 2021 regulations *had* broadened the pre-existing prohibition, any takings claim would, by virtue of the statute of limitations, be limited to the marginal *additional* loss of value caused by the regulations relative to the 2010 moratorium.

Clause, which provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government." U.S. Const., art. IV, § 4.

First, the Supreme Court "has several times concluded … that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019); *accord Colegrove v. Green*, 328 U.S. 549, 555 (1946) (plurality opinion) ("Violation of the [Guarantee Clause] cannot be challenged in the courts."); *Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 133 (1912) (such claims are "not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress"); *Parker v. Merlino*, 646 F.2d 848, 856 n.15 (3d Cir. 1981); *Benner v. Wolf*, 461 F. Supp. 3d 154, 168 n.17 (M.D. Pa. 2020).[13] For this reason alone, the claim must be dismissed.

Second, even assuming *arguendo* that "individuals could utilize the federal courts to enforce the Guarantee Clause" "in unusual and extreme cases, such as the establishment of a monarchy by a state in place of a republican form of government," this is not such a case. *Largess v. Sup. Jud. Court for State of Mass.*, 373 F.3d 219, 229 (1st Cir. 2004). Plaintiffs' argument seems to be that, if the DRBC's Prohibition is authorized by the Compact, the Compact violates the

---

[13] In *New York v. United States*, 505 U.S. 144 (1992), the Supreme Court suggested that "perhaps not all claims under the Guarantee Clause present nonjusticiable questions." *Id.* at 185. But that statement was dictum, as the Court concluded that petitioners had not made out a Guarantee Clause claim in any event. *Id.* at 185-86. Importantly, the Court has never overruled its earlier nonjusticiability holdings, and Chief Justice Roberts did not refer to the dictum in *New York* in his recent opinion for the Court in *Rucho*, 139 S. Ct. at 2506.

Guarantee Clause because Pennsylvania lacks unilateral, unchecked authority to permit industrial activities affecting interstate water resources within the Basin. This argument overlooks (1) that what Plaintiffs attack, *i.e.*, the ceding of unilateral authority over interstate resources to a joint interstate authority, is the very purpose of interstate compacts, which are expressly authorized by the Constitution, *see Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S 30, 41-42 (1994) ("the States agreed to the power sharing, coordination, and unified action that typify Compact Clause creations"); (2) that Pennsylvania voluntarily ratified the Compact, and its representative on the DRBC, the Governor, approved the Prohibition; and (3) in any event, there can be no question that the federal government, which is a signatory to the Compact, has constitutional authority to regulate activities affecting interstate water resources; Plaintiffs provide no reason why the exercise of such authority under a congressionally-approved Compact is any less constitutional. *See generally Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 n.8 (2013) (congressional approval transforms interstate compact into federal law preempting any conflicting state law under Supremacy Clause). As a matter of law, Plaintiffs' allegations do not state a violation of the Guarantee Clause.

## IV.    CONCLUSION

For the foregoing reasons, the County Intervenors respectfully request that the Amended Complaint be dismissed in its entirety.

Respectfully submitted,

Dated: _____, 2021          HANGLEY ARONCHICK SEGAL
                                             PUDLIN & SCHILLER


By:_____
     Steven T. Miano
     Robert A. Wiygul
     Peter V. Keays
One Logan Square, 27th Floor
Philadelphia, PA  19103
215-568-6200

*Counsel for the County Intervenors*